

F I L E D

AUG 2 6 2025

Heidi D. Campbell, Clerk
U.S. DISTRICT COURT

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OKLAHOMA

ι. GABRIEL GIDEON,
Plaintiff,

25 CV - 4 5 0 JFH - JFJ

v.

ι. OFFICER BILLY MCCALL, in his individual and official capacity,
2. DISTRICT ATTORNEY WILL DRAKE, in his individual and official capacity,
3. THE CITY OF BARTLESVILLE, OKLAHOMA, a municipal corporation
4. WASHINGTON COUNTY, OKLAHOMA, a political subdivision of the State of Oklahoma,
Defendants.

Case No.:_____
JURY TRIAL DEMANDED

## COMPLAINT FOR CIVIL RIGHTS VIOLATIONS UNDER 42 U.S.C. § 1983

### I. INTRODUCTION

1. This is a civil rights action arising from the unlawful detention, false arrest, coercion, fabrication of charges, and reckless endangerment of Plaintiff by Officer Billy McCall of the Bartlesville Police Department, in conspiracy with District Attorney Will Drake.

2. Defendants violated Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

### II. JURISDICTION & VENUE

3. Jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

4. Venue is proper under 28 U.S.C. § 1391(b) as the events occurred in Washington County, OK.

### III. PARTIES

5. Plaintiff Gabriel Gideon, is a resident of Kansas.

*fees paid*
*4 summons*

6. Defendant Billy McCall, is a law enforcement officer employed by Bartlesville Police Department at the time of the incident, and was acting under color of law.

7. Defendant, Will Drake, is the elected Washington County district attorney, and was acting under color of law.

8. Defendant, The City of Bartlesville, Oklahoma, is a municipal corporation organized and existing under the laws of the State of Oklahoma and is responsible for the operation, policies, customs, and training of the Bartlesville Police Department. At all times relevant, it acted under color of law.

9. Defendant, Washington County, Oklahoma, is a political subdivision of the State of Oklahoma and is responsible for the operation, policies, customs, and actions of the Office of the District Attorney. At all times relevant, it acted under color of law.

## IV. FACTUAL ALLEGATIONS

10. On August 28, 2023 Officer Billy McCall initiated a traffic stop for a tint violation in which another person, called Robinson in the foregoing, was the driver. The report and sworn statements made by him regarding this stop have been included as "Exhibit A", of which there are 8 pages total, not including the Exhibit Cover and Exhibit Index sheets.

11. Gideon, the Plaintiff, was the passenger in the vehicle. It is established that a passenger is seized for the duration of a traffic stop and therefore retains the full panoply of Fourth Amendment rights to challenge both the validity of the stop and any unlawful extension of it under Brendlin v. California, 551 U.S. 249 (2007); also see Arizona v. Johnson, 555 U.S. 323 (2009).

12. Robinson complied with all lawful orders in accordance with 47 O.S. § 11-103; 47 O.S. § 11-904(B); and 21 O.S. § 540A, which together conclusively informs of the legal duty of the driver of a vehicle to stop when lawfully signaled.

13. Robinson complied with the driver's duty to provide documentation upon request , and this is acknowledged by Officer McCall in Section III, Page 1 of 8 of Exhibit A where he states: "The Defendant [Robinson] advised me that she had a suspended driver's license out of the state of Kansas," and later in that same section: "the defendant handed me an old piece of paper showing that the vehicle had insurance," thereby satisfying both 47 O.S. § 6-112 and 47 O.S. § 7-602, the local statutes which govern the providing of documents upon request by the driver of a lawfully stopped vehicle.

14. The Plaintiff questioned any obligation to identify himself when directly requested by the officer, invoking his Fourth Amendment rights to be free from any unreasonable search or seizure absent reasonable suspicion. Plaintiff contends this right is clearly established by Brown v. Texas, 443 U.S. 47 (1979), which prohibits detention solely to obtain identification. This

principle is explicitly codified in Oklahoma law by 22 O.S. § 2001, which permits an officer to demand identification only upon reasonable suspicion that the person is involved in criminal activity—a suspicion wholly absent here. The limitations of Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cty., 542 U.S. 177 (2004), which upheld a specific Nevada statute, further underscore that no such duty exists for a passenger in a traffic stop under these circumstances in Oklahoma law. This is clearly established law.

15. The Officer verbally acknowledged this constitutional default, stating to the Plaintiff upon his declining that he was "just asking". This concession confirms he knew he had no lawful basis to demand identification or pursue further detention. This admission removes any assumption of good faith and demonstrates that any subsequent attempt to compel identification was a knowing violation of Plaintiff's clearly established Fourth Amendment rights.

16. The Officer, in contrast to his statement to the Plaintiff, details this exercising of the Plaintiffs rights as "non-cooperation" in his sworn report, where he explicitly states that this means the person "almost always is a felon or has warrants". In United States v. Landeros, No. 17-10217 (9th Cir. 2019), the Court determined that Officers had no knowledge of the identifying information of the passenger in the vehicle or any particularized status, and therefore no probable cause at inception, thus invalidating the actions or information that stemmed from the unlawful seizure of the passenger. The Plaintiff believes that mirrors this case to the extent that although it is a Ninth Circuit decision, it demonstrates explicitly how the courts have already interpreted the established laws and protections afforded by them.

17. Following the decline, Officer McCall removes Robinson and immediately asks "who is your partner" before completing or continuing his traffic related obligations. Officer McCall had thereby extended the stop beyond its original scope to compel the passenger's identification without any reasonable suspicion in violation of Rodriguez v. United States 741 F. 3d 905, on which the aforementioned Landeros case relied heavily. Rodriguez held that "a stop prolonged beyond the time needed to handle the matter for which the stop was made is unlawful unless supported by reasonable suspicion."

18. Then, in further pursuit of his unlawful course of action, Officer McCall explicitly threatened Robinson with the involvement of the Department of Human Services (DHS), stating he would "call DHS to come get the baby if your license is suspended" in a direct attempt to coerce her compliance with his unlawful demand for the passenger's identity. This threat, leveraging the potential removal of her child against a mere traffic violator, was a coercive tactic utterly divorced from any legitimate law enforcement purpose and designed to circumvent the Plaintiff's Fourth and Fifth Amendment rights. This coercive police activity, intended to force cooperation through intimidation, violates the Due Process Clause. See Colorado v. Connelly, 479 U.S. 157, 167 (1986) ("coercive police activity is a necessary predicate to finding that a confession is not 'voluntary'"). Furthermore, any information obtained through this coercive threat is irreparably tainted as the fruit of the initial seizure's unlawful extension, see Wong Sun v. United States, 371 U.S. 471, 484-85 (1963).

19. Officer McCall then directed Robinson back to her vehicle and spoke with his arriving backup Officer, detailing his version of the stop, and stating that he was "towing the car and seriously considering arresting her on *just* the traffic charges" and later "he's not going to leave until I search that vehicle- or impound that vehicle. Do the impound on it. I can keep him here", indicating that the purpose of any continued detainment of the Plaintiff beyond the arrest of the driver was explicitly for the purposes of conducting a pretextual inventory search on the car through which he could find identifying documents of the passenger or additional "evidence" through which to justify his compelling the passenger to identify. This is a clear violation of Colorado v. Bertine, 479 U.S. 367 (1987), which held that "inventory searches can not be used as a means for further investigatory conduct."

20. McCall then took the first step in carrying out the plan he now had, by arresting the Driver for her misdemeanor driving violations.

21. McCall then took the additional steps in carrying out his plan when he explicitly told the passenger that he was *not* free to leave until he completed a search of the vehicle and some time after this he began his planned inventory.

22. His inventory search of the vehicle incident to Robinson's arrest for traffic violations was conducted in violation of Arizona v. Gant, 556 U.S. 332 (2009). The search fails all three prongs of Gant:
a. Robinson was already secured in the patrol car and could not access the vehicle's interior or trunk.
b. The trunk, where the search was focused, was far outside the area of her immediate control.
c. Critically, it was per se unreasonable to believe that evidence of the traffic offenses for which Robinson was arrested—a tint violation, driving without a license, and failure to maintain insurance—would be found in the vehicle's trunk. She had already provided all relevant documentation. A search for further "evidence" of these violations was a logical impossibility, exposing the search as a transparent pretext for the investigatory fishing expedition Defendant McCall had already verbally admitted to pursuing in Paragraph 19 of this complaint. This violation of Gant's core holding demonstrates a willful disregard for clearly established law to achieve unlawful means.

23. Officer McCall, while conducting this search, took no inventory list or photos of the vehicle's contents, and focused his efforts on only some closed bags and containers, deviating from the "required criteria and procedure" in violation of Florida v. Wells, 495 U.S. 1 (1990), which cites the aforementioned Bertine and held that "requiring standardized criteria or established routine as to such openings prevents individual police officers from having so much latitude that inventory searches are turned into a ruse for a general rummaging in order to discover incriminating evidence."

24. Officer McCall found no documents related to the Plaintiff in the vehicle, as the vehicle was not his. However, during the search he found a weapon which he believed would now give him the post hoc justification for the unlawful extension he had begun earlier. In Wong, the Court

found that the unlawful seizure could not be cured by findings, actions, or admissions made after the fact. Defendant McCall could not have cured his already unlawful extension with alleged justifications he admits he came to incident to the arrest of Robinson.

25. The weapon was lawfully configured for transport in Oklahoma in accordance with 21 O.S. § 1289.7. Upon finding the weapon, Officer McCall confirmed via dispatch that it was not reported stolen and was not associated with any crimes. Officer McCall's stated rationale in his sworn report for confiscating the firearm—the passenger's refusal to identify himself—finds no justification under Oklahoma law. Title 21 OK Stat § 1289.13 permits confiscation only if a person is arrested for a violation other than improper transport, or if the officer has probable cause to believe the weapon is contraband or was used in a crime. Neither condition was met. If his presumption was that the passenger owned the firearm, his confirmation rendered the firearm a legally possessed object which, in an open-carry state, cannot alone establish reasonable articulable suspicion. See United States v. Robinson, 846 F.3d 694 (4th Cir. 2017); United States v. Black, 707 F.3d 531 (4th Cir. 2013); Northrup v. City of Toledo, 785 F.3d 1128 (6th Cir. 2015). The consensus formed by the Fourth, Sixth, and Ninth Circuits on this interpretation of Second Amendment protections in such contexts underscores that no reasonable officer could believe such a seizure was lawful. The confiscation was not based on a reasonable belief of Plaintiff's possession, but was instead a punitive measure for invoking constitutional rights, further illustrating the pretextual nature.

26. Officer McCall's direct contact with District Attorney Will Drake during the ongoing stop irrefutably exposes both his unlawful intent and the City's failure to train. As captured on his body-worn camera, McCall explicitly admitted to Drake that he "had nothing on him [the passenger], except that the gun may be his"—a clear confession that he lacked any reasonable articulable suspicion for his detention of Gideon. McCall then directly asked if he could now compel identification based solely on the discovery of the firearm. This conversation proves:
a. He sought legal cover to justify an investigation he had already unlawfully begun, admitting the firearm was his only pretext.
b. His statement, "I thought they didn't have to," demonstrates a conscious awareness of the constitutional default in his actions and a desire to circumvent it.
c. Upon being informed of a detention utterly devoid of legal justification, Drake did not instruct McCall to terminate it. Instead, by agreeing to "call around" and call back, he shed his role as a prosecutor and became an active investigator participating in the unlawful seizure. This real-time coordination to fabricate probable cause constitutes a meeting of the minds for a conspiracy to violate civil rights.

27. While waiting for Will Drake to return his call, Officer McCall returned to his city vehicle stating to his backup officer that "I'm gonna still work on my citations real quick", verifying that until this point he still had not completed the traffic related portions of the stop some thirty minutes into the stop, thereby validating the Plaintiff's claim of the Rodriguez violation specifically.

28. As captured on his body worn camera, McCall would now ask the information of Robinson associated with the original traffic stop and during this line of inquiry he would answer Robinson when she asked what was going to happen with "Mom is gonna come get the baby real quick, but I asked Drake if he refuses to ID if he wants to see us just hook him up and take you to the jail off of that." The Plaintiff notes that McCall never made any such statement to Defendant Will Drake and his body worn camera shows this clearly. He asked Defendant Will Drake explicitly whether the finding of the firearm could be used to compel the identification of the passenger. This further highlights the meeting of the minds that appears to be a pattern of practice because although this is not what Officer McCall said by any stretch, this is exactly what would happen next.

29. District Attorney Will Drake did call back a short time later to speak with the Officer, after which the Plaintiff was arrested. This action on the part of Defendant Billy McCall violates Oklahoma's own law, specifically 22 OK Stat § 196 , which requires independent suspicion of the passenger in the commission of a crime to extend the lawful Terry stop to them.

30. The Officer stated in his sworn statement that between their two phone conversations during the active traffic stop, Will Drake "called around to two other District Attorney's in the State", and this represents Defendant Will Drake's active participation in an investigatory nature on behalf of the Officer, and is evidenced by Officer McCall's requests shown on his worn body camera for Defendant Will Drake to call him back and "let him know", suggesting that Drake would then be acting as an investigator to assist in "findings" to help establish probable cause.

31. Will Drake knew from this moment and onward that the Officer had no reasonable suspicion that the passenger had committed a crime or was about to, and that Officer McCall did not know the passenger's identification.

32. Will Drake knew then that the Officer could have no particularized suspicion of a prohibited status as it relates to the possession of the weapon, nor did he assert any reasonable suspicion of the Plaintiff in relation to a crime in either case, with or without the weapon.

33. Will Drake knew at this moment that the weapon was not found in the Plaintiff's possession, nor was the Plaintiff in control of the motor vehicle that the weapon was found in.

34. Defendant Drake, having been informed by McCall that there was no probable cause to detain or arrest Plaintiff Gideon, nonetheless took direct, investigatory action during the ongoing Terry stop. By seeking external legal advice on McCall's behalf and subsequently directing Gideon's arrest without any legal basis, Drake shed his role as an advocate and acted as an investigator. In doing so, he knowingly approved the use of a fabricated charge of obstruction to justify an unlawful seizure, conduct which is not protected by absolute immunity. See Pierce v. Gilchrist, 359 F.3d 1279, 1292 (10th Cir. 2004).

35. Officer McCall directly ties his own determination of probable cause in real time to Defendant Will Drake having verbally approved the arrest by saying "my DA *says* you're obstructing if you don't identify", while handcuffing the Plaintiff.

36. The original charge against the Plaintiff when booked by Officer McCall was "obstruction of a public right-of-way".

37. The charge was amended on the Information and Affidavit provided to the court the following day to "Obstruction of an Officer", which District Attorney Will Drake had signed and submitted alongside the Affidavit of Probable Cause sworn to by Officer Billy McCall.

38. Additionally on Information provided to the Court, a "Possession of A Firearm After Conviction of A Former Felony" charge was added, clearly retroactively applied to the Plaintiff after the fact as McCall affirms in his sworn statement that he had no identification of the passenger until arrival at the station where he could use a Facebook search against information on credit cards he retrieved in the passenger's belongings post arrest.

39. Will Drake knew upon receiving the sworn statement that the passenger was not obstructing any lawful investigation prior to Will Drake's own involvement in the active traffic stop.

40. Will Drake knew upon receiving the sworn statement that the particularized status of the Plaintiff was not known until after the arrest.

41. Will Drake knew upon receiving the sworn statement that the passenger was not obstructing an investigation into the weapon, or any crime committed using the weapon discovered in the vehicle.

42. Will Drake knew upon receiving the sworn statement that the Plaintiff was a passenger in a vehicle and therefore could not have been Obstructing a Public Right of Way once lawfully stopped by the police.

43. Will Drake, in doing the acts laid out in Paragraphs 33-36, was in violation of clearly established law. By directing and approving criminal charges he knew were not supported by probable cause, Drake shed his role as an advocate and acted as an investigator, conduct not protected by absolute immunity. See Pierce v. Gilchrist, 359 F.3d 1279, 1292 (10th Cir. 2004). His actions constituted the fabrication of evidence to justify an unlawful seizure, a violation of the Fourteenth Amendment's Due Process clause. See Manuel v. City of Joliet, 580 U.S. 357, 367 (2017) holding a pretrial detention based on fabricated evidence is a clear due process violation; see also Hopper v. Hayes, 452 F. App'x 748, 751 (10th Cir. 2011 *unpublished*) denying qualified immunity where a prosecutor "effectively manufactured probable cause by pressuring a witness to testify and then ignoring evidence that the testimony was false," holding it was "objectively unreasonable for a prosecutor to believe he could constitutionally do so".

44. McCall falsely states in the report that the transport was "without incident", however metadata from his vehicle shows that he drove nearly double the speed limit at various points through the downtown area of Bartlesville with no active emergency signals, and both detainees were unrestrained in the rear seat, as is shown on the in-vehicle recording and corresponding metadata from the Bates labeled material.

45. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

46. At all relevant times, Defendant City of Bartlesville was a municipal corporation responsible for the policies, customs, and training of the Bartlesville Police Department ("BPD"), including Defendant McCall.

47. At all relevant times, Defendant Washington County was a political subdivision responsible for the policies, customs, and actions of the Office of the District Attorney, including Defendant Drake.

48. The constitutional violations suffered by Plaintiff were not isolated incidents but were the direct and foreseeable result of the official policies, customs, and deliberate indifference of the City of Bartlesville and Washington County.

A. Liability of City of Bartlesville

49. The City of Bartlesville, through its policymakers including the Chief of Police, has with deliberate indifference failed to adequately train and supervise its officers, including Billy McCall, on the critical limitations of their authority under the Fourth Amendment, despite the high predictability that officers would encounter legally possessed firearms during traffic stops in Oklahoma, an "open carry" state. This failure violates clearly established law holding that a municipality's failure to train amounts to policy where the need for training is 'so obvious,' and the lack of training 'so likely to result in the violation of constitutional rights,' that the policymakers can reasonably be said to have been deliberately indifferent to the need, as stated in City of Canton v. Harris, 489 U.S. 378, 390 (1989).

50. Specifically, and with deliberate indifference, the City has failed to train its officers on how to lawfully proceed upon discovering a firearm during a traffic stop that is:
   a. Not reported as stolen;
   b. Not observed to be illegally possessed or configured;
   c. Not connected to any reasonable suspicion of another crime.

51. This specific failure to train created a known and obvious loophole whereby officers, lacking any standardized protocol, are left to arbitrarily and unlawfully extend detentions and compel identification based on the mere presence of a legal firearm, in violation of the Fourth Amendment.

52. This failure to train is a policy or custom of the City, as it reflects a deliberate choice among available alternatives to provide no training on this frequent and predictable scenario, thereby giving officers unfettered discretion to violate citizens' rights.

53. Defendant McCall's conduct was not that of a 'rogue actor' but was the direct, predictable, and natural consequence of the City's deliberate indifference. Faced with a common law enforcement scenario—a legally possessed firearm—and utterly devoid of any City-provided guidance or protocol, McCall was forced to improvise and this led to his violation of constitutional rights. His call to the District Attorney for real-time legal advice is irrefutable proof of this training vacuum. The City's failure to train effectively caused its officers to believe such unconstitutional conduct was a permissible option.

B. Liability of Washington County Through Ratification by Final Policymaker

54. Defendant Will Drake is the elected District Attorney for Washington County and at all relevant times was a final policymaker for the County regarding the initiation and approval of criminal charges and the provision of legal guidance to law enforcement.

55. Defendant Drake participated directly in the constitutional violation by:

  a. Being informed by McCall that there was no probable cause to detain or arrest Plaintiff Gideon;

  b. nonetheless directing and authorizing Gideon's arrest for obstruction without any legal basis after a brief investigation,

  c. Subsequently approving and filing fabricated charges in an attempt to retroactively justify the unlawful arrest.

56. Upon being informed of a constitutional violation in progress, Defendant Drake, as a final policymaker, did not stop it. He ratified it. His actions—directing the arrest without probable cause and later approving fabricated charges—constituted the County's official, ex post facto adoption of McCall's unconstitutional conduct. "A final policymaker who approves a subordinate's decision and the basis for it makes the decision its own." See Praprotnik v. City of St. Louis, 485 U.S. 112, 127 (1988).

57. Accordingly, the unconstitutional acts of Defendant Drake are deemed to be the acts of Washington County itself.

58. The 'rogue actor' defense is unavailable to the City and County here. The coordinated, real-time conspiracy between Defendant McCall (a City employee) and Defendant Drake (the County's final policymaker) demonstrates that the constitutional violations were not isolated, unauthorized acts. Instead, they were the product of a combined failure: the City's failure to train its officers, and the County's policy of ratifying constitutional violations by providing legal cover for them. The interplay between these two official failures directly converged and caused Plaintiff's injuries.

## V. CLAIMS FOR RELIEF

### A. Against Officer McCall (42 U.S.C. § 1983)

**COUNT 1**: Unlawful Seizure under the 4th Amendment (see Rodriguez v. United States 741 F. 3d 905.).
59. McCall prolonged detention without reasonable suspicion

**COUNT 2**: False Arrest under the 4th Amendment (see Brown v. Texas, 443 U.S. 47 (1979); see also 22 O.S. § 2001) .
60. Arrested passenger without probable cause

**COUNT 3**: Coercive Intimidation under the 14th Amendment (see Wong Sun v. United States, 371 U.S. 471 (1963), see also Colorado v. Connelly, 479 U.S. 157 (1986))
61. Threatened other persons to circumvent the constitutional rights of the Plaintiff.

**COUNT 4**: Conspiracy to Violate Rights under 42 U.S.C. § 1985
62. McCall & Drake conspired to fabricate charges beginning during the active stop and continued this cooperation to achieve unlawful means post-arrest.

**COUNT 5**: Falsifying of Evidence under the 14th Amendment  (see Pierce v Gilchrist 359 F.3d 1279, and Manuel v. Joliet, 580 U.S. 580 U.S. 357(2017))
63. Retroactively added charges to justify unlawful arrest

**COUNT 6**: Reckless Endangerment (State Tort) and Deliberate Indifference
64. Unsafe transport violated OK law (OK Stat. Tit. 47, § 11-801)

### B. Against DA Will Drake (42 U.S.C. § 1983)

**COUNT 7**: Unlawful Seizure under the 4th Amendment  (see Pierce v Gilchrist 359 F.3d 1279, and Manuel v. Joliet, 580 U.S. ___ (2017))
65. Defendant Drake, acting under color of law and in an investigatory capacity, directly participated in the unlawful seizure of Plaintiff by authorizing and directing his arrest without probable cause, despite knowing Officer McCall lacked any reasonable, articulable suspicion that Plaintiff had committed a crime.

**COUNT 8**: Falsifying of Evidence under the 14th Amendment
66. Defendant Drake, upon receiving Officer McCall's sworn affidavit, knowingly fabricated, approved, and instituted criminal charges ('Obstruction') that he knew were not supported by probable cause and were intended to provide post-hoc justification for an unlawful arrest.

**Count 9**: Conspiracy to Violate Civil Rights (42 U.S.C. § 1985)
67. Defendant Drake and Defendant McCall, during their telephone conversations, reached a meeting of the minds and conspired to violate Plaintiff's Fourth and Fourteenth Amendment

rights by agreeing to arrest and charge him without probable cause as a means to punish him for invoking his right to remain silent and to circumvent constitutional limitations on the traffic stop, and in doing so became liable for all actions taken by McCall to further said conspiracy, both before and after the fact.

**Count 10**: Malicious Prosecution under the 14th Amendment (see Pierce v Gilchrist 359 F.3d 1279, and Manuel v. Joliet, 580 U.S. ___ (2017))

68. Defendant Drake knowingly and willfully initiated and continued a criminal prosecution against Plaintiff without probable cause and with malice, resulting in Plaintiff being seized and subjected to legal process.

### C. Against Defendants City of Bartlesville and Washington County, Oklahoma

**COUNT 11**: Monell Liability (42 U.S.C. § 1983)

69. As above, the City of Bartlesville, through its policymakers including the Chief of Police, has failed to adequately train and supervise its officers, including McCall, on the critical limitations of their authority in direct contravention of clearly established law.

70. District Attorney Will Drake's directive to arrest and his approval of the charges constituted an official policy of ratification for Washington County. By endorsing McCall's unconstitutional conduct, the County, through its final policymaker, adopted that conduct as its own and became directly liable for the resulting violations.

### VI. REQUESTED RELIEF

71. Compensatory damages as a result of emotional distress, unlawful arrest, wrongful incarceration, and the violation of constitutional rights, in an amount to be determined at trial.

72. Punitive damages against Defendants McCall and Drake, as a result of their willful, intentional, and malicious misconduct, in an amount sufficient to punish said Defendants and deter others from engaging in similar conduct.

73. Injunctive relief, including but not limited to:

a. A permanent injunction barring any demand for identification from a passenger during a traffic stop absent **reasonable, articulable suspicion, documented in writing prior to the demand, that the passenger is engaged in criminal activity unrelated to the initial purpose of the stop;

b. A permanent injunction barring any threat to contact child protective services (DHS) during a detention unless the officer possesses clear, immediate, and specific evidence of abuse or neglect that presents an imminent threat to the child's physical safety;

c. An order mandating that the Bartlesville Police Department implement annual, mandatory training for all officers on the constitutional limitations of traffic stops as established by Rodriguez v. United States and Brown v. Texas;

d. An order mandating that the Washington County District Attorney's Office adopt a policy prohibiting prosecutors from providing real-time, investigative legal advice to officers in the field for the purpose of establishing probable cause;

e. An order mandating personal financial accountability for any officer found liable for a constitutional violation that results in a judgment or settlement against the City or County;

f. An order barring the City of Bartlesville from entering into arbitration to reinstate any officer terminated for conduct that resulted in a finding of liability for a constitutional violation.

74. Attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

75. The total of damages requested in relation to the 11 Counts for all Defendants shall be $660,000.00, pending any additional facts obtained in the foregoing.

VII. JURY DEMAND
76. Plaintiff demands a jury trial on all claims.

DATED: 8/26/2025
Respectfully submitted,

Gabriel Gideon
520 N Quincy St,
Fredonia, KS 66736
(620) 870-8675

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
OKLAHOMA

Gabriel Gideon,
Plaintiff,
v.
Officer Billy McCall, in his individual and official capacity, et al.,
Defendants.

Case No.: _____

## INDEX AND COVER SHEET FOR EXHIBIT A

**Plaintiff refers to the following Exhibit in support of the Complaint. This Exhibit is
incorporated by reference as if fully set forth herein.**

| Exhibit | Description | Source or Author | Relevant to Paragraph(s) | No. of Pages |
|---------|-------------|------------------|--------------------------|--------------|
| A | Bartlesville Police Department Case Report & Affidavit for Probable Cause Arrest | Defendant McCall | 10, 13, 15, 16, 18, 19, 22, 23, 25, 26, 27, 28, 29, 30, 35, 38, 44 | 8 (Labeled Ex. A 1 of 8, etc.) |

# IN THE DISTRICT COURT IN AND FOR WASHINGTON COUNTY STATE OF OKLAHOMA

## No. CASE-<u>2023</u> - <u>00029156</u>

### <u>ROBINSON, REYNA SEYMONE</u>
### <u>08/24/1996</u>

### AFFIDAVIT FOR PROBABLE CAUSE ARREST.

The undersigned upon oath deposes and states as follows, to-wit: based on the following affidavit and any attachments thereto, there is probable cause to believe the Defendant committed the crime(s) of **OBSTRUCTING DRIVER'S VIEW O. S 47-11. 1104, NO INSURANCE O. S 47-7.606, NO VALID DRIVERS LICENSE O. S 47-6.101**

### I.
Affiant states I am a certified Police Officer employed by the City of Bartlesville, and have been so employed since February 01, 2021. Affiant states I am currently assigned to the Charlie Shift with the hours of duty from 1345 hours to 2200 hours. Affiant states I was on duty on 08/23/2023, at approximately 1829 hours, when I investigated the above named crime(s), located McDonalds at 606 SE Washington Blvd. Which is located within the corporate city limits of Bartlesville, Washington County, Oklahoma

### II.
While on patrol, I observed a silver BMW 2XS bearing LFK932 with an obstruction of driver's view. The vehicle had window tint covering the entire windshield below the AS1 LINE.

### III.
I conducted a traffic stop and made contact with the defendant. The defendant advised me that she had a suspended driver's license out of the state of Kansas and did not possess a valid Oklahoma driver's license. While gathering information for the traffic stop the defendant handed me an old piece of paper that showed that the vehicle had insurance.

### IV.
I was unable to confirm insurance on OLETS and on the Oklahoma verification system (IVS). The piece of paper that the driver initially handed to me was from the insurance company "The General". From previous traffic stops The General is always able to confirm in real time if insurance is active on the vehicle.

001

Exhibit A 1 of 8

AFFIANT FURTHER SAYETH NOT.

Based on the affidavit and any attachments thereto, the undersigned prays that this Honorable Court issue a finding of probable cause for this arrest.

Officer B. McCall #1083

```
Brandon L. Meyer
Notary Public
State of Oklahoma
Commission #20013502
Expiration: 11-02-2024
```

Subscribed and sworn to me this __28__ day of __August__, 2023.

5627
Notary Public

My commission Expires: __11-02-2024__

FINDING OF PROBABLE CAUSE FOR ARREST

The undersigned Judge of this Court, based on this affidavit and any attachments thereto, hereby determines that there was probable cause for arrest.

Dated this _____ day of _____, 2023.

_____
District Judge

002

Exhibit A 2 of 8

## BARTLESVILLE POLICE DEPARTMENT

ARREST INFORMATION SHEET          CASE# **2023-00029156**

| | | | | |
|---|---|---|---|---|
| **DETAILS** | ARREST DATE/TIME **08/28/2023  18:52** | ARREST TYPE **On View** | | ARRESTING OFFICER **McCall** |
| | LOCATION OF ARREST **606 SE WASHINGTON BLVD BARTLESVILLE, OK** | | | |

### ARRESTEE

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **ARRESTEE** | NAME (JACKET TYPE/LAST, FIRST, MIDDLE SUFFIX) **ROBINSON, REYNA SEYMONE** | | | | | | | |
| | DOB **08/24/1996** | AGE **27** | ADDRESS (STREET, CITY, STATE, ZIP) **102 S 9TH  ST INDEPENDENCE, KS 67301** | | | | | |
| | RACE **Black** | | SEX **Female** | HEIGHT **5'3"** | WEIGHT **130** | HAIR **Black** | | EYE **Brown** |
| | DL NUMBER/STATE **K04246292 / KS** | | PRIMARY PHONE  Cell **(620)870-8943** | PHONE #2 | | PHONE #3 | | |

### CHARGES

| | STATUTE / DESCRIPTION | COUNTS | ATTEMPT/COMMIT |
|---|---|---|---|
| 01 | 47-11.1104 **OBSTRUCTING DRIVER'S VIEW OR CONTROL** | 1 | Commit |
| 02 | 47-7.606 **FAILURE TO MAINTAIN SECURITY / INSURANCE** | 1 | Commit |
| 03 | 47-6.101 **NO VALID DRIVER'S LICENSE** | 1 | Commit |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

### NARRATIVE

**NEW COUNTY CHARGES**

**PERSONAL PROPERTY**
**SHIRT, SHORTS, SHOES**

| REPORTING OFFICER **McCall** | DATE **08/28/2023** | REVIEWED BY | 003 |
|---|---|---|---|

BPD Arrest 2023-00029156-19_38_38 Page 1 OF 1

Exhibit A  3 of 8

## BARTLESVILLE POLICE DEPARTMENT

CASE REPORT

BWC ☒ YES ☐ NO

CASE# **2023-00029156**

**EVENT**

| REPORTED DATE/TIME | OCCURRED INCIDENT TYPE | | |
|---|---|---|---|
| 08/28/2023  18:29 | **Traffic Complaint/ Investigation** | | |
| OCCURRED FROM DATE/TIME | OCCURRED THRU DATE/TIME | LOCATION OF OCCURRENCE | |
| 08/28/2023  18:29 | 08/28/2023   19:11 | **606 SE WASHINGTON BLVD**<br>**BARTLESVILLE, OK** | |

**OFFENSES**

| | STATUTE/DESCRIPTION | COUNTS | ATTEMPT/COMMIT |
|---|---|---|---|
| 01 | 47-11.1104<br>**OBSTRUCTING DRIVER'S VIEW OR CONTROL** | 1 | Commit |
| 02 | 47-7.606<br>**FAILURE TO MAINTAIN SECURITY / INSURANCE** | 1 | Commit |
| 03 | 47-6.101<br>**NO VALID DRIVER'S LICENSE** | 1 | Commit |
| 04 | 21-540<br>**OBSTRUCTING OFFICER** | 1 | Commit |
| 05 | 21-1283.A<br>**POSSESS FIREARM AFTER CONVICTION OF FELONY (AFC)** | 1 | Commit |

**SUBJECT**

| JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Adult | Suspect | ROBINSON, REYNA SEYMONE | | | | | | | |
| DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | | | |
| 08/24/1996 | 27 | 102 S 9TH ST INDEPENDENCE, KS 67301 | | | | | | | |
| RACE | | SEX | HEIGHT or RANGE | | WEIGHT or RANGE | | HAIR | EYE | |
| Black | | Female | 5'3" | 5'3" | 130 | 130 | Black | Brown | |
| DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | | | | PHONE #3 | |
| K04246292 / KS | | (620)870-8943 | | | | | | | |

**SUBJECT**

| JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Adult | Suspect | GIDEON, GABRIEL TERECE | | | | | | | |
| DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | | | |
| 07/21/1992 | 31 | 502 N BUCKEYE COFFEYVILLE, KS 67337 | | | | | | | |
| RACE | | SEX | HEIGHT or RANGE | | WEIGHT or RANGE | | HAIR | EYE | |
| Black | | Male | 6'3" | 6'3" | 163 | 163 | Black | Brown | |
| DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | | | | PHONE #3 | |
| F4744768 / CA | | | | | | | | | |

**SUBJECT**

| JACKET/SUBJECT TYPE | | NAME (LAST, FIRST, MIDDLE SUFFIX) | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Business | Victim | STATE OF OKLAHOMA, | | | | | | |
| DOB | AGE or AGE RANGE | ADDRESS (STREET, CITY, STATE, ZIP) | | | | | | |
| | | | | | | | | |
| RACE | | SEX | HEIGHT or RANGE | WEIGHT or RANGE | HAIR | EYE | | |
| | | | | | | | | |
| DL NUMBER/STATE | | PRIMARY PHONE | | PHONE #2 | | PHONE #3 | | |

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| McCall | 08/28/2023 | |

054

Exhibit A  4 of 8

## BARTLESVILLE POLICE DEPARTMENT

CASE REPORT          CASE# 2023-00029156

### VEHICLES as INVOLVED

| INVOLVED VEHICLE | VEHICLE ROLE | | | |
|---|---|---|---|---|
| | **Suspect Vehicle** | | | |
| | VEH YR | TYPE/MAKE/MODEL | | STYLE |
| | 2007 | **BMW (Germany)** | | 4 Door Sedan/Truck |
| | PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
| | **LFK932 / OK** | **WBAVC73587AC79750** | **Silver** | |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | | |
| | **2XS** | | | |

| INVOLVED VEHICLE | VEHICLE ROLE | | | |
|---|---|---|---|---|
| | VEH YR | TYPE/MAKE/MODEL | | STYLE |
| | PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | | |

### VEHICLES as PROPERTY

| PROPERTY VEHICLE | PROPERTY CODE | | | VALUE |
|---|---|---|---|---|
| | VEH YR | TYPE/MAKE/MODEL | | STYLE |
| | PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | | |

| PROPERTY VEHICLE | PROPERTY CODE | | | VALUE |
|---|---|---|---|---|
| | VEH YR | TYPE/MAKE/MODEL | | STYLE |
| | PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | | |

| PROPERTY VEHICLE | PROPERTY CODE | | | VALUE |
|---|---|---|---|---|
| | VEH YR | TYPE/MAKE/MODEL | | STYLE |
| | PLATE / STATE | VIN | TOP COLOR | BOTTOM COLOR |
| | ADDITIONAL DESCRIPTIVE INFORMATION | | | |

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| McCall | 08/28/2023 | |

Exhibit A 5 of 8

## BARTLESVILLE POLICE DEPARTMENT
### CASE REPORT                    CASE# 2023-00029156

### NARRATIVE

Officer Billy McCall
Bartlesville Police Department
8/28/2023 at 1829 Hours
Possession of firearm (AFC) and traffic charges
2023 – 00029156

On the above date and time while on patrol, I observed a silver BMW bearing Oklahoma
tags LFK932 with an obstruction of driver's view. The vehicle had extremely dark window
tint well below the AS1 LINE.

I activated my emergency overhead lights and the vehicle came to rest in the north
McDonald's parking lot located at 606 SE. Washington Blvd. I made contact with the driver
who identified herself as Reyna Robinson by her Kansas driver's license (paper copy). I
requested for Reyna to get me her proof of insurance, while she was looking I asked the
passenger for his name and he refused to give me any information. I had the driver step out
of the vehicle and walk back to my patrol vehicle. Almost every situation where people don't
cooperate inside the vehicle for my safety I had the driver step out so that I can continue my
investigation.

While speaking with Reyna she told me that she did not know who the passenger was and
that his name was Gabe. Reyna said Gabe and her were just traveling together. I walked
back to the vehicle and asked Gabe what his relationship was to the driver and he told me
that she was his girlfriend. I walked back to Reyna and confronted her with the information
and also requested for a K9 unit however we did not have one available. While speaking to
Reyna she said she didn't want to lie and she told me that her driver's license was
suspended out of the state of Kansas.

I told Reyna that I needed to know who her passenger was just in case she went to jail. I
asked if he was her "baby daddy" and she told me no. I had Reyna sit back in the vehicle
while I continued my traffic stop. I ran Reyna's name through dispatch and they were able
to confirm that she had a suspended license out of the state of Kansas. Reyna's driver's
license was not suspended in the state of Oklahoma, however she did not have a valid
Oklahoma driver's license. I ran the vehicle through OLETs and the Oklahoma insurance
verification system, I was unable to confirm insurance in real time on both sites. I requested
that dispatch send me the next wrecker upon rotation, a short time later they advised that
Paul's wrecker would be in route.

Moments later Sergeant Tyler Dietrich arrived on scene. I walked back to the vehicle and
had Reyna step out. I advised Reyna that she would be going to jail for driving with no
license. Reyna asked me if she could call her mother to come pick up the baby and I told

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| McCall | 08/28/2023 | |

## BARTLESVILLE POLICE DEPARTMENT
### CASE REPORT                    CASE# 2023-00029156

NARRATIVE (continuation)

her yes. Reyna told me that her phone was dead and told me that her passenger Gabe could call her mother. I asked Reyna how he knows her mother if they don't know each other. She responded with "oh I could use his phone". A short time later I placed Reyna into hand restraints and then into the back of my patrol vehicle for transport.

As I began my inventory I located in the back seat behind the driver seat a Radical Firearms RF-15 multi caliber firearm, serial #2-064361. I ran the serial number through dispatch and it was later determined that the firearm was not stolen. Sergeant Tyler Dietrich asked me what caliber the firearm was, and I told him I didn't know but it looked larger than a .556. The passenger named Gabe spoke up and said the firearm was not a 9mm and that is was a .556, he called me dumb for not knowing the caliber of the firearm that was located inside the vehicle. I continued my inventory into the trunk of the vehicle where I located a large backpack. Inside the backpack was a 30 round magazine to that firearm. The backpack appeared to belong to a male, inside the backpack was men's clothing and cologne.

Since at the time the male would not identify himself I took the firearm for safekeeping. I collected the firearm and the magazine and placed them into my vehicle. In almost every situation where somebody will not identify themselves, it's because they are either a felon or they have warrants. I contacted Washington County District Attorney Will Drake and advised him of the situation. I told him that neither the driver or the passengers stories were matching and that I located a firearm inside the vehicle. I asked Will Drake if the passenger of the vehicle had to identify themselves, Will told me they did. Will advised me that he would double check and a short time later he called me back. Will told me that two other District Attorney's from within the state and him all agreed that the passenger had to identify himself and if he didn't he could be arrested for obstruction.

I came to the conclusion of the firearm belong to Gabe because he knew that the firearm was in the vehicle and that he knew what caliber the firearm was. The magazine was also located in a male's backpack with items belonging to a male and he was the only male inside the vehicle.

I walked back to Gabe and advised him that he needed to identify himself or he would be arrested for obstruction. Gabe refused to identify himself and began to ask questions, I stopped his questions and said I was only going to ask one more time. I requested Gabe give me his name and date of birth or that I would arrest him for obstruction. Gabe refused and I placed him into hand restraints. I then placed him into the back of my patrol vehicle for transport.

I transported both suspects to the jail without incident. While at the jail I was able to identify Gabe as Gabriel Gideon 7/21/1992. I requested dispatch to run a triple III on both

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| McCall | 08/28/2023 | |

Exhibit A 7 of 8

## BARTLESVILLE POLICE DEPARTMENT
CASE REPORT                    CASE# **2023-00029156**

NARRATIVE (continuation)

male and female. The female was not a felon however Gabriel was a convicted felon out of the state of California (his triple III is attached to this report). I completed all book in reports and went back into service.

A short time later electronic impound log was submitted for the vehicle that was impounded. Later at the Police Department the firearm was entered into locker #16 as evidence.

A copy of this report along with both arrest reports and to probable cause affidavit will be forwarded to the Washington County District Attorney's Office. A copy of the triple III will be attached to the report.

This incident is cleared by to arrest.

End of report.

| REPORTING OFFICER | DATE | REVIEWED BY |
|---|---|---|
| McCall | 08/28/2023 | |

**Cover Letter & Instructions for the Clerk**

Gabriel Gideon
520 N. Quincy St.
Fredonia, KS 66736
(620) 870-8675

Clerk of the Court
U.S. District Court for the Northern District of Oklahoma
333 West Fourth Street, Room 411
Tulsa, Oklahoma 74103

RE: Submission of Pro Se Complaint – Gideon v. McCall, et al.

Dear Clerk,

Please find enclosed for filing the following documents for Plaintiff Gabriel Gideon:

1. Original and Four (4) Copies of the Complaint, which is 13 pages (including the Civil Cover sheet "JS 44" as its first page).
2. Original and Four (4) Copies of "Exhibit A" with an Exhibit Cover Sheet as the first page of each. The Exhibit including the cover sheet is 9 pages. Each page of the actual Exhibit is hand-labeled in the bottom (e.g., "Exhibit A, Page 1 of 8" and so on).
3. One (1) Original Consent by Pro Se Litigant to Receive Notice of Electronic Filing
4. (4) Proposed Summonses, one for each named Defendant

This is a civil action brought under 42 U.S.C. § 1983 against defendants Officer Billy McCall, the City of Bartlesville, Washington County District Attorney Will Drake, and Washington County, Oklahoma. The complaint seeks damages in the amount of $660,000.00

The plaintiff respectfully requests that the Court issue summonses for all defendants.

Thank you for your assistance in this matter.

Respectfully submitted,

Gabriel Gideon,
Plaintiff, Pro Se