# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

GABRIEL GIDEON,

Plaintiff,

v.

OFFICER BILLY MCCALL, et al.,

Defendants.

Case No. 25-cv-00450-JFH-JFJ

## PLAINTIFF'S BRIEF IN SUPPORT OF PRELIMINARY INJUNCTION

### INTRODUCTION

This case presents a textbook example of why federal injunctive relief exists: to halt a pattern of ongoing constitutional violations and bad-faith retaliation orchestrated by the Washington County District Attorney's Office, which now includes the intimidation of a material witness in this federal proceeding. The Washington County District Attorney's Office, under the direct supervision of Will Drake, both before and after being served with this federal lawsuit, has engaged in a pattern of retaliatory conduct against myself and a potential material witness, Reyna Robinson. This conduct—culminating in the revocation of her bond for a hearing she was not ordered to attend—is a blatant attempt to intimidate a witness, punish her for exercising her constitutional rights, and obstruct the fact-finding process in this federal case. This Court has the authority to enjoin such bad-faith tactics to protect its own proceedings and prevent irreparable harm.

## STATEMENT OF FACTS

1. To first highlight the retaliation carried out against myself, Plaintiff respectfully brings a clarification to the Court's attention regarding the timeline of events in the state cases, which underscores the pattern of retaliatory prosecution. In the Magistrate's Recommendation on the Temporary Restraining Order, where it is stated that the bench warrant against me in the State v Gideon was requested nearly a year after a failure to appear, I submit to the court that the warrant which is referenced here one year later, is actually relative to a separate charge filed by the District Attorney's office in direct response to an email I sent raising the issues this very federal case is built on. The bench warrant for the failure to appear in the initial case relative to the stop was actually issued on October 12th, 2023, but was followed more than a year later by *additional charges* and a warrant related directly to my protected speech.

2. In highlighting this clarification for the record, the bench warrant the Magistrate references that was filed almost a year later **does exist** and in fact was *temporally proximate* to an email from myself to Assistant District Attorney Veronica Threadgill on October 10th, 2024. The additional charges and warrant aligns explicitly with the day she responded to that email, on October 16th, 2024. The additional charges here were for "bail jumping" and were filed on October 16th, 2024. To recount:

    a) a bench warrant for the missed court date existed as of October 12th, 2023,

    b) the Plaintiff reached out to the Office via email to follow up on the Plaintiffs status as a **non felon** on October 10th, 2024,

    c) The Plaintiff explicitly stated that there were issues of constitutional violation at hand that would need to be addressed,

d) on the same day as the response from the ADA was received, new charges related to the now year old offense were filed against me by the DISTRICT ATTORNEY'S OFFICE.

3. Now, to demonstrate the continued pattern of retaliation, Plaintiff requests this Court take judicial notice of the docket and filings in **State of Oklahoma v. Reyna Robinson Case No. CM2023-00365**. As the Magistrate Judge noted, federal courts may take judicial notice of proceedings in other courts that have a *direct relation* to the matters at issue. The Robinson case is a direct relation; it arises from the very same traffic stop and involves the same defendants and their alleged constitutional violations.

4. Key dates from that docket include:

A. June 16, 2025: Robinson files a Motion for Clarification of her obstruction charge.

B. June 25, 2025: The State files its Response to Robinson's Request For Clarification, asking that the Court *deny her request* to clarify why she was being charged with Obstruction.

C. July 24, 2025: Robinson files her reply the State's response

D. August 20, 2025: Robinson files a Supplementary Motion for Clarification and to Address New Evidence of Prosecutorial Misconduct.

E. August 26, 2025: Gideon v McCall, et. al. filed in the Federal courts.

F. September 2, 2025: County and City served Complaint and Summons

G. September 12th: Mrs. Robinson contacts ADA Gullet via email requesting informally that the Office recuse based on the federal complaint.

H. September 12th: Gullett responds with "I look forward to whatever you file"

I. September 16th: Robinson files Emergency Motion to Appoint a Special Prosecutor and Excuse Personal Appearance

J. September 17, 2025: The state court holds the planned Status on Attorney hearing. Robinson's Emergency Motion to Appoint a Special Prosecutor and to Excuse Appearance is provided to the Court. The court passes the matter over the State's objection and does not rule on the motion, setting a "special hearing" for 8/30/2025. The Court Minutes are provided here:

K. September 30, 2025: The state court, despite the pending motion to appoint a special prosecutor and excuse her appearance, revokes Robinson's bond for failing to appear, despite her not being Ordered to Appear as evidenced in the Court Minutes in the previous section. The Motion was not ruled on, despite the undeniable fact that the "special hearing" was the direct consequence of the Motion to Appoint a Special Prosecutor and Excuse Personal Appearance filed by Robinson.

5. None of the Motions have been ruled on or heard by this District Judge, instead opting to require Ms. Robinson to seek counsel or repeatedly pass the matters while the state in turn openly offered plea agreements to Ms. Robinson that could be detrimental to my claims if accepted. While Ms. Robinson is not a party to this federal suit, she is potentially a crucial material witness should the case proceed to discovery. Her testimony may be essential to establishing the facts of the stop, the threats made by Officer McCall, and the inconsistent statements made by those involved Defendants' that form the basis of my conspiracy and fabrication claims.

6. The sequence of events demonstrates a clear pattern of retaliation and intimidation. The County admits, in their Motion to Enter Out Of Time, that Defendant Drake's office was aware of this federal complaint since service on September 2, 2025. Despite this knowledge, the office requested a bench warrant for Robinson at the September 17 hearing, and although denied here, they secured a bond revocation on September 30.

These adverse actions correlate directly with Robinson's own vigorous constitutional challenges to the prosecution, including her motions for clarification and for a special prosecutor and mirror that of the retaliation taken against myself. In fact, it was Veronica Threadgill, who appeared on behalf of Assistant District Attorney Zoe Gullet, and requested the bench warrant against Robinson, showcasing the interchangeability of persons representing this District Attorney's Office.

7. This conduct sends a chilling message, that any witness who cooperates with a federal civil rights challenge against Washington County will be subject to punitive and disproportionate retaliation when at the County's discretion. This constitutes irreparable harm to my ability to present a complete case to this Court.

8. The County's stated reason for its late appearance—"confusion" over who should respond to a lawsuit naming its own District Attorney—is an admission of a critical failure. The assertion that the District Attorney, a named Defendant, would be the responding party on behalf of the County proves that this is not mere negligence, but deliberate indifference in maintaining a system so broken that it cannot even respond to a federal complaint alleging grave constitutional violations by its top legal officer. This stated reason furthermore showcases the inherent lack of ability of the County or other Defendants to make determinations on its own conflicts of interest. The County admits that their representation believed that the District Attorney would respond to the Complaint on behalf of the County despite being a named Defendant, and that the District Attorney himself believed the inverse was true. This Court's intervention to clarify what a conflict of interest or the appearance of impropriety is, is completely necessary given these circumstances.

9. Further, this admission does more than explain a delay; it proves a 'deliberate indifference'. A municipality that is 'confused' or unclear about how to respond to a federal lawsuit alleging its top legal officer committed various crimes against citizens rights is by definition a municipality with a policy of indifference to constitutional rights.

10. These failures here are in line with the "official policy or custom" that I allege in my Monell claim. The lack of a adherence to a basic protocol directly caused the three-week delay during which the DA's office, aware it was now under federal scrutiny, engaged in the very same type of conduct at issue. The County's policy of inaction or indifference for the Constitutional rights of citizens has shown itself again and has further empowered and enabled the continued retaliation that has now occurred consistent with the original request for Preliminary Injunction.

## LIKELIHOOD OF SUCCESS ON THE MERITS

11. Plaintiff is *likely to succeed on the merits* of his claims as the factual record provided in the Complaint establishes several constitutional violations for which relief can be sought. Furthermore, the Plaintiff will submit the Bates labeled worn body camera to the Court in a subsequent motion to prove that the statements referred to in the complaint, made by Defendants, are entirely accurate both verbally and contextually. Tate v City of Bartlesville clarifies that "pro se litigants should be given some latitude on proving their claims", and further that "Motions to Dismiss based on immunity are not appropriate for the Motion to Dismiss stage, but rather the Summary Judgement phase as immunity is fact intensive inquiry." The case is therefore likely to proceed to Discovery.

12. As the Magistrate Judge's own summary of the Complaint acknowledges, the core facts of the violations alleged are clear. Plaintiff, a passenger, was detained long after the

initial purpose of the stop had concluded. Officer McCall explicitly called Defendant Drake, as he lacked any lawful basis to detain or identify Plaintiff. Plaintiff was arrested for failing to identify absent reasonable suspicion that the Plaintiff committed a crime. Plaintiff was later charged with Obstruction and Possession of a Firearm After Former Conviction. Extending a traffic stop to investigate matters unrelated to its initial purpose without independent reasonable suspicion violates the Fourth Amendment. Rodriguez v. United States, 575 U.S. 348 (2015). Inventory searches incident to an arrest can not be a means for further investigatory conduct. Colorado v. Bertine, 479 U.S. 367 (1987) Here, the officer's own statement that he "took the weapon for safekeeping" proves the stop was unlawfully extended and done so in relation to the passengers identity, not the lawful inventory, making his subsequent arrest of Plaintiff for obstruction a direct fruit of that poisonous tree. His statements after the arrest of the Driver but prior to the inventory, in that the passenger could not leave until his inventory was complete, are evidence of such.

13. Defendant Drake, as a final policy maker both participated in and ratified the conduct. The critical failure for any defense occurred when Officer McCall contacted Defendant Drake. At that moment, McCall informed Drake that:

    (1) the driver was already arrested,

    (2) the stop's original mission was complete,

    (3) he had "nothing" on the passenger other than that he may be able to attribute the firearm to him.

    At this time, Defendant Drake knew that:

    1) the Plaintiff was not previously being investigated lawfully for any reason,

    2) The firearm was found in an inventory search incident to an arrest of another person

and not in the Plaintiff's possession or control,

3) The reason for the stop had already been concluded

14. Having this information, Drake knew that the traffic stop had already been unlawfully extended and failed to instruct McCall to terminate the stop. In not doing so, he became a participant in the unlawful extension, at minimum. A prosecutor acting in an investigatory role who learns of an ongoing constitutional violation has a duty to not become a complicit participant. Pierce v. Gilchrist, 359 F.3d 1279 (10th Cir. 2004).

15. Instead of instructing McCall to terminate the unlawful detention, Drake shed his role as a neutral prosecutor and became an active investigator. By "calling around" to other attorneys to find a post-hoc legal justification for the arrest after being informed that no investigation was lawfully ongoing, he effectively spurred the investigation, and engaged in a conspiracy to fabricate probable cause. His subsequent authorization of the arrest constituted an official "ratification" of McCall's misconduct, adopting it as the official action of Washington County itself. See Praprotnik, 485 U.S. at 127.

16. The allegations against the County are further entrenched by it's own stated reason for its default—"confusion" over who should respond to a lawsuit naming its own District Attorney. This is not mere negligence; it is deliberate indifference. The failure to have a basic protocol for handling litigation, especially when it alleges criminal conduct by the County's top legal officer, is a "policy or custom" of inaction that is "so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989). This admitted policy failure directly caused the three-week delay during which the DA's office, aware of the federal scrutiny, continued its retaliatory conduct.

## IRREPARABLE HARM

17. The irreparable harm here is not speculative; it is actively unfolding and cannot be remedied by a monetary award after the fact. The Defendants' actions inflict harms that no verdict can undo. The bond revocation for Ms. Robinson, timed just days before her child's birthday, permanently deprives her of a moment that can never be recovered and unfairly positions Ms. Robinson as it relates to her future participation in this case on behalf of the Plaintiff, as the trade off for her so far has been online threats, prosecutors seeking unnecessary warrants, and the constant anxiety associated with the entire ordeal continuing years later. The relentless, bad-faith prosecution has shattered personal relationships and caused profound emotional distress. These are the very types of "non-compensable" injuries that define irreparable harm.

18. For over five months, beginning with Robinson's Motion For Clarification of Charge, the State court has outright ignored motions alleging prosecutorial misconduct, opting instead to focus on procedural minutiae while allowing the constitutional violations to continue. This failure to act demonstrates that the state process is unwilling or incapable of halting this irreparable harm, making federal injunctive relief not just appropriate, but necessary. The County, as stated in this Motion, has already clarified that it cannot reasonably be expected to determine the appearance of impropriety or conflict on its own.

## THE BALANCE OF EQUITIES

19. The balance of hardships weighs decisively in Plaintiff's favor. The harm to Plaintiff and material witnesses—including loss of liberty, emotional distress, and the permanent loss of personal moments—is severe and ongoing. In contrast, the injury to the Defendants from an injunction is negligible, amounting only to a temporary administrative delay in a

misdemeanor prosecution. The state has no valid interest in pursuing an unconstitutional and retaliatory prosecution.

## THE PUBLIC INTEREST FAVORS AN INJUNCTION

20. It is always in the public interest to prevent the violation of constitutional rights. See Heideman v. S. Salt Lake City, 348 F.3d 1182, 1190 (10th Cir. 2003). Here, the public interest is overwhelming: to halt the weaponization of the judicial process, protect the integrity of federal court proceedings from witness intimidation, and restore public confidence in the fairness and impartiality of the justice system.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant his Motion for Preliminary Injunction and enter an Order:

1. Enjoining Defendants Will Drake, the Washington County District Attorney's Office, their officers, agents, employees, and all persons in active concert or participation with them, from any further participation in the state criminal prosecutions of State of Oklahoma v. Gabriel Gideon, Case No. CF-2023-00230, and State of Oklahoma v. Reyna Robinson, Case No. CM-2023-00365, including but not limited to, proceeding with hearings, filing motions, offering plea agreements, or seeking bench warrants;

2. Ordering the recusal of the Washington County District Attorney's Office from the aforementioned cases and mandating the appointment of a special prosecutor and;

3. Granting any other further relief this Court deems just and proper.

Respectfully submitted,

*[signature]*

Gabriel Gideon, Plaintiff Pro Se

520 N Quincy St, Fredonia, KS

(620)870-8675

gabrieltgideon@outlook.com