# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

Gabriel Gideon,

Plaintiff,

v.

Officer Billy McCall, et al.,

Defendants.                                   Case No.: 25-cv-00450-JFH-JFJ

## PLAINTIFF'S REPLY TO COUNTY'S ANSWER ON PRELIMINARY INJUNCTION

### INTRODUCTION

Defendant Washington County's Response is not a legal argument in the scope of the allegations; it is a concession. The County offers no defense of *their* District Attorney Will Drake's offices' ongoing conduct. It provides no reason why his participation in the allegedly retaliatory and fabricated prosecution should continue. It presents no argument against the well-pleaded facts of ongoing constitutional injury. Instead, the County has filed a transparent attempt to hide behind their separate Motion to Dismiss, hoping this Court will ignore the stark reality that not even the *County* itself is willing to stand by its top law enforcement official. These two defendants are interchangeable for the purposes of this suit in all respects.

This non-response, both by Defendants Washington County and Will Drake, will be used

as the basis for this multi-point response to ensure clarity. The requested injunction is necessary to halt a bad-faith prosecution that the County itself will not endorse or even explain. Whether Will Drake is on the State of Oklahoma's payroll or the County's payroll is a question for the accountants and insurers. For the purposes of § 1983, the only question is: Did he possess final, unreviewable authority to establish governmental policy in the area of prosecutorial decisions for Washington County? The answer is an unequivocal yes.

Defendant County's logic leads to an unconscionable result in the creation of a constitutional no-man's-land. They posit an official—elected by and serving the citizens of Washington County—who can allegedly violate citizens' rights with impunity, with no *municipality* to hold accountable. The State of Oklahoma could not be held accountable in this scope. The County wants the benefit of a local District Attorney but accepts none of the responsibility for his conduct. This is not what the framers of § 1983 intended, and this Court should not sanction such a doctrine.

The Preliminary Injunction is not sought solely against Will Drake the individual; it is sought against 'The Office of the Washington County District Attorney.' This office is a creature of and exists to serve Washington County. Its files are in the Washington County courthouse, its prosecutors try cases in Washington County courts, and its misconduct injures residents of Washington County or anyone visiting Washington County. The County's attempt to pretend this office is a floating, ethereal entity with no local ties is a fantasy designed to evade this Court's authority and its own fundamental responsibilities.

# ARGUMENT

## I. DEFENDANT DRAKE IS CONDUCTING A BAD-FAITH EVASION OF THIS COURT'S PROCESS

While Defendant Drake attempts to hide behind the technicality of personal service, his conduct demonstrates a conscious disregard for this Court's authority. This mirrors his unwillingness to address the very same complaints made both formally and informally in the State courts. The County of Washington, in its "Unopposed Motion for Leave to File Responsive Pleading Out of Time" (dkt 17), officially admitted that the Defendant Drake himself —and by extension the District Attorney's Office—had *actual notice* of this federal lawsuit as of September 2, 2025.

As an officer of the court and an elected District Attorney, Defendant Drake has a heightened ethical duty to respect the judicial process. Upon receiving actual notice of a lawsuit alleging he committed federal civil rights violations, the proper course of action was not silence. The proper course was to appear before this Court as permitted by Rule 4, either personally or through counsel, to address the serious allegations against him. While it is a requirement for the Plaintiff to efficiently move the case forward within the specified time, formal service is not a requirement for a party to appear before the court when they become *aware*.

Instead, for around 40 days now, Defendant Drake has chosen to ignore this Court proceeding while his office continues both the Plaintiffs, and the related, retaliatory prosecution at issue. This is not the behavior of a public official seeking any form of clarity; it is the behavior of an individual leveraging procedural technicalities to delay accountability and prolong the constitutional injuries inflicted upon Plaintiff and a material witness.

His failure to appear by his own choice, despite actual notice, is clear evidence of the bad

faith and deliberate indifference that permeates this case. He is forcing Plaintiff and this Court to expend additional resources to formally drag him before the bench, confirming that he will not willingly submit to an authority he is meant to uphold unless compelled by *some* superior force.

## II. THE COUNTY'S SILENCE IS A DEAFENING ADMISSION OF BAD FAITH.

The County's five-paragraph response can be distilled to a single, remarkable claim: "This does not pertain to us." This is not a legal defense; it is an abdication.

A. By refusing to address the merits of the injunction, the County implicitly concedes that it cannot defend Drake's actions as alleged.

B. By disclaiming Drake for the purpose of this suit, the County confirms the absence of any official policy or training that could potentially justify his conduct, reinforcing Plaintiff's Monell claim based on a failure to train and a custom of indifference.

C. By disclaiming Drake for the purpose of this suit, the County confirms the absence of any official or oversight which could remand Defendant Drake for his ongoing behavior as the harm continues as confirmed by the still pending state case against Plaintiff and actions taken against a material witness,

D. The County's strategy is clear, sacrificing their ties to Will Drake to save itself. This cynical calculus is the strongest possible evidence that the continued prosecution lacks legitimacy and is purely vindictive.

## III. THE COUNTY'S "STATE OFFICIAL" ARGUMENT BOLSTERS, NOT DEFEATS, THE INJUNCTION REQUEST.

The County repeats its mantra that Drake is a state official in its Answer. Accepting this arguendo only strengthens the case for federal intervention. Plaintiff maintains that this does nothing to erase the municipal liability attached by his ratification on behalf of his elected final

policy making position within the County that the event occurred in, but Plaintiff will go this route for arguments sake.

A. If Defendant Drake is a state official, then the State of Oklahoma surely has a paramount interest in ensuring he does not wield state power to conduct bad-faith, retaliatory prosecutions. Allowing this to continue brings the entire state justice system into disrepute.

B. The County's own argument highlights the solution. The Oklahoma Attorney General possesses the authority to assign a special prosecutor, instantly resolving the conflict without costing the County a single dollar or day more, all while halting the ongoing constitutional violations. The injunction sought would compel this exact, state-level remedy. The Plaintiff notes that this measure has been taken before in cases involving Defendant Drake, namely that of now retired Tulsa Judge Jesse Harris in the 2008 case No. CF-2008-1952. The prosecutor in that case *recused himself* for conflict of interest and the Oklahoma Attorney General appointed the Office Will Drake was a part of to oversee the prosecution. It required an honest prosecutor willing to address his own conflicts head on, which we have thus far seen defendant Drake's office as incapable of.

C. The County's position is logically absurd. It argues Drake is a "state official" to *evade* liability, while simultaneously expecting this Court to allow that same "state official" to continue his allegedly unconstitutional conduct unchecked. They seek to create a constitutional black hole where no entity—state or county—can be held responsible for ongoing violations. This Court should adopt the fact that Drake is a final policymaker and thus reject that absurd logic.

## IV. THE HARM IS ONGOING AND IRREPARABLE, AS PROVEN BY THE COUNTY'S OWN TACTICS

The County's non-response on the 10th of October coincided with a new, overt act of intimidation. On the very day the County filed that document, a bail bondsman—previously inactive prior to this date—contacted Reyna Robinson regarding the retaliatory bench warrant issued September 30, 2025.

To recall the ongoing events, this complaint was filed August 26, 2025. The County's Motion to Appear Out Of Time clearly stated that defendant Will Drake was aware of the service to the County made on September 2, 2025. Surely the County does not expect the Court to assume that Defendant Drake was thought to be the responding party on behalf of the county but had no idea of the contents of the Complaint.

With the knowledge that he did have an understanding of the allegations against him, theWashington County District Attorney's Office that he oversees decided *during this time* that they would seek a bench warrant for a material witness, despite requests that they recuse themselves based on the clear conflict. Plaintiff sees no need to revisit again the inarguable timeline shown by the State docket in the related "Oklahoma v Robinson", highlighting that Robinson had been raising this exact line of inquiry with Defendant Drake's office as early as May of 2025. The District Attorney's Offices' request for the bench warrant was initially overruled based on a motion Robinson had filed asking the Court to recuse the Office *and* to excuse her appearance for safety reasons. That Motion caused a "special hearing", set on September 30, 2025, where the Court then granted the warrant without ever hearing or ruling over the motion. Per the September 17, 2025 court minutes , she was not ordered to appear at the September 30, 2025 hearing:

"CM: SIGLER-THREADGILL FOR GULLETT-DEFT DOES NOT APPEAR. MATTER COMES ON FOR STATUS ON ATTY. DEFT HAS FILED AN EMERGENCY MOTION TO APPOINT SPECIAL PROSECUTOR AND TO EXCUSE DEFT'S PERSONAL APPEARANCE. STATE REQUESTS BENCH WARRANT. COURT PASSES MATTER OVER THE STATES OBJECTION TO 09/30/25 AT 9:00 AM. MATTER IS SPECIAL SET. (GS)"

These happenings are surely not simply "general procedure" or simple mistakes when the context of the complaint as alleged explicitly describes the character of the prosecution as unlawful, done in bad faith, or retaliatory. It is a coordinated demonstration of the ongoing, irreparable harm Plaintiff alleged. The warrant is being used as a lever of psychological warfare to intimidate a witness in this federal proceeding.

A. This act proves that without an injunction, the Defendants will continue to use the tools of the state to harass and intimidate, chilling Plaintiff's ability to present his case and engaging in attempts at punishing those who would assist him.

B. The County's silence in the face of this timing is tacit approval. It demonstrates a pattern and practice of bad faith that this Court has a duty to stop.

### V. ABSTENTION FRAMEWORK

In the filed Objection to the Report and Recommendation, Plaintiff stated that the Magistrate had "misapplied" Younger. In light of this language the Plaintiff regrettably used, Plaintiff asks that the Court recognize the intended, and specific language, which is that the Magistrate's R&R "*implicitly* raised Younger elements, but failed to correctly apply the character or context of the prosecution and related matters as alleged in the Complaint".

Specifically the Recommendation recites that a related state prosecution is pending against the Plaintiff but fails to apply the controlling abstention analysis required by Younger v. Harris, 401 U.S. 37 (1971). Abstention is not automatic; it is a limited doctrine that applies only when three conditions are met: (1) an ongoing state judicial proceeding, (2) an important state interest, and (3) an adequate opportunity in the state forum to raise the *federal* issues. See Middlesex Cty. Ethics Comm'n v. Garden State Bar Ass'n, 457 U.S. 423 (1982). The R&R mentions the pendency of the state case but omits any evaluation of these elements or of the established exceptions, and this characterization is prejudicial to the narrative in assuming that the Plaintiff was ever obligated to take part in an unlawful prosecution that the Defendants have been aware is faulty for more than a year.

Federal courts may not abstain when prosecutions are undertaken in bad faith or for retaliatory purposes, where the state forum provides no adequate remedy for the federal constitutional injuries, or where the statute being enforced is patently unconstitutional. Dombrowski v. Pfister, 380 U.S. 479 (1965); Phelps v. Hamilton, 59 F.3d 1058 (10th Cir. 1995); Morrow v. Winslow, 94 F.3d 1386 (10th Cir. 1996).

Plaintiff's verified pleadings allege that Defendants initiated and maintained criminal charges knowing them to be baseless, after a warrantless seizure and inventory search that produced no evidence of any offense, and that the prosecution was used as leverage to compel cooperation in unrelated matters. These allegations, accepted as true at the injunctive stage, trigger the Dombrowski/Phelps bad-faith exception and defeat abstention, rendering the ongoing prosecution at the state level or any "failure" to participate in an unlawful prosecution irrelevant.

By noting only that "Plaintiff failed to appear" in the ongoing state docket without addressing Plaintiff's verified claim that the entire prosecution is unlawful, the R&R effectively presumes the legitimacy of the very proceeding whose constitutionality is in dispute. That assumption injects factual prejudice and substitutes inference for analysis. When the pleadings are viewed, as Rule 65 and Rule 12 standards require, in the light most favorable to the Plaintiff, the Younger doctrine cannot bar this Court's jurisdiction. The omission of that analytical step is therefore a failure to apply—rather than a misapplication of—the controlling legal standard.

Furthermore, the R&R's selective judicial notice of the state docket, without parallel notice of the related proceedings arising from the same incident, provides an incomplete and potentially misleading context. See Fed. R. Evid. 201(b)–(c). Context controls the abstention analysis. Federal intervention is appropriate when the state process itself is alleged to be the instrument of the constitutional violation. See Wooley v. Maynard, 430 U.S. 705 (1977); Watson v. City of Kansas City, 857 F.2d 690 (10th Cir. 1988).

The recent attempt to intimidate a material witness via a bondsman, timed with the County's response filing, is itself an overt act of bad faith that further demonstrates the state process is being abused. Given the events described in the Brief in Support of Motion (dkt 21), character of the prosecution as alleged in the Complaint, these are not merely allegations with no supporting information or context.

## VI. DEFENDANT DRAKE IS THE FINAL POLICYMAKER FOR PROSECUTIONS

As the elected District Attorney for the 11th District, which includes Washington County, Will Drake possesses final, unreviewable authority to make core prosecutorial decisions within his jurisdiction. On the date of the event, he was the elected District Attorney for Washington

County. No one in the County or the State could countermand his decision to approve charges against Plaintiff Gideon. His decision was Washington County's policy, as has been settled by the Supreme Court.

This includes the decision to initiate charges, approve warrants, and ratify arrests made by municipal police departments, including the Bartlesville PD. No higher county or state official reviews or approves his day-to-day charging decisions. This is the definition of a final policymaker. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481-84 (1986) (a single decision by authorized officials can establish municipal policy).

Abuse of this power to intentionally circumvent a person's constitutional rights is a felony in many cases. In this case, Drake later knowingly approved baseless amended charges having exculpatory information at his disposal. The County cannot disclaim the constitutional violations of the very official it empowers to make final policy on its behalf.

## VII. RATIFICATION OF MCCALLS CONDUCT CONSTITUTES COUNTY POLICY

The following sequence of events proves ratification:

1. Officer McCall had already unlawfully extended the traffic stop beyond its original mission (Rodriguez violation) and was detaining Plaintiff without reasonable suspicion. McCall himself admitted this to Drake, stating he had "nothing on him."

2. Faced with this unconstitutional detention, McCall did not act unilaterally. He contacted the final policymaker, Defendant Drake, seeking authorization to escalate the situation and compel identification.

3. Upon being informed of the unlawful detention, Drake did not order it terminated. Instead, he took investigatory action ("calling around") and then authorized the arrest for obstruction. By doing so, he shed his role as an advocate and acted as an investigator (Burns v. Reed), and more importantly, he officially adopted and ratified McCall's misconduct.

4. Drake's decision to approve the arrest, despite knowing the foundational detention was unlawful, constituted the County's official policy for this specific incident. Under Praprotnik, when a final policymaker ratifies a subordinate's decision and the basis for it, he makes the decision his own. 485 U.S. at 127.

## VIII. "STATE OFFICIAL" DEFENSE IS IRRELEVANT TO INJUNCTIVE RELIEF IN THIS CONTEXT

The County's Motion to Dismiss is a red herring that ignores the nature of the claim. The Claim is about a specific act of policy making, not general employment. Plaintiff does not allege the County is liable simply because it "employs" Drake. Plaintiff alleges the County is liable because its final policymaker, Will Drake, personally made a decision that caused, endorsed, and ratified a constitutional violation, willfully and intentionally.

Pierce v. Gilchrist holds that a DA is a county policymaker in this exact context. Even if Drake is a state official for certain purposes, the injunction is sought against him in his official capacity to stop an ongoing violation of federal law. This is precisely the circumstance allowed under the Ex Parte Young doctrine.

## IX. EVIDENCE OF PATTERN, ABSENCE OF MISTAKE, AND MODUS OPERANDI OF THE DISTRICT ATTORNEYS OFFICE IN WASHINGTON COUNTY

Pursuant to Oklahoma Rule of Evidence 404(b), Plaintiff submits the following instances *not to prove character*, but as evidence of Will Drake's specific plan, knowledge, and the absence

of mistake or accident in his Office's conduct in the instant case. The parallels are not coincidental; they are a blueprint and the Court would be making an even handed decision in this matter with these publicly available facts at its disposal.

1. **The Jesse Harris Precedent: A Blueprint for Fabricating Dual Charging Documents**

    A. As an ADA, Will Drake was directly involved in the case against Judge Jesse Harris, which was reported by The Oklahoman on May 10, 2008 (Titled "Prosecutor denies allegations in Tulsa Judge exposure incident"). In that case, Drake was accused of creating *two different sets of charging documents*—a tactic used to pressure and publicly embarrass a target into submission. He only denies leaking information to the Police Department, not preparing or offering two different charging documents. To that he said he "sent the wrong document".

    B. In the instant case, Drake employed the identical tactic against Plaintiff Gideon. The original charge was "Obstruction of a Public Right-of-Way." Clearly impossible for a passenger in a vehicle to do. The following day, after the fact, the charge was amended to "Obstruction of an Officer", and a felony "possession of a firearm after a former felony conviction" charge was added. This was not an administrative correction; it was a strategic escalation using a method he had used before.

    C. For 404(b) purposes this proves absence of mistake in the charging process and reveals a specific modus operandi—the use of multiple, shifting charging documents as an instrument of pressure and post-hoc justification, rather than a good-faith pursuit of justice.

## 2. The Graham/Pitts Precedent: A Blueprint for Dropping Charges to Avoid Exposure.

A. In the case of Bartlesville Police Officer James Graham, accused of sex crimes by fellow Bartlesville officer Jessica Pitts and a second female officer, Defendant Drake ultimately dropped charges mid-trial after a member of staff was "less than truthful" during the initial investigation. Jessica Pitts is now Brady listed. The Office can say Jessica Pitts, a Bartlesville Police Officer, lied. Fair enough. That also means that Officer Graham did when he confessed, as stated by his own agency, the Bartlesville Police Department. No matter which way it's spun, a Bartlesville Police Officer committed felonies and Drake saw to it that nobody went to jail despite worn body cameras and in vehicle footage capturing the events in question.

B. In the instant case, this demonstrates a pattern of Drake's office making tactical legal decisions—such as dropping charges mid trial—based on the exposure of exculpatory or impeaching evidence, rather than on the pure merits of the case. It shows an office sensitive to having its internal weaknesses exposed in open court.

C. For 404(b) purposes this provides context for the plan or preparation in the instant case. The office, under Drake, has a documented history of altering its course when faced with evidence that threatens to expose its own or its law enforcement partners' failings, that may correspond directly to a deliberate indifference in one form or another.

Plaintiff could list at least FOUR other instances within a ten year span carried out by defendant Will Drake that meet the threshold of applicability, each done in concert with

Bartlesville Police department. Will Drake's career is not marked by "isolated incidents" but by a consistent pattern. He has repeatedly been involved in cases where:

1. Charging documents are manipulated for tactical leverage.
2. Police misconduct is *known and provable*, yet ratified or covered up.
3. And the pursuit of a desired outcome trumps the neutral application of the law

In the instant case, he did not make a "mistake." He executed a familiar playbook. The evidence of these prior acts is crucial for the Court to understand that his actions regarding Plaintiff were the product of a specific plan, a deep-seated knowledge of police misconduct, and a deliberate intent, thereby negating any claim of accident or oversight.

Finally, in further establishing the "meeting of the minds" which carries out this ongoing conspiracy, Plaintiff clearly alleges in the Brief in Support of Motion (dkt.21) that the Assistant District Attorney Veronica Threadgill, under the direct supervision of defendant Will Drake, engaged in a retaliatory prosecution in violation of clearly established First Amendment rights. Evidence of her *motive and intent* is found in her own published academic scholarship. In "Gaping Hole: Darning International Corporate Liability," Threadgill articulates a legal philosophy that prioritizes substantive policy outcomes over adherence to neutral legal principles. She expressly calls for "reworking the International Criminal Court" to "police the actions" of specific actors and close "blatant gaps in liability," advocating for the manipulation of legal institutions to serve pre-ordained conclusions. *This mindset directly informs the conduct at issue here.* Faced with a "gap" in her ability to legally silence a critic, she allegedly "reworked" the bail-jumping statute, not according to its intent, but as a tool to "police" protected speech and hold Plaintiff accountable for his criticism. This is not a mere coincidence; it is evidence of a

settled intention to use legal power proactively to achieve desired ends, regardless of the constraints of probable cause or constitutional rights.

For 404(b) purposes, her scholarly advocacy for 'reworking' legal frameworks to close 'liability gaps' provides the motive and intellectual justification for her decision to 'rework' the bail-jumping statute into a tool of retaliation, thereby demonstrating the absence of mistake.

## X. SUPPORTING INFORMATION AND EVIDENTIARY SUPPORT OF CONFLICT

If the court grants the preliminary injunction, it will have to make factual findings that the Plaintiff is likely to succeed on the merits of his claims against Drake, including his investigatory role. In support of this effort, the Plaintiff has submitted a **Notice of Conventional Filing** containing One (1) USB Flash Drive, labeled "Exhibit A to Plaintiff's Reply in Support of Preliminary Injunction", containing the footage in the form of a n MP4 file of the entirety of the traffic stop from Officer Billy McCalls worn body camera. For expediency, the time stamp relevant to defendant Will Drake explicitly takes place beginning at or around 32 minutes and 35 seconds of the provided video file titled exactly as the Bates labeled copy was provided:

"BillyMcCall_202308281828_WFC1144000_146686823".

## CONCLUSION

Washington County has provided the Court with no reason to deny the Preliminary Injunction against its final policy maker, in charge of the day to day prosecutorial functions of all criminal actions undertaken within Washington County, Oklahoma. It has conceded the factual and legal basis for it through its utter silence on the merits. The County's only answer to serious allegations of constitutional violations is to claim it doesn't fill out its paperwork that way.

The path for the Court is clear. Plaintiff has not requested the criminal cases be dismissed, or any other synonymous phrase associated with coming to an end abruptly. Rather, Plaintiff has explicitly requested a neutral party be the Prosecutor. The merits of the case the State intends to bring should be substantial to the effect the prosecutor in charge should see no difference in who actually brings the case. Anything to the contrary is and always will be evidence of a personal stake. The injunction should be granted, enjoining Defendant Drake in his professional capacity, which is in effect, as a policymaker for Washington County, *and his office* from further participation in the state criminal prosecutions and mandating the appointment of a special prosecutor.

Respectfully submitted,

Gabriel Gideon, Plaintiff Pro Se

520 N QUINCY ST

FREDONIA, KS 66736

(620) 870-8675

gabrieltgideon@outlook.com

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

Gabriel Gideon,

Plaintiff,

v.

Officer Billy McCall, et al.,

Defendants.                    CaseNo.:25-cv-00450-JFH-JFJ

## PROOF OF SERVICE

I, Gabriel Gideon, plaintiff proceeding pro se, hereby certify that on October 14th, 2025, I served the following documents upon all counsel of record and parties not yet represented by counsel, by depositing a true and correct copy in the United States Mail, postage prepaid, to the non-registered party at their known or last known addresses.

## DOCUMENTS SERVED:

"PLAINTIFF'S REPLY TO COUNTY'S ANSWER ON PRELIMINARY INJUNCTION"

## MANNER OF SERVICE

A true and correct copy of the above-listed documents was mailed via U.S. Mail to the following parties:

1. Billy McCall, 4740 Sunview Pl., Bartlesville, OK 74006
2. Will Drake, 2320 Jupiter Ct, Bartlesville, OK 74006
3. Lynn Hollinsworth, Clerk, Washington County, 420 S. Johnstone Ave, Bartlesville, OK 74003
4. Regina Mouser, Clerk, City of Bartlesville, 420 S. Johnstone Ave, Bartlesville, OK 74003

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

*(signature)*

Gabriel Gideon, Plaintiff Pro Se

520 N QUINCY ST

FREDONIA, KS 66736

(620) 870-8675

gabrieltgideon@outlook.com