# Gideon v McCall, et al 25-cv-00450

## Table of Contents

| | |
|---|---:|
| SUMMARY | 2 |
| ARGUMENT | 4 |
| I. SERVICE OF COMPLAINT & SUMMONS | 4 |
| II. ARNOLD IS DISTINGUISHABLE | 6 |
| III. REQUESTED RELIEF AS TO THE STATE IS APPLICABLE | 7 |
| IV. ADMISSION OF CONSTITUTIONAL HARMS | 8 |
| V. YOUNG DOCTRINE AND SOVEREIGN IMMUNITY | 10 |
| VI. YOUNGER PRECEDENT AND ABSTENTION | 11 |
| VII. CONCLUSION | 16 |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GABRIEL GIDEON,<br>Plaintiff,<br><br>v.<br><br>OFFICER BILLY MCCALL,<br>in his individual and official capacity,  et al<br>Defendants | )<br>)<br>)<br>)  Case No.:25-cv-00450<br>)<br>)<br>)<br>) |

## PLAINTIFF'S OBJECTION TO DEFENDANT DRAKE'S MOTION TO DISMISS

Comes now, The Plaintiff in the aforementioned proceeding, and respectfully moves the court to DENY defendant Will Drake's Motion to Dismiss. This motion asks the Court to look away from admissions and documented evidence of constitutional violations and focus instead on procedural technicalities, as predicted. Defendant Drake does not defend his actions because he simply cannot. The motion should be denied.

## SUMMARY

The responsive pleading by Defendant Drake, made by the Oklahoma Attorney General's Office :

1. Presumes the intent of the Plaintiff inferring that service made at his *place of employment* was done explicitly in his *official* capacity;

2. Cites and fails to distinguish exceptions to law and precedent that otherwise protect *the Office* of the District Attorney, not the man himself as an *individual,* highlighted by the responsive pleadings failure to address any claims of *individual liability* that would pertain to DA Drake;

3. Admits to constitutional defects in the detainment, arrest, and by definition, the ongoing prosecution;

4. Admits that Will Drake participated in the ongoing traffic stop in an *investigatory* manner, and therefore has a *vested interest in the outcome* of any Court's determination as to the lawfulness of his actions;

5. Admits that Will Drake knowingly and willfully ratified the unconstitutional conduct of Officer McCall, among that being the extension of the traffic stop to the passenger unlawfully, acting within the scope of his final policy making authority which explicitly involves initiating prosecutions;

6. Confirms the Constitutional "black hole" of a floating DA's Office that can't be held accountable to any Court or by any oversight that Defendant Washington County sought to create, and in doing so, attempted to avoid *municipal liability.*

7. Confirms that Plaintiff's met the Younger abstention bar.

## ARGUMENT

### I.   SERVICE OF COMPLAINT & SUMMONS

A common theme in the Motion to Dismiss is frequent attempts to mischaracterize the intent of the Plaintiff in the hopes of achieving a procedural defect of some measure. First, in Service. The Defendant mistakes service at his place of employment as not in line with Oklahoma law, however the FRCP explicitly allows service via certified mail a person's place of employment or last known address, which this Defendant now acknowledges receipt of. This must be taken in light of the inarguable facts that:

1. Defendant had *actual notice* on September 2nd, 2025, per the County's Motion to Enter Out Of Time
2. Defendant had *actual* notice made via email by Reyna Robinson to subordinate Zoe Gullett, see Plaintiff's Supplement in Support of Preliminary Injunction
3. Defendant had *actual* notice via the state docket on September 16th, 2025, through a filing in the associated State v Robinson that had this federal complaint *attached*, and this filing caused a special hearing on that docket
4. Defendant Drake acknowledges receipt to his place of employment on October 17, 2025 via certified mail, return receipt addressed.

Defendant Drake is the elected District Attorney for the prosecutorial district which encompasses Washington County, Oklahoma. He had *actual notice* of this complaint for 66 days as of his responsive pleading.

Pursuant to Federal Rule of Civil Procedure 4(e), service upon an *individual* defendant may be accomplished by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Oklahoma law, as authorized by this federal rule, explicitly permits service upon an individual by certified mail. Specifically, 12 O.S. § 2004(C)(2)(b) allows for service by "certified mail, return receipt requested and delivery restricted to the addressee." The Plaintiff complied with this provision by sending the Summons and Complaint via U.S. Postal Service certified mail, restricted to the named individual defendant, Will Drake, at his official place of business—a location where service is expressly authorized under Oklahoma law. The Defendants motion acknowledges this. Consequently, service was properly effected on Defendant Drake in his individual capacity, and this Court now has jurisdiction over him for *all claims* asserted.

The State of Oklahoma's appearance through and for Will Drake in his official capacity was therefore based on their own awareness that the suit existed, and now that they have appeared before the Court, a proper party, curing any future defect in service. The Motion to Dismiss for insufficient service of process should therefore be denied.

In the alternative, even if the service was improperly done, again, is a curable defect and this was a premature argument at the time of filing given that the window for service has not closed. Process of service is not bar to continuity of a claim when the party has actual notice, has made a general appearance, and is litigating. Rather, it's a defect, which if found to have been meaningfully prejudicial, is cured easily by a motion to quash the original service and for a subsequent extension for service. The Plaintiff is, in fact, pushing the case forward, actively serving parties and litigating extensively, *pro se*. A dismissal under these circumstances is a harsh decision given all of the arguments put forth by the Plaintiff, and the meritorious arguments the Defendants have otherwise conceded by either silence on the merits or admission.

That's where this Court should focus, *on the merits*, not hypertechnicalities. The very same standard that allowed Defendant Washington County to subvert the Clerk's required entry of a default on the record, should prevail here as well.

## II. *ARNOLD* IS DISTINGUISHABLE

Both the County and DA Drake have exhaustively cited Arnold v McClain, and failed to distinguish it every time. Arnold involved a prosecutor who *was* acting within the scope of his duties, initiating prosecution *in good faith* and offering plea bargains. The Prosecutor here was faithfully executing his duties by bringing charges based on known criminal conduct. This was only found to be the case after a factually developed record had been formed, as the question of his immunity [for related actions

closely associated with the functions of his office] came down to his *individual capacity*, a front that Defendant Drake's motion to dismiss entirely ignored because his individual position is truly indefensible.

In Arnold, the Court held that the District Attorney (Younger) was not liable in his official capacity because he did not violate any clearly established laws in the specific actions that the Plaintiff there alleged exceeded the scope of his lawful duties or authority. The circumstances here are stark in contrast and beyond distinguishable. A prosecutor, admittedly possessing exculpatory information, admitted to have participated in an investigatory manner, and then willfully and intentionally ratified unconstitutional conduct by initiating an arrest and a prosecution on a basis he knew to be false *at inception*, is nowhere near protected activity as it pertains to the decision in Arnold.

### III. RELIEF AS TO THE STATE IS APPLICABLE

First, the State of Oklahoma, as the only body or organization with the power to remand the actions of its Statewide Offices or "arms", can be held accountable for injunctions or injunctive relief, and therefore must be properly before the Court, as any other party.

When Drake authorized the arrest, he ratified the unconstitutional conduct of Defendant McCall and made it his own under Pembaur. However, for all other purposes, specifically injunctive relief, either preliminary or through a conclusion to the case, Defendant Drake's official capacity is overwhelmingly clear as a State agent. His own Defense and the County's filing have relentlessly cited this, and it

was all in an attempt to confuse the applicability of scope in which the alleged conduct warrants relief.

*Section VI* of the Original Complaint is clear. Compensatory relief is requested where applicable, punitive relief is requested where applicable, injunctive relief is requested where applicable. Injunctive relief was requested both in the complaint and secondarily in the Motion for Preliminary Injunction. Finally, Plaintiff is entitled to all relief he is found to be rightfully entitled to, whether he explicitly requests such relief directly or not. The question of who of the three defendants responsible to make the required changes requires a factually developed record that reflects the current enforceable policies and customs of the Defendants within the scope of the requested relief. In fact, the City of Bartlesville, the County of Washington, and the State of Oklahoma could all perform specific actions that could otherwise fulfill the injunctive requests in paragraph 73 of the original Complaint, and thus, as alleged, they are all rightfully parties to this action for the reasons that the original complaint thoroughly addressed.

## IV. ADMISSIONS OF CONSTITUTIONAL HARMS

In the Motion to Dismiss, specifically in the Section "Factual Background", the Defendant confirms that the officer did inquire about the passenger's ID, who then declined, invoking his Fourth Amendment rights. The Defendant confirms that Officer McCall removed the Driver to question her about the identity of the

passenger without any reasonable articulable suspicion, verifying the Rodriguez claim made by Plaintiff in paragraph 19 of the original complaint. The Defendant confirms, as Defendant City of Bartlesville had in their filings, that McCall conducted an *inventory search* on the vehicle, thereby validating the specifics of paragraphs 22-25 of the Complaint. The Defendant confirms that McCall, associating ownership based on a constructive theory, used this inventory as a means for further investigation, thereby validating the Wells, Bertine, and Gant violations as alleged. The Defendant admits that the Officer called him during the active traffic stop for "advice". This is a clear and unambiguous admission that his participation was investigatory. This was not him reviewing charging documents or legitimate evidence, it was the initiation of an investigation that was not lawfully ongoing prior to his involvement.

    The Defendant admits that he called around to get a second opinion, meaning that prior to arrest, Drake knew that the passenger was being detained at that time without any *other* reasonable suspicion, and this represents further clarification of the extension of the traffic stop unlawfully, and his subsequent ratification. By definition, if the arrest of the Driver had concluded, the further detainment of the passenger , and the explicit act of calling the DA and waiting for him to call two others  and call back while McCall held the Plaintiff beyond the arrest of the Driver surely was an extension that proves the intent directly. This is the specific conduct that DA Drake admits he ratified.

## V. *YOUNG DOCTRINE* AND SOVEREIGN IMMUNITY

The previous section in itself shows a clear example of why DA Drake is a conflicted prosecutor in the State case and why abstention simply should not apply. He has an overwhelmingly obvious reason to cover up this conduct. So to try to workaround these well pleaded allegations, Defendant Drake's Motion to Dismiss misstates the nature of Plaintiff's official capacity claims. Plaintiff does not seek monetary damages from the state treasury for actions past. Rather, Plaintiff seeks injunctive relief to end ongoing harms, and prevent future due process violations of this same nature. Under the longstanding doctrine of Young, 209 U.S. 123 (1908), a suit for injunctive relief against a state official to halt a continuing federal law violation is not deemed a suit against the state for Eleventh Amendment purposes. The ruling allows federal courts to issue injunctions against state officials, *despite the Eleventh Amendment's protection* of state sovereign immunity, because a state official acting unconstitutionally is stripped of their official character and acts as an *individual*.

Defendant Drake [in his official capacity] is not being sued for the state's money; he is being sued to make the state, through him, comply with the Constitution. Therefore, his sovereign immunity argument fails as to Plaintiff's claims for injunctive relief. The 'liability' of the State of Oklahoma, having Will Drake named in this "official capacity" context, is not financial liability. It is injunctive, otherwise an obligation to conform its conduct—through its officer, Will Drake—to the requirements of the U.S. Constitution, both in this case and in

future encounters. If the Court grants the preliminary injunction or injunctive relief at trial, the State, via its District Attorney's Office, is legally compelled to stop the unconstitutional conduct. This is the only 'liability' sought from the State of Oklahoma in this official capacity claim.

This action against Defendant Drake in his official capacity does not seek monetary relief from the state treasury. It seeks prospective, injunctive relief to halt an ongoing violation of federal law—the continued prosecution of the Plaintiff by an office operating under an irreparable conflict of interest. This is precisely the kind of suit authorized by Ex parte Young and is not barred by sovereign immunity.

This is not just valid; it is a cornerstone of federal civil rights law. It is the mechanism that allows federal courts to stop states from actively violating citizens' rights. The state is absolutely a proper party for the purpose of being ordered to correct its unconstitutional behavior through its officers and finds no protection by the Eleventh Amendment under this doctrine, as alleged.

## VI. *YOUNGER PRECEDENT* AND ABSTENTION

Plaintiff has met and exceeded the *Younger* exceptions to Abstention. Bad faith, harassment. Section III of this document in itself shows a clear example of why DA Drake is a conflicted prosecutor in the State case and why abstention simply should not apply.

Younger first states that : "The accused should first set up and rely upon his defense in the state courts … *unless* it *plainly appears* that this course would not afford adequate protection."

First, Plaintiff assumes that the presumption of what "plainly appears" as his own determination by the Younger interpretation. In the event a prosecution is brought against any person, they do not immediately have the opinion of this Court or its equivalent available to them, and so this suggests that the determination of what "plainly appears" is at the discretion of the accused at the time of the prosecution having been brought against them.

In the instant case, the State courts would clearly not afford the adequate protections as the Office of the District Attorney carrying out the prosecution is led by the same party who has now admitted to having participated in an investigatory role in the active traffic stop, and to having knowingly and willfully carried out the unconstitutional actions with exculpatory information at his disposal. DA Drake knowingly and willfully assisted Defendant McCall in the post hoc ratification of McCalls unlawful conduct at various stages of the ordeal, both before and after the initiation of any prosecution. Conduct that the State, who employs him, nor the County for who he is the final policy maker for prosecutions, has chosen to defend.

Younger continues and Plaintiff adopts : "But the allegations in this complaint depict a situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights. They suggest that a

substantial loss of or impairment of freedoms [of expression] will occur if appellants must await the state court's disposition and ultimate review in this Court of any adverse determination. These allegations, if true, clearly show irreparable injury." 380 U.S. at 380 U. S. 485-486.

In Younger, the *distinguishing* character of the case was that a *specific statute* was at odds with Harris' activities. In each response by the Defendants City, County, and now Drake, no specific *statutory reliance* has been offered as to the nature of the detainment extending to Plaintiff under any lawful basis at inception. The question is the applicability to Plaintiff in the instant case and the knowledge of the persons involved, which is now known. So the discernable difference in the instant case is that no specific statute is in question as unconstitutional. It's explicitly the inverse, where a statute not in question as to its legitimacy is being applied unlawfully by the sole individual with the power to do so after having coordinated the unlawful conduct of other persons with the power to arrest based on his own ratification explicitly, followed by his leading the Office which the prosecution against Plaintiff is controlled by. This is far removed from the State's own interest in charging crimes under its laws in good faith, as is repeatedly noted in Younger.

The State has no interest in an admittedly conflicted prosecution and its defense here shows why it is a party to the complaint, by acknowledging that they cannot defend his actions as alleged, admitting he is an arm of the State, and simultaneously taking no action themselves to correct it.

Abstention does not apply when the prosecution is brought in bad faith or to retaliate. Drake's own motion admits he authorized an arrest for obstruction based solely on the invocation of a constitutional right. This is direct evidence of bad faith. Allowing the state prosecution to continue, when the prosecutor himself has admitted to the bad-faith conduct in federal court, would be a manifest injustice. Brown v Texas is clearly established law.

In their *Drombowski* assessment within Younger as it pertained to the facts presented: " the [Drombowski] Court made clear that, even under these circumstances, the District Court issuing the injunction would have continuing power to lift it at any time and remit the plaintiffs to the state courts if circumstances warranted." This was said in the scope of Harris' request to prevent the prosecution from including Younger, the identical request is being asked here with Plaintiff in the instant case clearly having exceeded the bar that Harris did not meet, and furthermore proves that the ***balance of inequity*** argument is in the Plaintiff's favor. The State case continues with a state agent as prosecutor, federalism is respected, and this Court has the inherent ability to revise its decision as the record becomes developed.

The Argument by the Defendant here admits to crucial facts of the complaint that would easily imply bad faith and a clear impropriety, but then asks to continue as they were. The request by Plaintiff was a scalpel, and not a sledgehammer. It requests that the DA Will Drake be ordered to recuse as he is a participant to this case. After now having appeared, and denied none of the

allegations against him in his *individual* capacity, the question of whether the State prosecution is conflicted one way or the other, regardless of the Oklahoma Attorney General's position on the matter, is as the State says "axiomatic". The resulting injunction could merely order Drake to recuse, allowing the State's process to *proceed as intended* and the OAG will naturally fill such a void. This would be consistent with federalism and the duty to prevent constitutional harm.

Holding a pretrial detention on false evidence is by definition, a due process violation. Defendant Drake knowingly held a pretrial detention hearing based on the false evidence, that he himself is alleged to have conspired to fabricate with Defendant McCall. A prosecutor who fabricates evidence to justify an arrest and detention violates clearly established due process. See Pierce v. Gilchrist, 359 F.3d 1279, 1292-94 (10th Cir. 2004); see also Hopper v. Hayes, 452 F. App'x 748, 751 (10th Cir. 2011) (unpublished) (holding it was "objectively unreasonable for a prosecutor to believe he could constitutionally" manufacture probable cause).

Defendant Drake's actions in authorizing Plaintiff's arrest based on a fabricated 'obstruction' charge, after being informed there was no lawful basis for the detention, falls squarely within this prohibited conduct.

In the related case State v Robinson, arising from the same event, abstention should not apply either. On June 25, 2025, Defendant Drake, through Zoe Gullet, filed a response to Defendant Robinson's "Motion For Clarification" of her own Obstruction charge. In the affidavit, and in the referenced response, Will Drake refused to identify anything specific that the Plaintiff had allegedly lied

about to the Officer that obstructed a lawful investigation. To refuse to provide the premise on which a charge is specifically predicated while offering a plea deal on the charge is an action of glaring bad faith. Furthermore, he stated in that same filing that *he had no additional information* or evidence relative to his conversation with Defendant McCall, yet here now he notes portions of what he presumably said. Inarguably, developments of this record could provide connection between the obstruction charge in her case and the unlawful investigation into the passenger, which is further conduct that Defendant Drake would be incentivized to cover up through his actions and those of his subordinates, which is documented on this docket and has not been addressed by any defendant.

### VII. CONCLUSION

Defendant Drake's Motion to Dismiss is a masterclass in evasion. It asks this Court to ignore a now confessed constitutional violation in favor of procedural technicalities that are either incorrect or easily cured. The Motion admits the core facts of the Plaintiff's case: that Drake, acting in an investigatory capacity, ratified an unlawful detention and authorized an arrest for the "crime" of invoking a constitutional right. This is not a dispute of fact; it is an admitted deprivation of liberty that shocks the conscience.

Nowhere does Defendant Drake explain how to arrest a passenger for 'obstruction' for invoking his Fourth Amendment rights under Brown v. Texas is

constitutional. Nowhere does he justify the constructive possession theory and how that invalidated established precedent surrounding inventory searches. The *amended* obstruction charge has had no reasonable explanation provided. Nowhere does he justify his office's retaliatory campaign. Nowhere does he justify the ongoing prosecution despite the fact his office is aware of the Plaintiff's criminal record having been expunged a decade earlier. Silence is a concession on the argument of defensibility of his conduct.

Drake cannot defend these actions on the merits, so he instead hides behind the State's sovereign skirts, hoping this Court will overlook the fact that the Ex parte Young doctrine was crafted for precisely this scenario: to stop a state officer from continuing to wield power unconstitutionally. His reliance on Younger abstention is equally misplaced, as the "bad faith" exception is proven by his own admissions. A prosecution led by an official who has confessed in this Court to his own foundational misconduct is the antithesis of a process worthy of federal deference. At best, the Official capacity claims would be dismissed [technically against the State] but all *individual liability* claims would proceed. The Court should focus on the merits of the case, disallow the Defendants procedural gamemanship, and allow the case to proceed to discovery where a further factual record can be developed.

For the foregoing reasons, and because the interests of justice demand that claims of this severity be heard on their merits, Plaintiff respectfully requests that Defendant Drake's Motion to Dismiss be denied in its entirety.

Respectfully submitted,

*[signature]*

Gabriel Gideon

520 N Quincy St,

Fredonia, KS 66736

(620) 870-8675