# Gideon v McCall, et al 25-cv-00450

## TABLE OF CONTENTS

1. Burns v Reed is About Individual Liability — 1
2. Drake Holds Himself Out as the County's Prosecutor — 2
3. Ratification Creates de facto Policy — 3
4. The Scope of Authority is the Central, Unresolved Question — 3
5. The County Continues To Prove The Point — 3
Conclusion — 5

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GABRIEL GIDEON,<br>Plaintiff,<br><br>v.<br><br>BILLY MCCALL, et al<br>Defendants, | )<br>)<br>)<br>)  Case No.:25-cv-00450<br>)<br>)<br>)<br>) |

**REPLY TO COUNTY'S RESPONSE TO MOTION TO COMPEL 7.1 DISCLOSURES**

Now Comes, Plaintiff in the instant case, to Reply to the County's Response and request that the County be ordered to file a Rule 7.1 Disclosure.

**Argument**

**1. Burns v Reed is About Individual Liability**

Defendant County claims *Burns v. Reed* is not relevant here, simply because it is about Drake's individual immunity. However, that is precisely the poin*t*. The question of whether Drake was acting in an 'investigatory' capacity and then committing criminal acts is a fact-intensive inquiry directly relevant to the scope of his actions. If he **was not** acting as a pure advocate, he was acting in a capacity that directly established policy for the County at that moment. This factual dispute cannot be resolved on a 12(b)(6) motion.

## 2. Drake Holds Himself Out as the County's Prosecutor

The County filed a Motion to Strike Plaintiff's Sur Reply, see dkt. As was noted in Tate v. City of Bartlesville, this Court should hold a pro se litigant's pleadings to a less stringent standard and make reasonable allowances within the rules to allow the Plaintiff, a pro se litigant, to *prove* his claims.

Currently, the continuity of Plaintiff's claim as to Washington County [Board of Commissioners], is tied to the municipal policy of Washington County *created* by Will Drake. Denying Plaintiff the opportunity to fully articulate and *prove* this theory as Defendant County continues to attempt to subvert the question of municipal liability—which ties Drake's individual immunity to the County's policy-making— would violate that principle at this early stage.

In his own charging documents, Will Drake represents himself as the prosecutor for Washington County. The County should not be permitted to benefit from his prosecutorial power while effortlessly disclaiming him when that power is abused. He is the face of the County's law enforcement *policy*. The public sees the "Washington County District Attorney." Defendants police my procedural correctness while ignoring the need to highlight how it prejudices them simply providing their prosecutors publicly available documents to the court.

The attached supplements in the Motion for Leave to File Sur Reply that the County seeks to strike provide exactly that. Drake's own documents and language is attached there, supporting what the Plaintiff believes is clear proof of his own claim of Drake's position on the County's list of "*partner like entities*". That would very likely be

testified to by Defendant County should the Court compel them to file the ministerial Rule 7.1 Disclosure that's intended to find *conflicts of interest*, not prove liability.

As stated in the Sur Reply, as it pertained to the employment label, this argument is foreclosed by the Supreme Court's decision in McMillian v. Monroe County, 520 U.S. 781, 785 (1997). The Court held that the question for Monell liability is not an official's general "status as a state officer" for other purposes, such as employment. Rather, the court's "task is to identify those who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional violation at issue." Id. at 784-85.

### 3. Ratification Creates de facto Policy

Officer McCall's initial extension of the detention may have been an individual act. However, the moment he called *his* final policymaker, Defendant Drake, and Drake authorized the escalation and arrest, that unlawful conduct was adopted and ratified. Under *Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)*, that single, deliberate choice by the final decision-maker became the official policy of Washington County for that incident.

### 4. The Scope of Authority is the Central, Unresolved Question

The core of this first phase of this adversarial process is truly a simple question: What was the scope of Will Drake's authority when he took Officer McCall's call? Was he acting as a state-level administrator in the Courts? Or was he acting as the final arbiter

of law enforcement policy for Washington County specifically? This is a quintessential question of fact that requires *discovery*. The County's Motion to Dismiss, and later filings, are an attempt to avoid this question by hiding behind a superficial employment label. Through discovery, we can determine if *Arnold* applies as they say it does, as a truly isolated act of good faith prosecutorial discretion.

### 5. The County Continues To Prove The Point

The County, first, was confused over whether they, as counsel, or the District Attorney's Office would be responding on behalf of *the County*. That would mean that the Counsel for the County likewise is admitting confusion. In that, between the County and Counsel for the County, both have shown an inability to determine where a conflict may already exist. That also made the very next claim a *frivolous argument* where the County disclaimed all ties to the Office of the District Attorney. The two are so interchangeable that their documents were potentially being drafted by either party, admittedly for the explicit purpose of the *County's Answer*. This strategy is ultimately proving the indifference to the need for any policy or oversight to discontinue a known and ongoing harm. This is a *continued strategy* by Washington County, or its Board of Commissioners, to evade accountability for the conduct of the final policy maker for "said County" at the expense of **letting the harm continue**. That in itself is the display of *deliberate* indifference.

If they are so interchangeable as to share documents, why has Drake, a named Defendant in this lawsuit with actual knowledge for 65 days or more, not recused his own

Office in the State proceedings? The answer is simply because the municipality lacks any policy by which to address the obvious need for discontinuing potential or known constitutional harms that are explicitly necessary to have a District Attorney who acts in an investigatory manner. Drake is then, in effect, above the law, making the absolute most of his position unlawfully, and the County and State have been more than willing to allow it.

Despite immunity being a *fact intensive inquiry*, the County jumps all the way to *Arnold*. While this is a relevant defense in some isolated context, it does not warrant dismissal *at this stage* because the complaint alleges sufficient facts to state a prima facie case that further requires the discovery of the scope in which Defendant Drake was acting. This is where the *facts* to implicate the County directly (rather than solely via the district attorney) will be apparent. Despite the County's need to finish the assessment at Arnold and skip everything in between, the current law allows municipal or county liability under § 1983 where a policy, custom, or practice causes the constitutional violation, as alleged in the Complaint.

## Conclusion

Defendant County's liability is, first, tied to their own indifference to the obvious need for a policy that would compel specific actions of their final policy makers so as not to engage in conduct that is clearly unconstitutional, whether once or ongoing, as has been shown. Further, County liability *is tied* to Drake's own immunity *determination*, so Burns is relevant. Drake is a "County Official" for the purposes of prosecution, and the

Complaint alleges that he was acting in explicitly that scope. While a "State Official" for the purposes of employment, he shows himself to the public to represent the County. Officer McCall's unlawful actions are his own until they are followed by Defendant Drake's ratification, which makes the unlawful actions de facto County policy when given the scope Drake was acting in. With immunity unsuitable pre discovery for Defendants McCall and Drake, the scope *then* becomes the question, and so denial of their Motion is therefore necessary to proceed with discovery and determine:

1. Whether McCall's actions were indeed unlawful,
2. and the specific scope Drake was acting in at that moment

The Court should compel the Rule 7.1 Disclosures by Washington County, and allow Plaintiff the discovery necessary to prove that the County's chief legal officer, acting within the scope of his county-representing authority, established an unconstitutional policy that violated Plaintiff's rights multiple times.

RESPECTFULLY SUBMITTED,

Gabriel Gideon, Pro Se Plaintiff
520 N Quincy St., Fredonia, KS 66736
Tel: (620) 870-8675 Email: gabrieltgideon@outlook.com