# Gideon v McCall, et al Case No.:25-cv-00450

## TABLE OF CONTENTS

| | |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 2 |
|    I. Provision of Documents | 2 |
|    II. The Defendants Have Failed To Change Course | 3 |
|    III. The State Has Offered No Counter Argument Based in Fact | 4 |
|    IV. State's Silence on Scope Is a Material Admission of Bad Faith | 5 |
| CONCLUSION | 8 |

UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GABRIEL GIDEON,<br>Plaintiff,<br><br>v.<br><br>BILLY MCCALL, et al<br>Defendants, | )<br>)<br>)<br>)  Case No.:25-cv-00450<br>)<br>)<br>) |

## Request for Production in Support of Preliminary Injunction

### INTRODUCTION

Comes now, the Plaintiff in the instant case, and submits these Requests for Production pursuant to Fed. R. Civ. P. 26 and 34. Under Okla. Stat. tit. 75 §74-20f, the Attorney General must perform a "scope-of-employment" evaluation before accepting or denying representation of a state officer in all matters that represent an interest to the State. The Attorney General's appearance in *official capacity only* is a de facto admission of the findings of that administrative process, and implies that evaluation has already occurred, as has defendant Washington County's acquisition of private counsel.

In light of this, Plaintiff requests immediate production of this administrative record in support of the Preliminary Injunction against Will Drake. This request seeks non-privileged, discoverable materials directly relevant to Plaintiff's pending Motion.

## ARGUMENT

### I.   Provision of Documents

Under the Federal Rules of Civil Procedure (Rule 26), discovery is allowed for any non-privileged matter that is relevant to any party's claim or defense, bears on issues of motive, intent, or pretext or is proportional to the needs of the case. This information is highly relevant to several key issues. The state's own determination that Drake's alleged actions were outside the scope of employment because they involved malice or criminal conduct is a direct, admissible statement from a party-opponent (the state, through its legal arm) that supports Plaintiff's allegations.

The refusal to defend the State Official for action taken under the power of the State demonstrates that a higher government authority already recognized the egregiousness of the conduct. Documents concerning the State's internal determination of whether Defendant Drake acted within the scope of his employment are discoverable because they reflect the State's own findings about malice, bad faith, or ultra vires conduct. Plaintiff is seeking the conclusion of their administrative investigation into whether or not to defend him as having acted within the scope of his employment under 51 OK Stat § 152(12).  These materials directly bear on whether:

1. Defendant Drake acted with bad faith;
2. The State recognizes the prosecution as inconsistent with law;
3. Extraordinary circumstances under *Younger* justify federal intervention;

4. The State under the Oklahoma Attorney General's Office knew or should have known that Drake's conduct fell outside lawful authority prior to this date of this filing, as its failure to correct course in the event this document exists is further evidence supporting federal injunctive relief.

## II. The Defendants Have Failed To Change Course

As to the County, "If the district attorney and the board of county commissioners of any county agree, legal representation in any civil case in which the county is interested or a party and the district attorney is required to represent the county pursuant to Section 215.4 of this title may be provided by contract with a private attorney." See 19 OK Stat § 215.37M.

This would indicate that at some point after service on the County, on September 2nd, 2025, Defendant Drake would have had to "agree" with Defendant Washington County [Board of Commissioners] to seek private counsel. The resulting private counsel for the County having now appeared in this case suggests that the conflict in Defendant Drake's continued participation implied a conflict that has been known by the Washington County Board of Commissioners as an issue requiring private counsel for more than three months as of this filing date. Proof that the County is deliberately indifferent to the known and continuing harm or the need for laws that govern the conduct of its District Attorney when making decisions in a prosecutorial scope on behalf of the County, which can establish municipal policy.

As to the State, Plaintiff notes that Oklahoma Attorney General Gentner Drummond *himself* appeared in Washington County on Monday November 17, 2024, meeting with local officials and community members at a Bartlesville Rotary Club meeting, on its face shown to the public as a campaign event for his gubernatorial bid. Plaintiff does not speculate as to the true purpose of that visit; however, it occurred after the filing of this lawsuit, after the State's entry of appearance, and after the filing of extensive evidence documenting constitutional defects and retaliation, including video that the State has in its possession absent this docket. It happened while Plaintiff remained subject to an active bench warrant arising from the challenged prosecution, while the prosecution remained uncorrected despite months of State notice, and while the Attorney General possessed full authority to intervene. In light of the Attorney General's presence, the ongoing existence of the warrant, the new charge against a material witness that took place the week of his visit, and the State's inaction thus far— this demonstrates that administrative correction could have but has not occurred and strengthens the necessity of immediate *federal* relief.

### III. The State Has Offered No Counter Argument Based in Fact

The State of Oklahoma, in its filings to date, has conspicuously avoided asserting prosecutorial immunity, good-faith conduct, or that Defendant Drake acted within the scope of his employment under the OGTCA. By instead relying exclusively on a generalized Eleventh Amendment abstention argument—without grounding that

argument in any assertions *specific to the facts of this case,* of lawful or good-faith conduct—the State implicitly acknowledges that Drake's challenged acts were investigatory, retaliatory, and administrative rather than advocative. This omission is directly relevant to the "stigma-plus" line of cases cited in Plaintiff's Supplemental Brief (dkt 52), because the State's refusal to characterize Drake's conduct as within his lawful employment removes the predicate necessary for abstention.

If Drake acted outside lawful authority, abstention does not apply; if the State wishes to invoke abstention, it must necessarily argue that Drake acted within the scope of his employment and in good faith. It has done neither.

The State's failure to raise any defense grounded in legitimacy, good faith, or proper prosecutorial function—combined with its silence on whether it believes Drake acted within his lawful scope—makes these materials indispensable. The State has had full notice, full opportunity, and full authority for months to correct the alleged constitutional violations arising from its employee's conduct. It has not done so. Its continued refusal to either justify Drake's conduct or disavow it is central to the Court's analysis under Paul, Younger, and Monell.

### IV. State's Silence on Scope Is a Material Admission of Bad Faith

Under the Governmental Tort Claims Act (GTCA), the definition of "scope of employment" is strictly limited to conduct performed "in good faith within the duties of

the employee's office" and expressly excludes "corruption or fraud." see Okla. Stat. tit. 51 §152

The State of Oklahoma, through the OAG, has now twice appeared only in Defendant Drake's official capacity, and has conspicuously refused to assert that Drake's actions were undertaken in good faith or within the scope of his employment. If Drake acted within the scope of employment, the OAG is required to defend and indemnify him. If he did not, then by law he was acting with bad faith, corruption, or fraud, and none of the immunities or abstention doctrines raised by the State then are applicable.

Either Defendant Drake acted "in scope" and the State must defend him, indemnify him, accept financial responsibility, and concede that Younger abstention does not apply because the prosecution itself violates established constitutional limits or Defendant Drake acted "outside scope" then the GTCA mandates that his conduct fell into a category excluded from employment — bad faith, corruption, or fraud — and the OAG's abstention and Eleventh Amendment arguments collapse entirely.

Furthermore, the Oklahoma GTCA's inclusion of "injury to rights" in the definition of actionable loss, makes the State's position on scope directly relevant to Plaintiff's claims, Younger bad-faith exception, and the federal "stigma-plus" liberty interest addressed. Therefore, the State's attempt to raise abstention while refusing to state whether Drake acted in scope is internally inconsistent. Abstention requires the

State to show the prosecution is legitimate and conducted in good faith. State law requires the State to affirmatively determine whether its employee acted in good faith.

The internal assessment required by law sheds light on the irrelevance of having pled ongoing retaliation in the original complaint, as the nature of the prosecution alleged was "malicious" and whether it is ongoing or not *is not* at the Plaintiff's discretion. That power lies with the State, who now, has had the record and knows the factual assertions in the Complaint. There is no need to argue explicitly that a malicious prosecution equates to ongoing harm, as it would logically flow from the unlawful conduct by the Defendants in the initial event, whether they intended it to be that way or not.

Further, amendments to the Complaint would be natural if the harm continued, and much of the tactics were not a deliberate pattern until after the filing of this complaint. Therefore, an amended complaint including the Assistant District Attorneys in their individual capacities, or other persons involved, is much less of a shotgun pleading and more of a natural progression given the uncontested facts now before the Court after the Defendants have all filed responses attempting to distance themselves from the events of the stop.

## CONCLUSION

Absent any merit based argument specific to the facts of the case, the State, in its inaction, has now enabled the harm to continue through the dereliction of duty by the State Officer now with actual notice of constitutional deficiency under Okla. Stat. tit. 74

§74-20f. The Oklahoma Attorney General has had notice of the underlying conduct, conducted an internal investigation as required by law, *and* because continued retaliatory conduct after the fact, these documents are discoverable and essential to the Court's determination of irreparable harm occurring, the likelihood of success, and bad-faith prosecution under Younger and its exceptions.

If the State intends to argue that Drake acted outside the scope of his employment in order to evade the noted exclusions to their statutory immunity in Paul v. Davis and § 1983 liability, then this constitutes a concession that his conduct was ultra vires, retaliatory, or malicious—a finding which independently **defeats abstention** and entitles Plaintiff to injunctive relief. If the State intends to argue the opposite—that Drake acted within the scope of employment—then it's relevant that the State produce its scope-of-employment determinations, GTCA defense letters, and administrative findings, which this Request seeks, because those documents bear directly on whether abstention is even available.

Plaintiff respectfully requests that Defendant Will Drake, in his official capacity, produce all documents and communications related to any request for defense, indemnification, or legal representation made by Defendant Will Drake to the State of Oklahoma, the Oklahoma Attorney General, Washington County, Governor Stitt, or any other governmental entity in connection with the allegations in this lawsuit. This includes, but is not limited to:

 A. The formal written request from Defendant Drake.

B. All written communications from the Oklahoma Attorney General's Office or other entity in response to said letter

C. The official 'Refusal to Defend', 'Reservation of Rights', or similar letter in response to the requested representation.

D. Any internal memoranda, emails, or reports concerning the investigation into whether Defendant Drake was acting within the scope of his employment.

E. Any final determination letters regarding the provision of a defense or indemnification.

RESPECTFULLY SUBMITTED,

_____
Gabriel Gideon, *Pro Se Plaintiff*
520 N Quincy St., Fredonia, KS 66736
Tel: (620) 870-8675 Email: gabrieltgideon@outlook.com