🚩 KeyCite Yellow Flag
Declined to Follow by   Covington v. Humphries,   10th Cir.(Colo.),   May 19, 2025

513 Fed.Appx. 724
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also U.S.Ct. of App. 10th Cir. Rule 32.1.
United States Court of Appeals, Tenth Circuit.

Kirsteen Didi MORKEL, f/k/a Kirsteen
Didi Blocker, Plaintiff–Appellant,
v.
Lynn W. DAVIS, in his official capacity as Utah Fourth District Court Judge; Sandra Dredge, in her official capacity as Special Master, 4th District Court; Kelly Peterson, in his official capacity as Guardian ad Litem; Kristin Gerdy, in her official capacity as attorney for Michael Blocker; Ron Wilkinson, in his capacity as attorney for Michael Blocker; Michael Blocker, Defendants–Appellees.

No. 11–4166
|
March 15, 2013.

**Synopsis**
**Background:** Mother brought action under § 1983 and § 1985 alleging that state court judge, special master, and guardian ad litem, along with two attorneys representing father, conspired to violate her constitutional rights in state divorce and child custody case. The United States District Court for the District of Utah dismissed action. Mother appealed.

**Holdings:** The Court of Appeals, Jerome A. Holmes, Circuit Judge, held that:

[1] mother's claims survived jurisdictional bar of 🚩Rooker-🚩Feldman;

[2] *Younger* abstention was warranted;

[3] dismissal of claims for injunctive and declaratory relief would be without prejudice;

[4] special master was entitled to quasi-judicial immunity; and

[5] guardian ad litem was not state actor.

Affirmed.

**Procedural Posture(s):** On Appeal; Motion to Dismiss.

West Headnotes (5)

[1]   **Courts** 🗝 Constitutional questions, civil rights, and discrimination in general

State-court orders in child custody proceedings impacted by mother's § 1983 action seeking injunctive, declaratory, and monetary relief against several parties involved state-court proceedings were not final, and thus mother's § 1983 claims survived jurisdictional bar of 🚩*Rooker*-🚩*Feldman*; state-court proceedings were ongoing when mother brought suit in federal court. 🚩42 U.S.C.A. § 1983.

62 Cases that cite this headnote

[2]   **Federal Courts** 🗝 Families and children

🚩*Younger* abstention was warranted in mother's § 1983 action against several parties involved in state-court child custody proceedings; custody proceedings were ongoing when mother filed federal lawsuit, mother failed to demonstrate that state courts were inadequate forum for raising her constitutional claims, which she could do by appealing final orders or filing interlocutory appeal, and resolution of child custody matters was important state interest. 🚩42 U.S.C.A. § 1983.

48 Cases that cite this headnote

[3]   **Federal Courts** 🗝 Dismissal or Other Disposition

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**EXHIBIT 1**

Appellate court's dismissal, on grounds of 🚩 *Younger* abstention, of mother's § 1983 claims against several parties involved in her state-court child custody proceedings would be without prejudice, since dismissal was based on lack of subject matter jurisdiction. 🚩42 U.S.C.A. § 1983.

26 Cases that cite this headnote

[4]  Civil Rights 🗝 Judges, courts, and judicial officers

Even if special master's actions in connection with mother's state-court child custody proceedings were in error or were done maliciously, they were nevertheless acts performed in furtherance of judicial process, and thus special master was entitled to quasi-judicial immunity from mother's § 1983 claims. 🚩42 U.S.C.A. § 1983.

3 Cases that cite this headnote

[5]  Conspiracy 🗝 Particular rights or privileges; particular deprivations

Guardian ad litem was not state actor for purposes of mother's § 1983 action alleging that guardian ad litem, among others, conspired to violate her constitutional rights in state-court child custody proceedings. 🚩42 U.S.C.A. § 1983.

5 Cases that cite this headnote

**Attorneys and Law Firms**

**\*725** Steve S. Christensen, Craig L. Pankratz, Samuel J. Sorensen, Christensen, Corbett & Pankratz, Salt Lake City, **\*726** David O. Drake, David Drake, P.C., Midvale, UT, for Plaintiff–Appellant.

Brent Michael Johnson, Esq., Administrative Office of the Courts, J. Clifford Petersen, David N. Wolf, Office of the Attorney General for the State of Utah, Alex B. Leeman, Esq.,

John A. Snow, Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, UT, for Defendants–Appellees.

Before LUCERO, TYMKOVICH, and HOLMES, Circuit Judges.

**ORDER AND JUDGMENT** [*]

JEROME A. HOLMES, Circuit Judge.

Kirsteen Morkel challenges the district court's dismissal of her claims brought under 🚩42 U.S.C. § 1983 and 🚩§ 1985 seeking injunctive, declaratory, and monetary relief against several parties involved in a state-court child custody case. We have jurisdiction pursuant to 🚩28 U.S.C. § 1291, and we affirm.

I. BACKGROUND

Morkel brought suit in the district court alleging that the judge, special master, and guardian ad litem (hereinafter "State Defendants"), along with two attorneys representing her former husband (hereinafter "Attorney Defendants"), conspired to deprive her of her constitutional rights in a Utah divorce and child custody case involving Michael Blocker, her former husband.[1] Specifically, Morkel asserts that the appointed special master, Sandra Dredge, violated her rights by engaging in ex parte communications with Blocker and the Attorney Defendants, issuing orders reserved for a judge, and otherwise engaging in actions designed to prevent Morkel from seeing her child. She alleges that the appointed guardian ad litem, Kelly Peterson, also engaged in ex parte communications and did not act in Morkel's child's best interests. And she alleges that Dredge and Peterson conspired with the Attorney Defendants to deny Morkel her constitutionally-protected parental rights, particularly with respect to an order issued by Dredge suspending Morkel's visitation rights for nine weeks.

After Morkel filed her complaint in federal court, the State Defendants and Attorney Defendants moved separately to dismiss all claims. Morkel then sought to amend her complaint. Both sets of defendants opposed the motion to amend. The district court held a hearing on all the motions and dismissed the original complaint for failure to state a claim. The court further concluded that granting Morkel leave to amend her complaint would be futile because the amended complaint still failed to state a claim, the defendants

were all protected by various immunities and, in any event, application of the *Rooker–Feldman* and *Younger* doctrines prevented the court from exercising subject-matter jurisdiction over the claims. The district court declined to exercise supplemental jurisdiction over the remaining state law claims and entered judgment in favor of the defendants. Morkel appeals.

II. DISCUSSION

A. Rooker–Feldman

As a threshold matter, we must determine whether Morkel's claims survive the **\*727** jurisdictional bar of *Rooker–Feldman*. See *Rooker v. Fid. Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The *Rooker–Feldman* doctrine prohibits a losing party in state court "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Knox v. Bland,* 632 F.3d 1290, 1292 (10th Cir.2011) (internal quotation marks omitted). This doctrine has a narrow scope, however, and applies only when a state court judgment is final. See *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005); *Guttman v. Khalsa,* 446 F.3d 1027, 1032 (10th Cir.2006) ("*Rooker–Feldman* applies only to suits filed after state proceedings are final."). We review the application of *Rooker–Feldman* de novo. *Miller v. Deutsche Bank Nat'l Trust Co.,* 666 F.3d 1255, 1260 (10th Cir.2012).

[1] The State Defendants and Attorney Defendants contend that Morkel's complaint asked the district court to review the basis of the state court's rulings, an action prohibited by *Rooker–Feldman*. The defendants point to two orders in particular: the state court's order granting custody to Morkel's former husband; and the later instruction by special master Dredge suspending Morkel's visitation for nine weeks. But as noted above, *Rooker–Feldman* applies only when a federal court is asked to review the *final* decisions of a state court. Here, the state-court proceedings were ongoing when Morkel brought suit in federal court. The state-court orders impacted by her federal lawsuit are thus not final and consequently fall outside the scope of *Rooker–Feldman*. We must conclude that the district court erred in dismissing the case under the *Rooker–Feldman* doctrine. But this does not end our inquiry—"we are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *Wells v. City & Cnty. of Denver,* 257 F.3d 1132, 1149–50 (10th Cir.2001) (internal quotation marks omitted).

B. Younger Doctrine

As noted above, the district court also relied on the *Younger* abstention doctrine as grounds for dismissal. The Supreme Court's decision in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny established that federal district courts must abstain from exercising jurisdiction when three conditions are satisfied: (1) there are ongoing state proceedings; (2) the state court offers an adequate forum to hear the plaintiff's claims from the federal lawsuit; and (3) the state proceeding involves important state interests. See *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). When these conditions are met, the application of *Younger* is mandatory. *Weitzel v. Div. of Occupational and Prof'l Licensing of Dep't of Commerce,* 240 F.3d 871, 875 (10th Cir.2001) ("[T]he district court must abstain once the conditions are met, absent extraordinary circumstances." (internal quotation marks omitted)). We review de novo a district court's decision to abstain under the *Younger* doctrine. *Brown ex rel. Brown v. Day,* 555 F.3d 882, 887 (10th Cir.2009). We conclude that all three Younger requirements are met in this case.

[2] First, the record reflects that the state custody proceedings were ongoing **\*728** when Morkel filed her federal lawsuit.[2] It is acknowledged in numerous places throughout the complaint—including Morkel's request for injunctive relief—and was demonstrated at the district court's hearing on the motions to dismiss. Citing *Brown v. Day,* Morkel nevertheless argues that *Younger*'s first prong is not satisfied because hers is not the type of case the *Younger* doctrine embraces. In *Brown,* 555 F.3d at 888, we recognized that the "ongoing proceeding" prong asks both "whether there is an ongoing proceeding and whether it is the

type [of case] afforded *Younger* deference." We considered the critical distinction between remedial proceedings, to which *Younger* does not apply, and coercive proceedings, to which it does apply. Morkel argues that because the state-court proceeding does not involve the State as a party, it is not a coercive proceeding under *Brown*. But the remedial-coercive distinction outlined in *Brown* came in the unique context of applying *Younger* to administrative proceedings. Morkel's state case is not an administrative proceeding and thus, the State need not be a party for *Younger* to apply. *See, e.g.,* Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 10, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (applying *Younger* doctrine to state-court suit involving two private parties). This court and other circuits have consistently applied *Younger* to child custody cases. *See* Chapman v. Barcus, 372 Fed.Appx. 899 (10th Cir.2010); *Hunt v. Lamb,* 220 Fed.Appx. 887 (10th Cir.2007); *Leonoff v. Oklahoma,* 60 Fed.Appx. 233 (10th Cir.2003); *Parent v. New York,* 485 Fed.Appx. 500 (2d Cir.), *cert. denied,* ––– U.S. ––––, 133 S.Ct. 652, 184 L.Ed.2d 460 (2012); *D.T.B. ex rel. O'Callaghan,* 280 Fed.Appx. 151 (3d Cir.2008); Mann v. Conlin, 22 F.3d 100, 105–106 (6th Cir.1994); *S.P. ex rel. Parks v. Native Vill. of Minto,* 443 Fed.Appx. 264 (9th Cir.2011); Liedel v. Juvenile Court of Madison Cnty., 891 F.2d 1542 (11th Cir.1990).

Second, Morkel has not demonstrated that Utah state courts are an inadequate forum for raising her constitutional claims, which she may do by appealing the final orders or filing an interlocutory appeal. State courts are generally equally capable of enforcing federal constitutional rights as federal courts. *See* Middlesex Cnty. Ethics Comm., 457 U.S. at 431, 102 S.Ct. 2515. And when constitutional challenges impact state proceedings, as they do here, "proper respect for the ability of state courts to resolve federal questions presented in state-court litigation mandates that the federal court stay its hand." Pennzoil Co., 481 U.S. at 14, 107 S.Ct. 1519. Moreover, Morkel need not even file an appeal in order to be redressed—her primary contentions about her civil rights being violated revolve around the conduct of the special master, the special master's orders, the guardian ad litem, and her former husband's attorneys. Those are matters that can be raised with the state trial court judge. To the extent that Morkel has already raised her constitutional concerns in the state trial court, that court's decisions are not "inadequate" for *Younger* purposes simply because the court did not rule in her favor. It is Morkel's burden to establish that state law prevents her from presenting her federal claims in the state

**\*729** proceedings. *See* J.B. ex rel. Hart v. Valdez, 186 F.3d 1280, 1292 (10th Cir.1999). She has failed to do so.

Finally, the resolution of child custody matters has been acknowledged as an important state interest. *See* Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12–13, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) ("[T]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." (internal quotation marks omitted)). In Morrow v. Winslow, 94 F.3d 1386, 1393 (10th Cir.1996), we noted that comity considerations of the *Younger* doctrine are particularly vital in child custody proceedings, which are "an especially delicate subject of state policy." The reasons for abstention are only strengthened when we consider that Utah has a continuing power to modify Morkel's child custody arrangements, including both permanent and temporary parent-time arrangements. *See* Utah Code Ann. §§ 78B–13–101–318.

**[3]** Morkel argues that *Younger* should not apply because she does not seek to enjoin any state court proceedings. She asserts that she seeks only to enjoin "the unlawful conduct" of the defendants. Aplt. Opening Br. at 32. But that is a fiction. In her complaint, she asked the district court to enjoin the defendants from "continuing to deny her the free association of her child" and to enjoin the special master from "enforcing any orders she made." App. Vol. II at 310–311. Hence, Morkel both implicitly and explicitly asked the district court to intervene in the state custody proceedings, which the *Younger* doctrine expressly proscribes. The district court's abstention is therefore proper. However, dismissal of Morkel's claims for injunctive and declaratory relief should be without prejudice because it is based on lack of subject matter jurisdiction. *See* Brereton v. Bountiful City Corp., 434 F.3d 1213, 1216 (10th Cir.2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice.")

### C. Monetary Damages

In addition to injunctive and declaratory relief, Morkel seeks monetary damages against special master Dredge and guardian ad litem Peterson that does not fall within the purview of *Younger* abstention. To the extent that it had jurisdiction over those claims, the district court dismissed the

claims against Dredge because it found he was protected by quasi-judicial immunity and against Peterson because it found he was not a state actor. We agree.

**[4]** With respect to Dredge, non-judicial officers may be afforded the same absolute immunity enjoyed by judges when a claim is based on duties performed in furtherance of the judicial process. *Whitesel v. Sengenberger,* 222 F.3d 861, 867 (10th Cir.2000). Here, the judge in the state custody proceeding assigned Dredge to act as the special master, giving her the authority to alter the parent-time schedule up to eight nights per month. All of the conduct about which Morkel complains involved the duties assigned to Dredge as a special master. Although Morkel argues that Dredge cannot be protected by quasi-judicial immunity because she acted without any colorable claim of jurisdiction, this is only a conclusory allegation wholly unsupported by the facts. Even if Dredge's actions were in error or were done maliciously, they were nevertheless acts performed in furtherance of the judicial process and are protected. *See Stump v. Sparkman,* 435 U.S. 349, 356–57, 362, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

**\*730** **[5]** As to Peterson, guardians ad litem are not state actors for purposes of § 1983 because they give their "undivided loyalty to the minor, not the state." *Meeker v. Kercher,* 782 F.2d 153, 155 (10th Cir.1986) (per curiam). Consequently, Peterson is not subject to suit under § 1983, and dismissal was appropriate. *Garcia v. LeMaster,* 439 F.3d 1215, 1217 (10th Cir.2006) ("To state a valid cause of action under § 1983, a plaintiff must allege ... the defendant was acting under color of state law." (internal quotation marks omitted)).

### III. CONCLUSION

We affirm the district court's dismissal of Morkel's claims for damages. We affirm the district court's dismissal of Morkel's claims for injunctive and declaratory relief on the basis of *Younger,* but remand to the district court with instructions to modify the dismissal of those claims to be "without prejudice."

**All Citations**

513 Fed.Appx. 724

---

### Footnotes

| | |
|---|---|
| \* | After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R.App. P. 32.1 and 10th Cir. R. 32.1. |
| 1 | Morkel has withdrawn her appeal as to her dismissed claims against the judge, who has since recused himself in the state court action. Aplt. Reply Br. at 1. |
| 2 | The pending state proceedings need not be a single trial that resolves all issues. In *Moore v. Sims,* 442 U.S. 415, 424, 435, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Supreme Court reversed a district court's holding that because a juvenile action is "multifaceted" and involves no single judicial proceeding it cannot be considered pending litigation for the purposes of *Younger.* The Supreme Court stated that so long as the plaintiffs had the opportunity to raise their claims in the state proceedings, the federal district court must abstain under *Younger. Id.* at 425, 99 S.Ct. 2371. |

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.