IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GABRIEL GIDEON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:25-cv-450-JFH-JFJ |
| | ) |
| OFFICER BILLY MCCALL, in his | ) |
| individual and official capacity; | ) |
| DISTRICT ATTORNEY WILL DRAKE, | ) |
| in his individual and official capacity; | ) |
| THE CITY OF BARTLESVILLE, | ) |
| OKLAHOMA; and WASHINGTON | ) |
| COUNTY, OKLAHOMA, a political | ) |
| subdivision of the State of Oklahoma, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

The matter has been referred to the undersigned for all proceedings in accordance with the jurisdiction permitted by 28 U.S.C. § 636 (ECF No. 7).

In this Report and Recommendation,[1] the undersigned makes recommendations on Plaintiff's Motion for Preliminary Injunction (ECF No. 10) and Defendant Will Drake's Motion to Dismiss (ECF No. 43). Specifically, the undersigned recommends, based on the doctrine of *Younger* abstention, that the Court (1) dismiss Plaintiff's claim for preliminary injunctive relief without prejudice, and (2) stay Plaintiff's claims for money damages and permanent injunctive relief until conclusion of the state criminal prosecution.[2]

---

[1] The undersigned issues a Report and Recommendation because the recommended relief exceeds the magistrate judge authority permitted by 28 U.S.C. § 636(b)(1).

[2] Due to application of the *Younger* doctrine, the undersigned does not reach other dispositive issues at this time, including issues raised by Defendant Washington County's Motion to Dismiss (ECF No. 23) and all other issues raised by Drake's Motion to Dismiss (ECF No. 43).

I.  **Factual Background**

   A.  **General Factual Allegations and State Court Charges**

On August 26, 2025, Plaintiff filed suit against the above-named Defendants pursuant to 42 U.S.C. § 1983 and Oklahoma law. ECF No. 2 (Complaint). Plaintiff alleges Defendants violated his constitutional rights when he was subjected to a traffic stop, arrest, and prosecution in Washington County, Oklahoma, based on events occurring on August 28, 2023.[3] To briefly summarize allegations in the Complaint, Plaintiff was a passenger in a vehicle when Defendant Officer Billy McCall ("McCall") initiated a traffic stop for a "tint violation." *Id.* at ¶ 19. The driver, Reyna Robinson ("Robinson"), did not have a valid driver's license or current vehicle insurance. Plaintiff refused to provide his name to McCall. McCall placed Robinson under arrest, and he conducted an inventory search of the vehicle incident to arrest. McCall found a firearm in the vehicle. Plaintiff continued to refuse to provide his name to McCall. After consulting over the phone with Defendant District Attorney Will Drake ("Drake"), McCall arrested Plaintiff. Plaintiff attached McCall's police report dated August 28, 2023, to the Complaint as Exhibit A.[4]

On or around August 29, 2023, Plaintiff was charged by Information with Obstructing Officer and Possession of Firearm After Former Felony Conviction in Washington County, Oklahoma. *See* Docket in *State of Oklahoma v. Gideon*, Case No. CF-2023-00230 (Washington Cnty., Okla.) (filed Aug. 29, 2023).[5] According to the minutes of Defendant's arraignment on

---

[3] Because Plaintiff is proceeding pro se, his pleadings are liberally construed and held to less stringent standards than pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[4] Additional allegations, and the police report, are discussed in more detail in pertinent sections of this Report and Recommendation.

[5] The undersigned takes judicial notice of the docket entries in Plaintiff's related criminal case. *See Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1503 (10th Cir. 1997) ("Federal Rule of

August 29, 2023, the state court judge reviewed a probable cause affidavit and found probable cause for Plaintiff's arrest on both charges. *Id.*[6] Plaintiff failed to appear for a scheduled court hearing in October 2023, and a bench warrant was issued on October 12, 2024. *Id.* Plaintiff's criminal prosecution in Washington County, Oklahoma, is currently ongoing.

## B. Claims Against Drake and Washington County

Plaintiff alleges Drake is the elected Washington County district attorney and was acting under color of law. Plaintiff further alleges Defendant Washington County, Oklahoma ("County") is a political subdivision of the State of Oklahoma and is responsible for the operation, policies, customs, and actions of the Office of the District Attorney. Plaintiff further alleges Drake is "a final policymaker for the County regarding the initiation and approval of criminal charges," and that Drake "participated directly in the constitutional violation" by authorizing Plaintiff's arrest for obstruction without a legal basis and approving and filing fabricated charges. Compl. ¶¶ 54-55.

Plaintiff brings the following § 1983 claims against Drake: (1) unlawful seizure, in violation of the Fourth Amendment (Count 7); (2) falsifying evidence, in violation of the Fourteenth Amendment (Count 8); and (3) malicious prosecution, in violation of the Fourteenth Amendment (Count 10). Plaintiff also brings a claim for conspiracy to violate Plaintiff's civil rights, in violation of 42 U.S.C. § 1985 (Count 9). Against Defendant County, Plaintiff asserts a § 1983 claim based on *Monell v. Department of Social Services of the City of New York*, 436 U.S.

---

Evidence 201 authorizes a federal court to take judicial notice of adjudicative facts at any stage of the proceedings, and in the absence of a request of a party."); *St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (explaining that "federal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue").

[6] The probable cause affidavit is not available on the court's website and has not been reviewed.

3

658 (1978) (Count 11). *Id.* at ¶ 70 (alleging that, by "endorsing McCall's unconstitutional conduct, the County, through its final policymaker [Drake], adopted that conduct as its own and became directly liable for the resulting violations").

C. **Claims Against McCall and City of Bartlesville**

Plaintiff alleges McCall is a law enforcement officer employed by Bartlesville Police Department ("BPD") and was acting under color of law. Plaintiff alleges Defendant City of Bartlesville ("City") is a municipal corporation organized and existing under the laws of the State of Oklahoma and is responsible for the operations, policies, and training of the BPD.

Plaintiff brings the following § 1983 claims against McCall: (1) unlawful seizure, in violation of the Fourth Amendment (Count 1); (2) false arrest, in violation of the Fourth Amendment (Count 2); (3) coercive intimidation, in violation of the Fourteenth Amendment (Count 3); and (4) falsifying evidence, in violation of the Fourteenth Amendment (Count 5). Plaintiff also brings a claim for conspiracy to violate Plaintiff's civil rights, in violation of 42 U.S.C. § 1985 (Count 4). Against Defendant City, Plaintiff asserts a § 1983 claim based on *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) (Count 11). *Id.* at ¶ 70 (alleging that, "through its policymakers including the Chief of Police, [City] failed to adequately train and supervise its officers, including McCall, on the critical limitations of their authority in direct contravention of clearly established law").

D. **Relief Requested in Complaint**

In the Complaint, Plaintiff seeks compensatory damages, punitive damages, and injunctive relief. Specifically, Plaintiff seeks the following permanent injunctions to alter Defendants' policies and procedures: (1) barring any demand for identification from a passenger during a traffic stop absent reasonable suspicion; (2) barring any threat to contact child protective services during

a detention unless the officer possesses evidence of abuse or neglect that presents an imminent threat to the child's safety; (3) mandating that City train on the "constitutional limitations of traffic stops"; (4) mandating that County adopt a policy prohibiting prosecutors from providing real-time, investigative legal advice to officers in the field for purposes of establishing probable cause; and (5) barring City from entering into arbitration to reinstate any officer terminated for constitutional violations.

### E. Motion for TRO/Preliminary Injunction and Other Procedural History

In a separate filing, Plaintiff filed an Ex Parte Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for Preliminary Injunction") (ECF No. 10). In that motion, Plaintiff seeks different injunctive relief than that sought in the Complaint. Specifically, he seeks to (1) enjoin the "Washington County District Attorney's Office from any further participation in the prosecution" of his and Robinson's criminal cases, and (2) "compel[] the recusal of said office and the appointment of a special prosecutor." ECF No. 10 at 1.

On September 19, 2025, the undersigned filed a Report and Recommendation, recommending that any request for emergency, ex parte relief be denied (ECF No. 19), to which Plaintiff objected. That objection remains pending. The same day, the undersigned ordered a briefing schedule for the defendants who had appeared, ordered a status report on service of outstanding defendants, and stated that a preliminary injunction hearing would be set, if needed, upon all relevant parties' receipt of notice and opportunity to be heard.

City failed to respond to the Motion for Preliminary Injunction by the required date, presumably because the Motion for Preliminary Injunction seeks relief only against Drake and County.[7] On October 6, 2025, County filed a pending motion to dismiss. On October 10, 2025,

---

[7] The Motion for Prelimianry Injunction uses the word "Defendants" in the prayer for relief, but

5

County responded to the Motion for Preliminary Injunction, arguing that the Court could not enter injunctive relief against it for the same reasons explained in the motion to dismiss. On November 7, 2025, counsel from the Oklahoma Attorney General's office appeared for Drake in his official capacity and filed the pending motion to dismiss all claims against Drake asserted in his official capacity. Plaintiff responded to both dispositive motions, and the Court has considered all briefing.[8]

## II. Drake's Motion to Dismiss – *Younger* Abstention

Drake argues, *inter alia*, that *Younger* abstention applies and urges the Court to decline to exercise jurisdiction. Plaintiff argues the case fits within a *Younger* exception for bad-faith prosecutions.

### A. General Principles and Legal Framework

Even when a federal court has jurisdiction to hear a claim, it "may be obliged to abstain when a federal-court judgment on the claim would interfere with an ongoing state proceeding implicating important state interests." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1227-28 (10th Cir. 2004). This abstention doctrine is referred to as the *Younger* doctrine. *Id.* at 1228. Although the doctrine also extends to state civil proceedings, the "classic example" of *Younger* abstention is a federal suit to enjoin a pending state criminal proceeding. *Id.*; *see also Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) ("*Phelps II*") (holding that *Younger* doctrine requires "federal courts, except in the most exceptional circumstances, [to] dismiss suits for declaratory or injunctive relief against pending state criminal proceedings"). *Younger* abstention is grounded in

---

the body of the motion makes clear the relief is directed only at Drake and County, not McCall or City. This is consistent with City's failure to respond.

[8] On December 10, 2025, the Court Clerk entered default against McCall. On December 29, 2025, Defendant City objected to the finding of default against McCall (ECF No. 76).

"notions of comity and federalism, which require that federal courts respect state functions and the independent operation of state legal systems." *Phelps II*, 122 F.3d at 889. If applicable, the *Younger* doctrine extends to claims for declaratory relief, injunctive relief, and "monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding." *D.L.*, 392 F.3d at 1228.

The Court construes Drake's motion to dismiss on grounds of *Younger* abstention as one to dismiss for lack of jurisdiction pursuant to Rule 12(b)(1). *See D.L.*, 392 F.3d at 1228 ("*Younger* abstention is jurisdictional."); *Peters v. United States*, No. 24-1013, 2024 WL 3086003, at *1 n.1 (10th Cir. June 21, 2024) (assuming that "Rule 12(b)(1) is a proper vehicle for a *Younger* abstention motion").[9] When a court considers a *Younger* abstention motion under Rule 12(b)(1), it "need not assume the complaint's factual allegations are correct," and it may consider exhibits attached to a complaint. *Peters*, 2024 WL 3086003, at *1 n.1. A court may also take judicial notice of legal pleadings in the underlying state court proceeding. *See supra* note 5.

### B. *Younger* Elements Are Satisfied

The Tenth Circuit applies a three-part test for determining whether a federal court should abstain from exercising federal jurisdiction in favor of a state proceeding. *Peters*, 2024 WL 3086003, at *4. *Younger* abstention is proper if "(1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to present the federal constitutional challenges." *Id.* (quoting *Phelps II*, 122

---

[9] Tenth Circuit law contains ambiguity as to whether *Younger* abstention is jurisdictional. *See Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500, 523 n.32 (10th Cir. 2023) (noting disparate language in Tenth Circuit cases). Like other district courts, the undersigned continues to follow *D.L.* and treat the issue as jurisdictional. *See Peters v. United States*, No. 23-cv-03014-NYW-SKC, 2024 WL 83333, at *4 (D. Colo. Jan. 8, 2024) (explaining ambiguity, following *D.L.*, and reasoning that neither Supreme Court nor en banc decision of the Tenth Circuit has expressly overruled *D.L.*).

F.3d at 889).

In the Motion for Preliminary Injunction, Plaintiff requests that the Court enjoin Drake, and any other attorney employed by the Washington County District Attorney's Office, from prosecuting the criminal cases against himself and Robinson, and order the state court to appoint a special prosecutor for both cases. Although Plaintiff does not seek to enjoin his prosecution altogether, which would present the clearest case for abstention, he seeks a significant form of federal intervention in the state criminal case. In the Amended Complaint, Plaintiff seeks money damages flowing from the alleged constitutional violations committed by Defendants, and Plaintiff also requests permanent injunctive relief in the form of forcing Defendants to amend certain procedures and policies related to the alleged violations. *Younger* abstention is at least implicated by all such requests for relief, due to the ongoing state criminal prosecution. The Court must therefore first determine whether the *Younger* elements are satisfied. *See Graff*, 65 F.4th at 524 (explaining that invoking *Younger* is "appropriate when failing to abstain would disturb an ongoing state proceeding").

The three *Younger* elements are satisfied. First, the Washington County criminal proceeding is ongoing, and there is an active warrant for Defendant's arrest. Second, the criminal proceedings implicate important state interests – namely, the prosecution of state criminal laws. *See Aid for Women v. Foulston*, 441 F.3d 1101, 1119 (10th Cir. 2006) (highlighting states' "strong interest" in enforcing their criminal laws and other statutes). Finally, the state proceedings afford an adequate opportunity for Plaintiff to present the constitutional issues raised here. Plaintiff can move to recuse Drake and/or Drake's office from prosecuting the case; move to suppress the firearm and/or other evidence based on the allegedly unreasonable stop, search, and seizure; and seek any other relief he deems proper related to his criminal prosecution in the state proceeding.

8

*See Perez v. Ledesma*, 401 U.S. 82, 84-85 (1971) (explaining that "the propriety of arrests and the admissibility of evidence in state criminal prosecutions are ordinarily matters to be resolved by state tribunals," and criminal defendants in state court are "free to present [their] federal constitutional claims concerning arrest and seizure of materials or other matters to [state] courts in the manner permitted in that State"); *Goings v. Sumner Cnty. Dist. Attorney's Off.*, 571 F. App'x 634, 638 (10th Cir. 2014) (explaining that "it is beyond cavil that a state court is an adequate forum for the resolution of challenges to distinctly state prosecutorial or court procedures or processes"). Any interference by this Court with the state criminal prosecution – including an award of preliminary injunctive relief ordering Drake to recuse as the prosecutor and/or an award of damages or permanent injunctive relief based on the alleged constitutional violations – would disrupt notions of federalism and the independent operation of the state legal system.

### C. *Younger* Exception Does Not Apply

Plaintiff argues this case fits the exception for state proceedings brought in bad faith or to harass. *See* ECF No. 44 at 14 (arguing that "Drake's own motion admits he authorized an arrest for obstruction based solely on the invocation of a constitutional right," which amounts to "direct evidence of bad faith").

There is a narrow exception to *Younger* abstention "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown . . . ." *Perez*, 401 U.S. at 85; *see also Phelps II*, 122 F.3d at 889 (explaining there is an "exception to *Younger* abstention that allows a federal court to enjoin a pending state prosecution that is brought in bad faith or to harass"). Courts in the Tenth Circuit consider three factors in determining whether a state criminal prosecution is commenced in bad faith or to harass: "(1) whether it was

9

frivolous or undertaken with no reasonably objective hope of success;" (2) "whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights;" and (3) "whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." *Phelps II*, 122 F.3d at 889.

Plaintiff bears a "heavy burden" to overcome the bar created by *Younger* abstention. *Id.* Plaintiff must set forth "more than mere allegations of bad faith or harassment" and must make an initial showing of "retaliatory animus" before the burden shifts to defendant to offer legitimate reasons for an alleged bad-faith prosecution. *Id.*; *see also Peters*, 2024 WL 3086003, at *4 (applying same standard in analyzing motion to dismiss under Rule 12(b)(1)).

Relevant to the *Younger* exception for bad-faith prosecutions, Plaintiff alleges the following facts. McCall asked Plaintiff, the passenger during a vehicle stop, to identify himself. Plaintiff questioned his obligation to identify himself and ultimately refused to do so. McCall said he was "just asking," and Plaintiff contends this "admission removes any assumption of good faith and demonstrates that any subsequent attempt to compel identification was a knowing violation" of his Fourth Amendment rights. Compl. ¶ 15. McCall then extended the stop, arrested Robinson for misdemeanor violations, and told Plaintiff he was not free to leave until McCall completed a vehicle search. McCall located a firearm in the vehicle, which was not reported stolen or associated with any crimes. McCall then called Drake and "explicitly admitted to Drake that he 'had nothing on him [the passenger], except that the gun may be his' – a clear confession that he lacked any reasonable articulable suspicion for his detention of [Plaintiff]." *Id.* ¶ 26 (quoting language heard on footage from McCall's body-worn camera). During the call, McCall asked Drake if McCall could compel Plaintiff to identify himself based on discovery of the firearm. *Id.*

Drake called two other district attorneys and then called McCall back. *Id.* ¶ 30. McCall then arrested Plaintiff for "obstruction of a public right-of-way," which was later amended to obstruction of an officer and unlawful possession of a firearm. *Id.* ¶¶ 36-38. At the time of arrest, McCall told Plaintiff that "my DA says you're obstructing if you don't identify." *Id.* ¶ 35. McCall first discovered Plaintiff's identity, and that he was a convicted felon, upon viewing Plaintiff's belongings at the police station post-arrest. *Id.* ¶ 38. Plaintiff alleges McCall and Drake conspired in bad faith to cause his unlawful arrest on both charges.

In analyzing the *Younger* exception, the Court has also considered McCall's police report, which is attached to the Complaint. Most relevant to the issue of bad faith, McCall's report states:

> Since at the time the male would not identify himself I took the firearm for safekeeping. I collected the firearm and the magazine and placed them into my vehicle. In almost every situation where somebody will not identify themselves, it's because they are either a felon or they have warrants. I contacted Washington County District Attorney Will Drake and advised him of the situation. I told him that neither the driver or the passengers stories were matching and that I located a firearm inside the vehicle. I asked Will Drake if the passenger of the vehicle had to identify themselves, Will told me they did. Will advised me that he would double check and a short time later he called me back. Will told me that two other District Attorney's from within the state and him all agreed that the passenger had to identify himself and if he didn't he could be arrested for obstruction. I came to the conclusion of the firearm belong to Gabe because he knew that the firearm was in the vehicle and that he knew what caliber the firearm was. The magazine was also located in a male's backpack with items belonging to a male and he was the only male inside the vehicle. I walked back to Gabe and advised him that he needed to identify himself or he would be arrested for obstruction. Gabe refused to identify himself and began to ask questions, I stopped his questions and said I was only going to ask one more time. I requested Gabe give me his name and date of birth or that I would arrest him for obstruction. Gabe refused and I placed him into hand restraints. I then placed him into the back of my patrol vehicle for transport.

Compl. at Ex. A.

Considering all allegations and evidence in the record, Plaintiff cannot meet his "heavy burden" of overcoming *Younger* abstention. Specifically, he cannot make an initial showing of retaliatory animus, and no further evidentiary proceeding is required.

First, Plaintiff cannot demonstrate his criminal charges are frivolous or without a reasonably objective hope of success. As to the obstruction charge, Plaintiff alleges McCall consulted with Drake, Drake consulted with other district attorneys, and Drake concluded that Plaintiff's failure to identify himself after McCall found the weapon in the vehicle created probable cause for an arrest and subsequent criminal charge for obstruction of an officer. Even if this ultimately is deemed an incorrect legal conclusion, the allegations do not support a finding the obstruction charge was undertaken with no reasonable hope of success, or based on frivolous or fabricated facts. As to the firearm charge, McCall concluded the weapon belonged to Plaintiff based on facts learned at the scene. He then learned Plaintiff's status as a convicted felon, after Plaintiff was arrested for obstruction. Even if Plaintiff may have a valid suppression argument, the pending firearm charge cannot be deemed frivolous, fabricated, or without a reasonable hope of success. Contrary to Plaintiff's speculative assertions, the facts in the record do not create an inference that these officials concocted a reason to arrest or prosecute Plaintiff in bad faith. Importantly, as to both charges, a state judicial officer found probable cause based on an affidavit, which counsels against finding in favor of Plaintiff on the first factor. *See Phelps v. Hamilton*, 59 F.3d 1058, 1064 n.12 (10th Cir. 1995) ("*Phelps I*") ("Ordinarily, a bad faith prosecution will not be predicated upon probable cause."); *Peters*, 2024 WL 83333, at *7 (finding plaintiff failed to meet burden on first factor, where grand jury made probable cause finding as to state criminal charges).

Second, Plaintiff cannot demonstrate his arrest and prosecution were motivated by Plaintiff's suspect class or in retaliation for the defendant's exercise of constitutional rights. Plaintiff does not allege race discrimination. Plaintiff does allege McCall and Drake retaliated against him for asserting his right to refuse to identify himself. However, for the same reasons

explained above, Plaintiff's allegations are overly speculative that McCall and Drake conspired or acted with retaliatory animus in deciding to arrest and charge him. The facts alleged indicate McCall had a question about whether he could take a legal action in the course of a stop and arrest; he asked Drake a question that accurately summarized the situation; Drake deliberated but then answered the question; McCall acted on the answer; and Drake relied on the same facts when he filed the obstruction charges. At most, this constitutes a potential constitutional violation based on a mistake of law, but it does not support a finding of the type of "retaliatory animus" necessary to avoid *Younger* abstention. *See McCormick v. Kansas*, No. 00-4209-RDR, 2001 WL 83279, at *3 (D. Kan. Jan. 5, 2001) (denying motion for temporary restraining order where plaintiff alleged obstruction charge was based on retaliation for his assertion of lawful rights, because plaintiff's proposed construction of the bad-faith exception "would turn the exception into the rule") ("[The plaintiff] may not obtain this court's intervention by simply alleging bad faith on the grounds that he has raised a federal constitutional issue upon which he may prevail."); *Wilson v. Morrissey*, 527 F. App'x 742, 744-45 (10th Cir. 2013) (affirming sua sponte dismissal based on abstention, because plaintiff had not shown that reasonable prosecutor would not have brought charges against him and offered "nothing beyond his own assertions" that prosecutions were wrongful or based on race). *See generally Weitzel v. Div. of Occupational & Pro. Licensing of Dep't of Com. of State of Utah*, 240 F.3d 871, 877 (10th Cir. 2001) (affirming dismissal based on abstention and finding *Younger* exception inapplicable, where state gave justification for three allegedly wrongful actions, and plaintiff offered only his own assertions that the division's conduct was taken in bad faith or for harassing purposes). *Cf. Heimbach v. Vill. of Lyons (Wayne Cnty., N. Y.)*, 597 F.2d 344, 347 (2d Cir. 1979) (holding plaintiffs could avoid *Younger* abstention where they alleged defendants repeatedly harassed and illegally evicted and arrested them in retaliation for their advocacy against

commercial development). *See generally Phelps I*, 59 F.3d at 1064 nn. 14-16 (summarizing cases where retaliatory animus was adequately alleged or proven).

Finally, there is no evidence McCall or Drake had been repeatedly targeting Plaintiff for unjustified prosecutions or otherwise harassing Plaintiff. This was a one-time event, and the evidence shows a legitimate explanation for the arrest and prosecution – namely, Drake's conclusion that Plaintiff violated the law by failing to identify himself under the circumstances presented and by possessing a weapon while being a convicted felon.

Considering all three factors, the undersigned finds Plaintiff cannot meet his burden to overcome abstention. This case involves typical allegations of constitutional violations related to an ongoing state prosecution, which must be resolved by the state court in the first instance. *See Phelps II*, 122 F.3d at 889 (explaining that threat to federally protected rights is only "irreparable" if such threat "cannot be eliminated by . . . defense against a single prosecution"); *Hufft v. Tr. for Child Support Payments for State of Missouri*, No. 25-CV-00057-JFH-SH, 2025 WL 2377063, at *3 (N.D. Okla. July 2, 2025), *report and recommendation adopted*, 2025 WL 2169989 (N.D. Okla. July 31, 2025) ("To be sure, [the plaintiff] may have to continue defending his state criminal case, but this is insufficient to show irreparable injury."). Accordingly, the *Younger* doctrine applies here.

### D. Consequences of *Younger* Abstention

"The consequences of abstention typically depend on the relief sought." *Triplet v. Ninh*, No. CIV-24-00659-JD, 2024 WL 4471959, at *4 (W.D. Okla. Oct. 11, 2024). "When *Younger* bars equitable claims in federal court, such 'claims for declaratory relief and injunctive relief are subject to outright dismissal.'" *Id.* (quoting *Graff*, 65 F.4th at 523). Such dismissal is without prejudice. *See Goings*, 571 F. App'x at 639 (holding that "*Younger*-abstention dismissals have

14

been treated as roughly akin to jurisdictional dismissals and, accordingly, have been considered to be without prejudice"). As to claims for money damages, "the appropriate course is 'staying proceedings on the federal damages claim until the state proceeding is final.'" *Graff*, 65 F.4th at 523 (quoting *D.L.*, 392 F.3d at 1228); *Triplet*, 2024 WL 4471959, at *4 (staying claims for damages pending state proceeding and administratively closing case). Even where claims for money damages would not directly enjoin the state proceeding, courts must still avoid issuing legal decisions that would have preclusive effects on the pending state-court proceeding. *See D.L.*, 392 F.3d at 1228.

          **1.**     ***Younger* Requires Dismissal of Claim for Preliminary Injunctive Relief**

The preliminary injunctive relief requested – namely, ordering that Drake recuse as prosecutor and that Plaintiff's and Robinson's criminal cases be reassigned to another county's prosecutor – would cause direct and undue interference with the ongoing state prosecution. Therefore, the undersigned recommends that this request for injunctive relief be dismissed without prejudice based on *Younger* abstention.

          **2.**     ***Younger* Requires Stay of All Claims for Money Damages/Permanent Injunctive Relief**

Were this Court to award Plaintiff money damages for violations of his constitutional rights under 42 U.S.C. § 1983, the Court would necessarily be issuing preclusive orders on the precise constitutional issues presented in the state case. Further, any corresponding award of permanent injunctive relief requiring Defendants to alter their policies would be based on a finding that Defendants violated Plaintiff's constitutional rights. Such issues have not been decided in state court. The Court therefore recommends that all claims for money damages based on constitutional violations, and corresponding requests for permanent alteration of Defendants' policies, be stayed pending conclusion of the state prosecution.

**III.  Recommendation**

The undersigned **RECOMMENDS** that:

(1) Drake's Motion to Dismiss (ECF No. 43) be **GRANTED IN PART** to the extent it requests dismissal and/or stay based on *Younger* abstention;

(2) Plaintiff's Motion for Preliminary Injunction (ECF No. 10) be **DISMISSED WITHOUT PREJUDICE,** based on *Younger* abstention;

(3) All remaining claims for money damages and corresponding permanent injunctive relief be **STAYED** pending conclusion of the state prosecution, based on *Younger* abstention;

(4) All remaining pending motions filed by Plaintiff (ECF No. 25, 35, 60) be **DENIED** as moot, without prejudice to refiling after the case is reopened;

(5) All remaining pending motions and objections filed by Defendants (ECF Nos. 23, 43, 61, 76) be **DENIED** as moot, without prejudice to refiling after the case is reopened;

(6) Any remaining service deadlines and answer/responsive pleading deadlines be **STAYED** and reset once the case is reopened, and Plaintiff be **ORDERED** to cease attempts at service until the stay is lifted;

(7) The Court order a status report one year from the date of this Order, or by January 12, 2027; and

(8) The case be administratively closed pending receipt of the status report.

**OBJECTIONS**

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation.  Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by January 26, 2026.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

**SUBMITTED** this 12th day of January, 2026.

 

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**