# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................1

PLAINTIFFS OBJECTION TO REPORT AND RECOMMENDATION &
REQUEST FOR DE NOVO REVIEW...................................................... 3

SUMMARY OF OBJECTIONS.........................................................4

I. OBJECTION TO CONSTRUING DEFENDANT DRAKE'S RULE 12
MOTION ABSENT REQUIRED PROCEDURE AND SAFEGUARDS...........5

I(A). Reframing Uses No Permissible Procedure..................................5

I(B). Reframing Improperly Disturbs Procedural Order.......................8

I(C). Denial of Discovery Is Prejudicial In Light Of Bad Faith Analysis.......... 10

II. OBJECTION TO MERITS INTERTWINED FINDINGS AT THRESHOLD.
12

III. OBJECTION TO IMPROPER SUA SPONTE ARGUMENTS NOT
RAISED BY DEFENDANTS............................................................. 16

IV. OBJECTION TO SERVICE / PERSONAL JURISDICTION OMISSION
AND SELECTIVE DOCKET ADOPTION...................................... 18

V. OBJECTION TO DISPUTED FACTUAL DETERMINATIONS
IMPROPERLY SETTLED IN DEFENDANTS FAVOR..................................20

VI. OBJECTION TO IMPROPER "MISTAKE OF LAW" GLOSS
(CATEGORY ERROR + BURDEN-SHIFT EVASION)..................................23

VII. OBJECTION TO "NO FURTHER EVIDENTIARY PROCEEDING IS
REQUIRED" WHICH RESTS ON IMPERMISSIBLE CREDIBILITY
CHOICES AND USE OF AN UNSETTLED DEFENDANT NARRATIVE... 28

VIII. OBJECTION TO FINDING OF "ADEQUATE OPPORTUNITY"
PRONG BY PRESUMING STATE-COURT ACCESS DESPITE PLEADED
AND DOCUMENTED STRUCTURAL BARRIERS........................................30

VIII(A). State's Perceived Interest May Be Mooted By Admissions................ 31

VIII(B). Judicial Notice In Related Proceedings Nullifies Adequate Opportunity
34

VIII(C). Overbroad Younger Stay Inapplicable To All Defendants...................35

IX. OBJECTION TO PROCEDURAL SHORTCUTS IN ANALYSIS AS
PHELPS IS NEVER FULLY REALIZED.......................................................37

X. OBJECTION TO MISCHARACTERIZATION AND NARROWING OF
PLAINTIFF'S CLAIMS TO DEFEAT THE PHELPS RETALIATION

FACTOR...........................................................................................................40

X(A). Retaliation Was Expressly Pled................................................................ 42

X(B). Conspiracy/Joint Action in Retaliation Was Pled.................................... 43

X(C). The Pleaded Chronology Satisfies the Supreme Court's Retaliatory Arrest
Framework.......................................................................................................44

X(D). Retaliation is Embedded in Every Constitutional Claim......................... 45

XI. OBJECTION TO "OVERLY SPECULATIVE" & "CIRCULAR
"MOOTNESS" OF PENDING EVIDENTIARY FILINGS............................. 46

XI(A). The R&R's "No Initial Showing / No Evidentiary Proceeding" Finding
Becomes Self-Fulfilling Once the Filings Containing the Supplemental
Evidence Are Disposed of as "Moot".................................................................. 47

XI(B). The "Mootness" Recommendation Is Especially Egregious Because the
Filings at Issue Were Filed for the Exact Purpose the R&R Claims Plaintiff
Failed to Achieve: A Colorable Showing...........................................................48

XI(C). The R&R Credits Record Items Favoring Abstention While Declining to
Address Undisputed or Unrebutted Record Items Supporting Bad Faith.......... 51

XI(D). Denying These Filings as "Moot" Cannot Be Justified by "Without
Prejudice to Refile," Because the R&R Uses the Present Absence of
Consideration to Decide the Present Exception.................................................. 52

XII. OBJECTION TO FRAMING AND RECOMMENDATION FOR DENIAL
OF MOTION FOR PRELIMINARY INJUNCTION........................................ 53

XIII. OBJECTION TO INACCURATE INTERPRETATION OF PHELPS'
"HARASSMENT" FACTOR AND IGNORING ADDITIONAL
RETALIATORY CHARGES..............................................................................55

CONCLUSION............................................................................................... 57

PRAYER FOR RELIEF.................................................................................... 59

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **GABRIEL GIDEON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:25-cv-00450** |
| | ) | |
| **BILLY MCCALL, et al** | ) | |
| **Defendants,** | ) | |

## PLAINTIFFS OBJECTION TO REPORT AND RECOMMENDATION & REQUEST FOR DE NOVO REVIEW

Plaintiff Gabriel Gideon submits these specific objections to the Report and Recommendation ("Report" or "R&R", dated January 12, 2026) (ECF No. 81), pursuant to Federal Rule of Civil Procedure 72(b)(2) and 28 U.S.C. § 636(b)(1). Plaintiff objects to the recommended denial and dismissal of his Motion for Preliminary Injunction and the stay of his remaining claims based on Younger abstention. These objections are directed to specific legal errors, impermissible factual or credibility determinations, exclusion of uncontested supporting material, and misapplications of controlling precedent. Plaintiff respectfully requests de novo review by the District Court. In support of the request and for the protection of the record on appeal, Plaintiff states the following.

## SUMMARY OF OBJECTIONS

The Report and Recommendation is the product of a cascading series of reversible errors that collectively invalidate its analysis. First, it committed foundational procedural error by resolving merits-intertwined factual disputes under Rule 12(b)(1) without the required conversion to summary judgment, improperly deciding contested issues like probable cause and Plaintiff's legal status. From this unauthorized foray into fact-finding flowed the corollary error of judicial advocacy, where the R&R supplied rationales for the defense—most prominently, the 'mistake of law' gloss —that Defendant Drake never asserted, thereby inventing his rebuttal and vitiating the adversarial burden-shift. To insulate these defective conclusions, the R&R then employed circular, self-fulfilling logic, declaring Plaintiff's supplemental evidence insufficient to show bad faith while simultaneously recommending the denial as 'moot' of the very motions that submitted that evidence. Finally, resting on this one-sided version of the record, the R&R issued an overbroad and illogical application of Younger, presuming an 'adequate state forum' despite irreparable prosecutorial conflicts and applying abstention to claims for damages and injunctive relief against municipal defendants that the state criminal court has no power to redress. Each error poisoned the next; collectively, and independently, they each may require this Court to reject the R&R.

## I. OBJECTION TO CONSTRUING DEFENDANT DRAKE'S RULE 12 MOTION ABSENT REQUIRED PROCEDURE AND SAFEGUARDS

Plaintiff does not dispute that the Motion *can be* construed at the Court's discretion. Rather, the act of construing under 12(b)1 has limits and requirements that were not adhered to.

### I(A). Reframing Uses No Permissible Procedure

Defendant Drake's motion, while citing Rule 12(b)(1) never argues that *Younger abstention* is a jurisdictional defect requiring dismissal under that rule, rather he [Drake] argues subject matter jurisdiction within the scope of the State's 11th Amendment immunity. The R&R's sua sponte recharacterization of the Younger argument as a 12(b)(1) motion was therefore unsolicited and transformed the legal landscape to the Plaintiff's detriment as follows.

This recharacterizing Defendant Drake's Rule 12(b)(6) motion—which asserted Younger abstention among other procedural defenses—as a Rule 12(b)(1) jurisdictional motion, *and then* explicitly using that reframing to resolve *disputed, merits-intertwined factual issues* against the pro se Plaintiff is impermissible. This approach contravenes controlling Tenth Circuit law and independently requires rejection of the Report and Recommendation.

As the Report itself acknowledges, Tenth Circuit precedent is not settled as to whether *Younger* abstention is in fact, purely jurisdictional. See *Graff v. Aberdeen Enters., II, Inc., 65 F.4th 500, 523 n.32 (10th Cir. 2023)* (Where jurisdictional status is unsettled, courts are required to apply procedural safeguards that prevent premature merits adjudication). Even assuming arguendo that abstention may be analyzed under Rule 12(b)(1), Tenth Circuit law sharply limits what a court may do under that rule. The governing framework—set forth in *Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995*) and relied upon in *D.L. v. Unified School District No. 497, 392 F.3d 1223, 1232 (10th Cir. 2004)*—recognizes three procedurally permissible paths:

1. *Facial* Rule 12(b)(1) review, in which the court assumes the truth of the complaint's allegations and asks whether jurisdiction is lacking even if those facts are true;

2. *Factual* Rule 12(b)(1) review, which permits limited fact-finding only where the jurisdictional facts **are not** intertwined with the merits; or

3. Conversion to Rule 56 summary judgment, which is mandatory where jurisdictional issues are intertwined with the merits, and which requires notice, an opportunity to submit evidence, and all reasonable inferences drawn in favor of the non-movant. See id.; see also *Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324-25 (10th Cir. 2002)*.

The R&R follows none of these permissible paths. Instead, it employed an impermissible hybrid and then proceeded to resolve factual disputes and make credibility determinations that go directly to the merits—such as probable cause, retaliatory animus, prosecutorial intent, ratification, and post-hoc justification—without converting the motion to summary judgment and without affording Plaintiff the protections of Rule 56. This is precisely what *Holt,* and subsequently *D.L.* forbids. (A court is powerless to resolve disputed jurisdictional facts where the jurisdictional issue is intertwined with the merits of the case.)

The abstention analysis here turned on whether Plaintiff was targeted, arrested, and prosecuted in retaliation for exercising constitutional rights as pleaded, whether probable cause existed at the time of arrest, and whether the prosecution was undertaken in bad faith—issues that are not merely related to, but are elements of, Plaintiff's substantive constitutional claims. Under Holt, the Court was therefore required either to accept Plaintiff's allegations as true or to convert the matter to summary judgment to decide abstention in this specific case, especially in the absence of any counter-narrative by the Defendant. See also *Schwartz v. Booker, 702 F.3d 573, 579 (10th Cir. 2012)* (reiterating the Holt framework).

**Summary of Objection I(A):** By invoking Rule 12(b)(1) while simultaneously resolving merits-intertwined disputes, the R&R materially altered the standard of review and prejudiced Plaintiff by denying Rule 56 protections, discovery, or an evidentiary

hearing while subsequently discounting or ignoring unrebutted evidence submitted in support of bad faith. This approach conflicts with the standard of *Sizova* (When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion) and the principle that courts may not resolve merits questions under the guise of jurisdiction. See *Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998)* (rejecting "hypothetical jurisdiction").

## I(B). Reframing Improperly Disturbs Procedural Order

The R&R's reframing of Defendant Drake's motion does more than mislabel a procedural vehicle; it reorders the mandatory sequence of federal adjudication in a manner forbidden by Supreme Court and Tenth Circuit precedent.

Abstention doctrines—including Younger—whether seen exclusively as jurisdictional, or prudential, it is nonetheless secondary[1]. They do not displace, excuse, or precede a court's obligation to resolve antecedent jurisdictional and procedural questions that condition the court's authority to act at all. See *Steel Co., 523 U.S. at 94–95* (rejecting "hypothetical jurisdiction" and requiring courts to resolve threshold questions in proper order). Naturally, the Court has discretion to decide on which jurisdictional matters to address first, however its discretion does not supersede Holt as to the disputed facts intertwined with the merits.

---

[1] Courts have described Younger abstention as both jurisdictional and prudential. Compare Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69, 77 (2013) (prudential), with cases treating Younger under Rule 12(b)(1). That distinction does not alter the outcome here: under either characterization, a court may not resolve merits-intertwined factual disputes without appropriate procedural safeguards.

Here, the Report bypasses that order. Rather than first determining (1) whether Defendant Drake is properly before the Court in *either* capacity[2]; (2) whether the Court possesses subject-matter jurisdiction over each category of relief asserted; and (3) whether Drake's motion actually states a cognizable Rule 12(b)(6) challenge to the pleaded facts, the R&R leaps to abstention and later retrofits the record to justify it. That inversion is not simply a discretionary case-management choice; it is a structural legal error.

The Supreme Court has made clear that abstention is "the exception, not the rule," and applies only after the court has confirmed its adjudicatory posture. See *Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976).* The Tenth Circuit likewise requires courts to resolve jurisdictional and procedural predicates before invoking abstention. This treatment would be *prudential* in the event that the otherwise jurisdictional treatment of Younger was intertwined with the merits or facts of the case, which explicitly applies here.

The Report's reframing accomplishes precisely what these cases forbid. By construing Drake's motion solely as a Rule 12(b)(1) motion—without Drake requesting that relief or disputing various jurisdictional facts—the Report alters the governing standard of review and then uses that altered standard to resolve merits-intertwined factual questions adverse to Plaintiff. This is the very "procedural sleight of hand" rejected in Holt, 46 F.3d at 1003.

---

[2] Defendant Drake's capacities are addressed in pertinent sections of this Objection.

This sequencing defect also exposes the reframing's downstream incoherence and the prejudice from this reframing is concrete. Under Rule 12(b)(6), Defendant Drake bore the burden of showing that, accepting Plaintiff's allegations as true, no claim was stated for which relief could be granted. He did not attempt that specific showing in any way. If Younger is treated as jurisdictional, the Court must first resolve actual jurisdictional defenses (including sovereign immunity) claim-by-claim; claims barred by immunity must be dismissed, not stayed.[3] See *FDIC v. Meyer, 510 U.S. 471, 475 (1994).* The R&R's reframing collapses distinctly separate analytical steps into a single shortcut—one that neither the Federal Rules nor controlling precedent permits.

**Summary of Objection I(B):** By reframing Defendant Drake's Younger argument and then resolving merits-intertwined factual issues adverse to Plaintiff without conversion to summary judgment, an evidentiary hearing, or other Rule 56 protections, the R&R applied an incorrect procedural standard and exceeded the limits imposed by D.L., Holt, and their progeny. The abstention analysis is therefore legally unsound at its core and must be rejected.

## I(C). Denial of Discovery Is Prejudicial In Light Of Bad Faith Analysis

The R&R compounded the procedural errors by denying Plaintiff discovery (ECF No.79 ) essential to resolving the disputed, merits-intertwined jurisdictional facts. Plaintiff requested the Oklahoma Attorney General's written determination regarding

---

[3] The related matters as to the State of Oklahoma have been fully briefed and those Defendants, not inclusive of Will Drake in his individual capacity, would equally be prejudiced by a year-long delay to adjudicate subject matter jurisdiction over Eleventh Amendment immunity and related controlling precedent.

representation of Defendant Drake—a document *required by state law* and directly relevant to whether Drake is entitled to sovereign immunity. This is a core merits intertwined factual issue bearing on both the Court's jurisdiction and the bad-faith exception to Younger.

Under Tenth Circuit law, when a defendant raises a factual challenge to jurisdiction, the plaintiff must be afforded a 'reasonable opportunity' to present facts in support of jurisdiction, which includes necessary discovery. See *Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1324 (10th Cir. 2002)*; see also *Pringle v. United States, 208 F.3d 1220, 1222 (10th Cir. 2000)* (requiring a 'full and fair opportunity' to develop the record). The denial of discovery on this pivotal issue, followed by a ruling that relied on the absence of a developed record, created a prejudicial, circular defect. This denial prevented Plaintiff from supplementing his showing on the later required Phelps exception and thereby deprived him of the fair process required.

**Summary of Objection I(C):** By withholding the document that would clarify the Attorney General's litigation posture—which itself suggests a finding that Drake acted outside his scope—and then using the resulting evidentiary gap against Plaintiff, the R&R committed a structural error that requires de novo review and reversal. This objection is timely as the prejudice would be created upon the publishing or adoption of the R&R, and not before.

## II.   OBJECTION TO MERITS INTERTWINED FINDINGS AT THRESHOLD

Although styled as a neutral factual background, the R&R's initial recitation resolves and embeds contested merits issues that are not properly adjudicated, committing reversible procedural error. In particular, the Report references a state-court probable-cause determination based on an affidavit not contained in the federal record, and later treats that post-arrest finding as dispositive evidence negating the possibility of bad faith. This conflates judicial notice of a filing with the acceptance of its substantive assertions as true, which improperly resolves a core merits dispute.

Judicial notice of docket entries permits recognition that proceedings occurred, but not de facto adoption of their conclusions or constitutional sufficiency. See *Fed. R. Evid. 201(b)* (facts must be "not subject to reasonable dispute"); *St. Louis Baptist Temple, Inc. v. FDIC, 605 F.2d 1169, 1172 (10th Cir. 1979)*. While a court may notice the existence of a probable cause affidavit, it "may not take judicial notice of the truth of the matters asserted in those records." *United States v. Estep, 760 F.2d 1060, 1063 (10th Cir. 1985)*. The R&R commits this exact error. It relies on a state docket minute entry, admits the affidavit itself is "unavailable and unreviewed" (R&R at 3), yet concludes this unreviewed document "counsels against finding in favor of Plaintiff on the first factor." (R&R at 12). This grants conclusive weight to the State's allegation of probable cause—the truth of which is among the central disputes in this lawsuit. The distinction between the document itself existing and the allegations within it being proven weighs heavily on the R&R's foregoing analysis.

This presumption is legally and logically flawed. First, it violates the framework of *Nieves v. Bartlett, 139 S. Ct. 1715 (2019)*, which establishes that probable cause is a merits defense to a claim of retaliatory prosecution, not a presumption derived from the charging documents. By allowing the State's ex parte affidavit to "counsel against" Plaintiff's well-pled allegations, the R&R impermissibly resolves this defense in the State's favor without requiring any evidence, inverting the standard.

Second, the presumption itself is factually incorrect. A probable cause finding does not absolve the possibility of bad faith, as probable cause can be manufactured through fraud, perjury, or the knowing submission of false evidence. See *Pierce v. Gilchrist, 359 F.3d 1279, 1292-93 (10th Cir. 2004)* (denying immunity to a prosecutor who "effectively manufactured probable cause"). Plaintiff's Complaint and supplemental evidence allege precisely such misconduct: a real-time conspiracy to fabricate a charge to justify an unlawful detention. The R&R's logic would nullify the Phelps bad-faith exception, as every prosecution is accompanied by a charging document. If that documents existence alone "counsels against" bad faith, the exception established by Younger could never apply.

The mere existence of a state-court finding does not permit this treatment of disputed, merits-intertwined facts as resolved adversely against the plaintiff—particularly where Plaintiff has pleaded and submitted supplemental evidence directly bearing on retaliatory animus and bad faith at inception, evidence the R&R does not substantively

address. In this case, probable cause, retaliatory animus, and prosecutorial intent are not merely related to Plaintiff's § 1983 claims; they are the claims. Under *Holt* , this Court is "powerless to resolve disputed jurisdictional facts" where they are so intertwined with the merits.

Even applying the R&R's own factual synopsis—which is corroborated by Defendant Drake's own Motion—this Court cannot resolve the Younger exception without a merits trial. The R&R correctly recites: (1) the prosecution's theory of obstruction changed post-arrest; (2) the predicate for the firearm charge was uncovered only after the contested arrest; and (3) Defendant Drake participated in an investigatory consultation to *establish* probable cause. See R&R at 11-13. A charge based on a sequence of events that cannot, as a matter of logic, constitute the crime alleged is the definition of a charge with "no reasonable hope of success."  but whether this chronology that led to the affidavit does, in fact, evidence bad faith or a "mistake of law" is the quintessential ***merits*** dispute. The R&R's attempt to resolve these intertwined facts by adopting the State's unreviewed affidavit as conclusive "counsel" against Plaintiff is an improper factual or credibility determination that requires de novo rejection.[4]

Without additional argument, which would be proper for continued briefing, many of the R&R's cited cases have *distinguishing* factual or procedural characteristics from

---

[4] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction.nochem see *Sinochem Intern. v. Malaysia Intern. Shipping*, 549 US 422

the instant case such as a grand juries affidavit for probable as opposed to a single prosecutor here, or where the Defendants raised merits arguments and explanations that preemptively defeated the exception by law. These cases **_do not_** mirror the circumstances here.[5]

    **Summary of Objection II:** The R&R commits a foundational error by using judicial notice of a state probable-cause affidavit's existence to improperly assume the truth of its allegations, thereby resolving a core merits dispute over probable cause and bad faith at the pleading/abstention stage. This violates Federal Rule of Evidence 201 and Tenth Circuit precedent (Estep), conflates a charging document with proof of its validity, and ignores that probable cause is a merits defense (Nieves) that can be fabricated (Pierce). By treating this contested affidavit as evidence "counseling against" a finding of bad faith, the Magistrate resolved merits-intertwined facts in violation of Holt, shortcutting the required analysis and undermining the very possibility of the Younger bad-faith exception.

---

[5] The R&R's reliance on McCormick, Wilson, and Weitzel is misplaced; those cases are procedurally and factually distinct. Each involved rulings made after plaintiffs were afforded full process, evidentiary development, or where the state provided a legitimate statutory justification for its actions. See *McCormick v. Kansas, 2001 WL 83279, at 3 (D. Kan. Jan. 5, 2001)* (decided on TRO after briefing and argument, applying a "mistake of law" theory that the State here did not advance); *Wilson v. Morrissey, 527 F. App'x 742, 744-45 (10th Cir. 2013)* (affirming dismissal where plaintiff "offered nothing beyond his own assertions" **_after opportunity to be heard_**); *Weitzel v. Div. of Occ. & Prof'l Licensing, 240 F.3d 871, 877 (10th Cir. 2001)* (affirming dismissal where state provided statutory justifications for challenged actions). Here, Plaintiff presented a substantial supplemental record while the Defendant has offered no countervailing justification.

## III. OBJECTION TO IMPROPER SUA SPONTE ARGUMENTS NOT RAISED BY DEFENDANTS

The R&R improperly supplied speculative rationales and arguments the Defendant *did not*, stating that the arrest was supported by probable cause based on 1) the refusal to identify, 2) **and** the firearm's presence absent any identification or other particularized suspicion as it relates to the Plaintiff . The Tenth Circuit forbids the Courts from providing theories as to defenses or resolving credibility disputes at the pleading or abstention stage absent procedural safeguards. See *Holt.*

Nowhere in Defendant Drake's Motion to Dismiss (ECF No. 43), Defendant McCall's attached police report, or in any subsequent briefing does Defendant Drake: (1) argue that probable cause for obstruction existed based on the combination of Plaintiff's refusal to identify *and* the discovery of a firearm not reported stolen or involved in any crime; (2) characterize his conduct as a potential 'mistake of law'; or (3) provide any statutory or caselaw analysis from Oklahoma justifying the charging or arrest under these circumstances.[6]

The R&R made this causal argument in the absence of one by the Defendant to support such a determination. This is impermissible as a matter of law as it (1) was not raised by any defendant in any briefing, (2) the Plaintiff was therefore not given any opportunity to contest such a theory through an adversarial process, and (3) it is well

---

[6] The R&R itself provides no statutory reliance for the provided theory, but adoption of an unpled, unsupported defense is reversible error, as it improperly resolves disputed merits intertwined facts.

established that the Court may not raise or infer defenses for the parties that they themselves have not raised. It is not the role of the court to construct arguments or theories for the parties. As a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.

This defense rests on a retroactive fiction, that Officer McCall arrested Plaintiff because he believed the firearm created probable cause for obstruction. The contemporaneous record demolishes this fiction. McCall's own report reveals the question posed to District Attorney Drake was not 'Does the firearm give me cause?' but the naked legal question: 'Does the passenger have to identify himself?' (R&R at Page 11). Drake's alleged response was equally untethered from these alleged facts. The firearm was a narrative backdrop, not a legal premise related to obstruction.

**Summary of Objection III :** The R&R commits reversible legal error by supplying factual allegations and legal arguments that the defendants themselves had not raised when it asserts what 'Drake concluded... created probable cause' (R&R p. 12) and labels the entire event 'at most... a potential constitutional violation based on a mistake of law' (R&R p. 13). These are not the Defendant's arguments; they are the R&R's. This advocacy violates the core 'party presentation principle' reaffirmed by the Supreme Court in *United States v. Sineneng-Smith, 590 U.S. 371 (2020)*, which holds that courts are 'passive instruments' that rely on the parties to frame issues. In supplying a causal

argument, the R&R relieved Defendant Drake of his burden, and in turn, denied Plaintiff the proper analysis of the supplemental burden under a Younger, and adversarial testing of that same defense. This structural defect requires rejection of the R&R's Younger analysis.

## IV. OBJECTION TO SERVICE / PERSONAL JURISDICTION OMISSION AND SELECTIVE DOCKET ADOPTION

The Report's abstention analysis proceeds as though Defendant Drake is fully and properly before the Court, yet the Report does not resolve—nor even address—the service record that bears directly on personal jurisdiction and on the bad-faith exception analysis. The docket reflects that on November 7, 2025, Defendant Drake appeared through the Oklahoma Attorney General in his official capacity *only*. Plaintiff moved to perfect service after argument by the State of Oklahoma, and the Court granted that Motion. Plaintiff then performed service on the State of Oklahoma Attorney General and Defendant Drake at his home to ensure service in both capacities. The State has acknowledged service was done on their Office, but the attempt to serve Drake personally at his residence on December 1 , 2025 was **refused**, and proof of that refusal has been returned to the Court (ECF No.73). That evidence has not been disputed, denied, or explained by Defendant Drake or the State, see *Chambers v. NASCO, Inc., 501 U.S. 32, 46 (1991)* (A deliberate attempt to delay proceedings *can be* part of a pattern demonstrating bad faith.) It is not addressed in the Report, which relied heavily on the

"lack" of bad faith findings while leaving the refused service unaddressed. This omission matters for two independent reasons:

First, it highlights the Report's selective engagement with the docket. The Report relies heavily on state-court docket entries and presumptions favoring the prosecution, while bypassing uncontroverted statements and filings on this docket that (a) bear on whether Drake is properly before the Court in any capacity, and (b) support the inference of bad faith and evasiveness by a sitting, elected prosecutor who had actual knowledge of the allegations and ongoing proceedings.

Second, the service refusal is not an incidental technicality; it is record evidence consistent with Plaintiff's showing that Defendants are not proceeding in ordinary good faith, and it directly undermines the R&R's narrative that this case is merely a routine prosecution where comity concerns require abstention.

Even assuming arguendo that the Court may proceed to analyze abstention as to the official-capacity posture under 12(b)1, this non engagement resulting in a stay would absolve Defendant Drake of any responsibility to respond to the Complaint in his individual capacity. The R&R may not selectively incorporate only those docket facts that favor abstention while ignoring uncontroverted record facts that strengthen the bad-faith showing and contradict the Report's "ordinary good-faith process" premise, arguably done on an otherwise incomplete record absent any individual response by Defendant Drake. The selective adoption of docket facts is precisely what creates

reversible error in the subsequent exception analysis, because it functions as merits-adjacent factfinding in Defendants' favor while declining to address the contrary record materials.

**Summary of Objection IV :** The R&R selectively ignores a critical, uncontroverted fact from the federal docket: Defendant Drake refused personal service at his residence, as documented in ECF No. 73. This omission is both procedurally significant and substantively revealing. Procedurally, it leaves unresolved whether Drake is properly before the court in his individual capacity, a threshold issue for personal jurisdiction that the R&R bypassed. Substantively, an elected prosecutor's refusal of service, while his office actively litigates the case, is direct evidence of evasion and bad faith that contradicts the R&R's central premise of a "routine prosecution" worthy of federal deference. By relying on state-court documents while ignoring this federal docket evidence, the R&R engaged in merits-adjacent factfinding that undermines the entire abstention analysis.

## V. OBJECTION TO DISPUTED FACTUAL DETERMINATIONS IMPROPERLY SETTLED IN DEFENDANTS FAVOR

The Report improperly resolves merits-intertwined factual issues against Plaintiff at the abstention threshold. Most notably, it treats Plaintiff's alleged status as a "convicted felon" as operative fact for purposes of analyzing probable cause and the viability of the firearm charge, despite Plaintiff having formally disputed that characterization and Defendants having offered no evidentiary response. That status determination is not

collateral. The Report's conclusions regarding probable cause, "reasonable hope of success," and the legitimacy of "mistake of law" all depend materially on whether Plaintiff was, in fact, a prohibited person—and on what McCall and Drake knew, or reasonably believed, *at the time of arrest*. The Court has now taken judicial notice of the state case.[7]

The posture of 12(b)1 and the record before the Court does not permit resolution of that issue absent other measures that would re-engage the very same supplemental record. Plaintiff filed Notice disputing any prohibited status (ECF No. 48); Defendants did not argue good faith mistake, submit a certified judgment, "triple-I," or other competent proof in this case or alongside their affidavit for probable cause; and the very state-court docket materials the R&R selectively relies upon reflect unresolved questions regarding expungement rather than a settled conviction. The original complaint cites the lack of any such document attached to the police report. By nevertheless accepting prohibited status as fact, the Report resolves a disputed, merits-intertwined issue in Defendants' favor—precisely what is forbidden at the abstention stage. *See Holt*. That error independently taints the abstention analysis because it supplies a factual predicate the Court was not authorized to find.

The R&R-supplied probable cause analysis is also internally inconsistent on its own terms. The R&R acknowledges that Plaintiff was initially arrested and booked for

---

[7] See state-court minute order in *Gideon* dated September 8, 2023 (directing Defendant to provide record of expungement), and Plaintiff's notices disputing prohibited status. The Report does not address this entry while relying on later docket notations adverse to Plaintiff. This is addressed in subsequent sections in greater detail.

obstruction of a public right-of-way, and that the charge was later amended to obstruction of an officer. Yet the Report simultaneously reasons that probable cause "likely existed" at the moment of arrest for obstruction of an officer based on Plaintiff's refusal to identify and the presence of a firearm located during an inventory, purportedly consistent with Drake's advice, also supplied by the R&R. That conclusion cannot be reconciled with the disputed factual assertion that Plaintiff is or was a felon, nor the undisputed sequence of events reflected in the R&R. If probable cause existed at arrest for the specific offense based on the advice Drake allegedly gave before probable cause had been established, the initial arrest and booking would be expected to reflect *that offense* rather than a different charge later amended post hoc, and Defendant Drake would have stated that in his motions. He did not. At minimum, the mismatch shows that the R&R is drawing *contested inferences* about contemporaneous probable cause—an inference Defendants did not brief and one that depends on factual determinations unsuitable for resolution at this stage. By crediting a contemporaneous probable-cause theory that (1) was not advanced by Defendant Drake, and that (2) conflicts with the arrest/booking chronology the R&R itself recites, the R&R resolves disputed facts against Plaintiff improperly, precisely the kind of merits-intertwined threshold factfinding that requires rejection of the abstention recommendation and de novo review.

**Summary of Objection V :** The R&R commits reversible error by improperly treating Plaintiff's disputed status as a "convicted felon" as an established fact to support its conclusions on probable cause and the viability of the firearm charge. Despite Plaintiff

formally disputing this status and the State providing no evidence (no certified judgment, "triple-I" report), the Magistrate accepted it as true. This resolution of a contested, merits-intertwined fact violates Holt and poisons the entire abstention analysis. Furthermore, the R&R's probable cause reasoning is internally illogical: it acknowledges the charge was amended post-arrest yet asserts probable cause existed at the moment of arrest for the amended charge—a theory not advanced by Defendants and contradicted by the record. By making these unauthorized factual findings in Defendants' favor, the R&R exceeded the authority of Rule 12(b)1 at the abstention threshold.

## VI. OBJECTION TO IMPROPER "MISTAKE OF LAW" GLOSS (CATEGORY ERROR + BURDEN-SHIFT EVASION)

The Report characterizes the challenged arrest/prosecution as "at most" a constitutional violation "based on a mistake of law," and uses that characterization to deny the bad-faith exception to Younger and to halt further inquiry. That is a category error. The "bad faith / harassment" exception does not ask whether officials can be described as having made a "mistake" that would exonerate any further supplemental analysis.[8] It asks whether the prosecution was commenced/continued: (1) frivolously or with no reasonably objective hope of success; (2) in retaliation for the exercise of constitutional rights; or (3) in a manner constituting harassment/abuse of prosecutorial discretion. The R&R cannot substitute a "mistake of law" rationale for a proper

---

[8] A knowing response to protected conduct is sufficient. A prosecution undertaken because someone exercised a right is retaliatory — even if the prosecutor believed it lawful.

three-factor inquiry, and it cannot supply that as a rationale on Drake's behalf where Drake did not brief it as his legitimate, objective explanation.

The internal logic of the Report underscores why the "mistake of law" framing is improper and consequently validates all downstream unconstitutional conduct. In the "Younger Exception" section, the Report acknowledges that Plaintiff alleges the prosecution was triggered by his exercise of a constitutional right and quotes the relevant framework, including the "heavy burden" standard, yet then announces that "Plaintiff **cannot** make an initial showing of retaliatory animus, and no further evidentiary proceeding is required after reciting *only the police report*." (R&R at the Younger exception discussion.) It reaches that conclusion by narrating a benign, non-retaliatory sequence ("McCall had a question… Drake deliberated… McCall acted… Drake relied…") and then declaring: "At most, this constitutes a potential constitutional violation based on a mistake of law." That is not an application of Younger/Phelps; it is a substitution of a different doctrine—functionally a qualified-immunity-style "reasonable mistake" gloss—into an abstention exception that turns on retaliatory motive, frivolousness/objective hope, and abuse of prosecutorial discretion.

Even if a "mistake of law" concept can be relevant in *some* contexts, it cannot do the work the Report assigns it here for three independent reasons:

First, it is not Drake's rebuttal. Under controlling circuit law, once Plaintiff makes the required threshold showing with "additional, supplemental evidence," the burden shifts back to the Defendant to rebut the presumption of bad faith with "legitimate,

articulable, objective reasons." Peters expressly includes that burden shift. The Report cannot skip that step by inventing its own "mistake" *resolution*, particularly where Drake did not adopt or advance that theory in briefing. A court may not supply unraised defenses or rationales.

Second, the Report uses the "mistake of law" gloss to resolve merits-intertwined issues. Whether the challenged conduct was an innocent legal error or retaliatory enforcement turns on disputed facts and inferences about motive, chronology, and post-hoc justification—issues intertwined with Plaintiff's Fourth and Fourteenth Amendment claims. Under *Holt,* the Court is, again, "powerless to resolve disputed jurisdictional facts" where intertwined with the merits. The Report's "mistake of law" finding is therefore not a neutral abstention determination; it is an adverse merits-laden factual resolution made without Rule 56 protections.

Third, the Report's own record-based acknowledgments make the "mistake of law" framing especially untenable at this stage. It concedes Plaintiff "may have a valid suppression argument," and it also concedes key timing facts regarding knowledge of and participation by the District Attorney, as pleaded. If the Court asserts that it has subject matter jurisdiction, the "mistake of law" and "potential constitutional violation" cannot coexist and justify a stay without factual development as they directly conflict with the pleadings. Plaintiff was initially arrested/booked under one obstruction theory and later amended; and identity/alleged prohibited-status information was acquired post-arrest,

followed by an inventory[9] item being attributed to the Plaintiff. The "mistake of law" characterization necessarily depends on factual premises (what Drake actually advised, when it was known, what justified the arrest at the moment, and whether prosecution continued after exculpatory facts were available) that are disputed and were not resolved on an evidentiary record with summary-judgment safeguards. The Report cannot resolve those merits-intertwined issues by labeling them "mistake" and then using that label to deny the exception or presume Plaintiff "cannot" mount a viable case for such a determination should the motion convert to Summary Judgment.

In short, the Report's "mistake of law" analysis is not an application of defense allowable within Younger. It is an impermissible shortcut that (1) supplies Drake's *missing* rebuttal, (2) resolves merits-intertwined disputes without conversion to summary judgment, and (3) functions as an improper quasi-immunity screen at the abstention stage where the determinations had very little to do with subject matter jurisdiction. The District Court should reject that reasoning and apply the proper framework, determine whether Plaintiff's supplemental record makes the required initial showing, and—if so—require Drake to carry his burden with legitimate, articulable, objective reasons rather than having the R&R manufacture them.

The Report's conclusion that the prosecution reflects, "at most, a mistake of law," cannot be reconciled with the undisputed supplemental record before the Court. Prior to

---

[9] The R&R correctly notes that the vehicle search was conducted as an 'inventory search incident to a separate arrest' (R&R at 2, 11), thereby invoking the controlling doctrines of *Florida v. Wells, 495 U.S. 1 (1990)*, and *Arizona v. Gant, 556 U.S. 332 (2009)*. These doctrines establish a bright-line rule: An inventory search is a non-investigatory, administrative procedure. Its sole purposes are to secure property and protect against claims of loss. Wells, 495 U.S. at 4; see also *Colorado v. Bertine, 479 U.S. 367, 372 (1987)*.

issuance of the R&R, Plaintiff submitted email correspondence from the prosecuting authority—now part of the record (ECF No. 34) and never challenged as inaccurate or inadmissible—in which the State expressly acknowledged the absence of an underlying conviction while simultaneously *advancing an alternative legal theory to preserve prosecution* more than a year after the arrest. That communication does not characterize the events as a good-faith misunderstanding of settled law; it reflects a conscious effort to retrofit the prosecution to perceived statutory gaps after the original justification failed. The R&R does not address this evidence at all. Instead, it supplies its own "mistake of law" rationale to negate the potential of bad faith, notwithstanding that the prosecution itself had already moved beyond that explanation.

Where the record contains unrebutted evidence of evolving prosecutorial theories inconsistent with contemporaneous probable cause, the Court may not presume good faith or deny the need for an evidentiary hearing at the least. Ignoring such supplemental evidence while simultaneously inventing a benign explanation on the State's behalf constitutes reversible error.

**Summary of Objection VI:** The R&R commits a critical procedural error by substituting its own "mistake of law" rationale for the required Phelps three-factor analysis, effectively inventing a defense the Defendant never raised. This constitutes an impermissible category error, importing a qualified-immunity style gloss into the distinct Younger bad-faith inquiry. By doing so, the R&R (1) improperly resolved merits-intertwined factual disputes about motive and intent without converting the motion

to summary judgment, violating Holt; and (2) unilaterally supplied the Defendant's rebuttal, skipping the mandatory Phelps burden-shift where the defendant must provide "legitimate, articulable, objective reasons." This judicial advocacy short-circuits the adversarial process and shields the prosecution from the scrutiny the Younger exception demands. The procedural shortcut—resolving contested facts under the guise of a "mistake"—requires de novo rejection.

## VII. OBJECTION TO "NO FURTHER EVIDENTIARY PROCEEDING IS REQUIRED" WHICH RESTS ON IMPERMISSIBLE CREDIBILITY CHOICES AND USE OF AN UNSETTLED DEFENDANT NARRATIVE

The Report's conclusion that "Plaintiff cannot*, rather than did not,* make an initial showing of retaliatory animus, and no further evidentiary proceeding is required" is not a neutral application of Younger, or Phelps (exception); it is an adverse merits-laden credibility determination rooted in selective reliance on a defendant-authored police report and an assumed post-hoc rationalization. That conclusion is a procedural determination that the existing record is legally insufficient — a determination the Court was not authorized to make on the basis of the impermissibly resolved merits-intertwined facts under a non-converted Rule 12 framework.

First, the Report treats McCall's police report excerpt as dispositive "evidence" negating retaliatory animus and bad faith, even though motive, chronology, and contemporaneous justification are merits-intertwined issues central to Plaintiff's constitutional claims. Where jurisdictional analysis turns on disputed facts intertwined with the merits, the Court may not credit one side's narrative and resolve those disputes

against the plaintiff without Rule 56 safeguards. *See Holt , see also Schwartz v. Booker, 702 F.3d 573, 579 (10th Cir. 2012).*

Second, the police report itself contains statements that support Plaintiff's theory . McCall states: "Since at the time the male would not identify himself I took the firearm for safekeeping." That statement describes a caretaking/inventory rationale, not a contemporaneous legal basis to compel identification or arrest Plaintiff for obstruction. The Plaintiff has offered that if the inventory were conducted in good faith, a non subject would not be the reasoning for "taking the firearm for safekeeping" absent some reasonable suspicion at the time, which the R&R concedes McCall did not have. McCall had stated that he typically assumes non-identification, a protected conduct, means the person is "either a felon or [has] warrants," which is a generalized assumption rather than particularized suspicion. The Report adopts the Defendant authored report's self-justifying conclusions while disregarding the admissions that Plaintiff was targeted because he would not identify himself, and that the asserted justification rested on generalized assumptions and after-the-fact reasoning thereby converting a defendant-authored narrative into dispositive evidence at the abstention threshold.

Third, the Report's analysis depends on a post-hoc probable-cause rationale that contradicts the chronology the R&R itself recites. The Report acknowledges Plaintiff's identity and alleged prohibited status were discovered post-arrest, yet it uses the firearm's discovery during an inventory and Drake's advice as if those *presumed* facts supplied contemporaneous probable cause to compel identification and arrest for obstruction at

that time. Probable cause must exist **at the time of arrest** and cannot be retroactively supplied by later-acquired information or later-amended charges. The Report resolves these disputed, merits-intertwined questions against Plaintiff and then uses that resolution to deny the Phelps exception and terminate the inquiry.

**Summary of Objection VII:** The R&R's conclusion that "no further evidentiary proceeding is required" is procedurally invalid because it rests on impermissible fact-finding at the abstention stage. By treating the defendant's police report as dispositive truth, importing post-hoc justifications, and resolving disputed, merits-intertwined facts—such as motive and the timing of probable cause—against the Plaintiff, the Magistrate effectively conducted a mini-trial without the required Rule 56 safeguards (Holt, Schwartz). This selective adoption of the defense narrative, while ignoring its own admissions and the Plaintiff's supplemental evidence, constitutes a credibility determination the Court was not authorized to make under a Rule 12 framework. The procedural shortcut of declaring the record sufficient without a proper evidentiary proceeding requires de novo correction.

### VIII. OBJECTION TO FINDING OF "ADEQUATE OPPORTUNITY" PRONG BY PRESUMING STATE-COURT ACCESS DESPITE PLEADED AND DOCUMENTED STRUCTURAL BARRIERS

The Plaintiff concedes that the proceedings are ongoing in state court, but subsequently objects to the defect in analysis or lack of analysis in the findings of the remaining two prongs of Younger.

## VIII(A). State's Perceived Interest May Be Mooted By Admissions

First, in that the State of Oklahoma *may not* have an interest in the continued prosecutions with the now-acknowledged defects in the arrest and subsequent prosecution absent the separate individual Defendant Drake, as Drake's answer and the R&R concedes those very defects in their respective "Factual Background[s]", meaning they are not subject to reasonable dispute at this time. The R&R goes on to conclude —without analysis—that the state proceedings "afford an adequate opportunity for Plaintiff to present the constitutional issues raised here," citing generic propositions that criminal defendants may file motions to suppress or seek recusal. Adequacy under Younger is claim-specific and defendant-specific, not abstract. The conclusion, as a result, rests on presumptions, not record engagement, and is irreconcilable with the facts pleaded and the supplemental materials before the Court.

The Supreme Court has made clear that the "adequate opportunity" prong is not satisfied by *abstract availability of procedures*, but by actual, meaningful access to raise federal constitutional claims. See Y*ounger v. Harris, 401 U.S. 37 (1971); Gerstein v. Pugh, 420 U.S. 103, 108 n.9 (1975)*. Where structural barriers prevent effective presentation of federal claims, abstention is improper. Here, Plaintiff specifically alleged—and supported through supplemental filings—that state-court access was structurally impaired, not merely inconvenient.

Plaintiff alleged and documented multiple barriers that directly undermine the premise of "adequate opportunity," including:

1. Prosecutorial conflict and field-level participation, where the same prosecutor whose conduct is challenged authorized and directed the arrest itself, and oversees the Office continuing the prosecution as a matter of law, rendering recusal motions illusory as a practical matter;

2. Suppression and control of body-worn camera evidence, which Plaintiff alleged was selectively disclosed and withheld at critical stages;

3. Bail, probation, and appearance inequities, including the initiation of additional charges contemporaneous with Plaintiff's attempts to litigate constitutional issues;

4. Bench-warrant and missed-hearing irregularities,

5. Post-service escalation against a witness which occurred during the pendency of federal briefing on the bad faith and after notice of the federal claims.

These are not hypothetical concerns. They go directly to whether the state forum functioned as a neutral venue capable of adjudicating the constitutional claims at issue. Yet the Report does not address these allegations or supplemental showing at all. Instead, it presumes adequacy by pointing to the theoretical availability of motions—without confronting whether access is *meaningfully available* under the circumstances alleged.

The Report's adequacy analysis is further undermined by selective omission of record facts. For example, the state docket in *Gideon* reflects a minute entry dated September 8, 2023, stating:

"DEFENDANT TO PROVIDE RECORD OF EXPUNGEMENT."

That entry bears directly on Plaintiff's ability to litigate both status and probable cause issues in state court. Yet the Report omits this entry entirely while simultaneously treating Plaintiff as a "convicted felon" for purposes of its abstention analysis, which has been covered extensively in previous sections.

Similarly, the supplemental email correspondence submitted by Plaintiff reflects communications occurring on the same day as the filing of a new bail-jumping charge in a separate prosecution—timing that the Report itself misstates by referencing a gap of a year between the missed court date and the new bench warrant. That discrepancy is not academic. It goes to whether state procedures were being used neutrally or strategically in response to Plaintiff's assertion of rights. The R&R does not reconcile these facts. It does not explain why they do not matter. It simply proceeds as though they do not exist.

The Tenth Circuit has cautioned that the "adequate opportunity" inquiry cannot be resolved by assumption where the plaintiff plausibly alleges that the state forum is structurally compromised as to the specific constitutional claims raised. See *Amanatullah v. Colorado Bd. of Med. Examiners, 187 F.3d 1160, 1165 (10th Cir. 1999).* Here, the Report's conclusion that Plaintiff "can" raise his claims in state court does not engage

with whether he could do so in any meaningful sense, given the alleged suppression, conflict, charging irregularities, and retaliatory escalation documented in the record.

By ignoring the supplemental materials that bear directly on these barriers—and by resolving the adequacy prong through presumption rather than analysis—the Report repeats the same structural error identified elsewhere, treating Younger as a doctrine of categorical deference rather than a narrow exception subject to careful, record-based application.[10] Here, the Report's adequacy finding is unsupported by the record, contradicted by unrebutted allegations and evidence, and legally insufficient under governing precedent. On de novo review, the District Court should reject the Report's conclusion that the state proceedings afford an adequate opportunity to litigate Plaintiff's constitutional claims.

**VIII(B). Judicial Notice In Related Proceedings Nullifies Adequate Opportunity**

Taking judicial notice of the closely related *State v Robinson CM-2023-00365* case as requested in the Brief in Support of Preliminary Injunction filed in September (ECF No. 21), and which has been argued in adversarial briefing, will show that Robinson has filed motions to recuse, dismiss, and clarify the basis of her own obstruction charge related to these events, to no avail.

---

[10] Because Younger abstention requires satisfaction of all three elements, failure of the "adequate opportunity" prong is dispositive. The Court need not reach the exception analysis if the threshold elements are not met.

When a federal court takes judicial notice of a state court docket under Fed. R. Evid. 201 for Younger abstention analysis, it must take notice of the entirety of the related proceeding, including all filings that bear directly on the 'adequacy' of the state forum. *See St. Louis Baptist Temple, Inc. v. F.D.I.C., 605 F.2d 1169, 1172 (10th Cir. 1979); Zimomra, 111 F.3d at 1503.* Here, in Robinson, the docket contains motions alleging prosecutorial misconduct and a request to recuse the District Attorney's Office—the very relief sought here.[11] VIII(C). Claims as to Separate Defendants Not Entitled to Abstention

## VIII(C). Overbroad Younger Stay Inapplicable To All Defendants

In a separate scope, further objection to the R&R's "adequate opportunity" finding is necessary as it is structurally overbroad, treating the entire federal action as if it rises and falls with Plaintiff's ability to litigate suppression/recusal issues in a single state criminal prosecution. That framing collapses distinct defendants and distinct forms of relief into an illogical unit. The City has not moved to dismiss; it filed an Answer and demanded a jury trial, thereby invoking federal adjudication on the merits rather than abstention. Meanwhile, McCall—the officer whose conduct allegedly initiated the domino chain the R&R itself concedes as constitutionally problematic "at most"

---

[11] The Court's notice of the Robinson docket is therefore not merely informational; it is probative of the ongoing constitutional injury and the state forum's inability to provide an adequate remedy, directly undermining the premise for abstention

(including a "valid suppression" premise)—is in default, meaning the well-pleaded

allegations against him are not contested at this stage.[12]

The R&R's instruction to "wait a year" is therefore not a neutral abstention

decision; it is an outcome-determinative suspension of claims against defendants who are

not prosecuting Plaintiff and who are not even seeking Younger relief, including

defendants already in default or otherwise procedurally bound to proceed. Critically, the

state criminal forum cannot supply an "adequate opportunity" as to these defendants or

these claims: an Oklahoma criminal court cannot adjudicate federal § 1983 conspiracy

and Monell liability for City/County policies, cannot award damages for completed

constitutional injuries, and cannot enter systemic injunctive relief governing municipal

training, arrest practices, or county-wide prosecutorial/custom policies. By equating

"adequate opportunity" with the mere existence of suppression/recusal mechanisms in a

separate criminal docket, the R&R uses Younger to sweep in parties and claims for which

the state forum is categorically incapable of providing the federal remedies sought. That

is not 'adequate opportunity' under Younger; it is an impermissible substitution of a

narrower state evidentiary process for a distinct federal civil rights action against distinct

institutional actors.

**Summary of Objection VIII:** The R&R's finding of an "adequate state forum" is

procedurally defective. It presumes adequacy based on the abstract availability of

---

[12] Defendant McCall remains in default. Accordingly, all well-pleaded factual allegations against him are deemed admitted. See Fed. R. Civ. P. 55; *Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).* Neither Younger abstention nor a Rule 12(b)(1) analysis dissolves a default or permits the Court to disregard admitted facts.

motions (e.g., to suppress or recuse), ignoring the specific, documented structural barriers that make meaningful adjudication of Plaintiff's federal claims impossible in the state court. These barriers include: a prosecutorial conflict (the defendant, Drake, controls the prosecution), evidence control issues, retaliatory charging, and docket irregularities. The R&R further omits key record facts, such as the state court's order concerning the disputed expungement, which directly contradicts its own factual assumptions. The analysis is overbroad and illogical. It improperly applies abstention to claims against the City and the defaulted Officer McCall, and to claims for monetary damages and policy injunctions, for which the state criminal court can provide no remedy whatsoever. The state forum is categorically incapable of adjudicating federal § 1983 Monell liability or awarding the relief sought against these municipal and individual defendants. By collapsing all distinct claims and defendants into a single "ongoing prosecution" test, the R&R uses Younger to suspend claims that the state has no power to resolve, violating the doctrine's fundamental requirement of an "adequate opportunity" for full relief.

## IX. OBJECTION TO PROCEDURAL SHORTCUTS IN ANALYSIS AS PHELPS IS NEVER FULLY REALIZED

The Report relies on *Peters* and *Phelps* for the proposition that Plaintiff bears a "heavy burden" to invoke the bad-faith exception to Younger. Peters and Phelps, however, impose a mandatory sequence that the Report does not perform. Under Phelps, a plaintiff must present "more than mere allegations" and make an initial showing—supported by "additional, supplemental evidence"—of retaliatory animus or

bad faith; if that showing is made, the burden shifts to the defendant to rebut the presumption of bad faith by offering legitimate, articulable, objective reasons for initiating or continuing the prosecution. *Phelps v. Hamilton, 122 F.3d 885, 889 (10th Cir. 1997); Peters v. United States, 2024 WL 3086003, at 4 (10th Cir. June 21, 2024).*

Plaintiff submitted contemporaneous, objective materials supporting retaliation and bad faith, including body-worn camera admissions, the arrest report, submitted in support of the Motion for Preliminary Injunction and Plaintiff's responses. The Report does not identify, evaluate, or apply those supplemental materials to the Phelps factors to determine whether Plaintiff crossed the "initial showing" threshold. Instead, the Report declares that Plaintiff "cannot make an initial showing of retaliatory animus" and that "no further evidentiary proceeding is required," after reviewing the police report, then defeats the exception by adopting unbriefed rationales ("probable cause," "mistake of law") that Drake himself did not assert.

That is a reversible legal error. A court cannot invoke Peters' "heavy burden" language while omitting Peters' burden-shift mechanism—the safeguard against exactly this outcome, a substitution of the defendant's rebuttal. Phelps does not permit courts to invent the defendant's rebuttal or to replace the defendant's non-response with judicial speculation. Properly applied, the Court must decide whether Plaintiff's supplemental record satisfies the initial showing; if it does, the burden shifts, and Drake must carry it with legitimate, objective reasons. The Report does not perform that analysis and cannot

sustain abstention on a record where the defendant's rebuttal is supplied by the Court rather than presented by the party.

With this framework Rule 12(b)(1) ultimately does not allow the Court to disengage from the supplemental record while the R&R itself relies on Peters/Phelps, which requires a *supplemental* showing.[13] Peters restates that Younger abstention becomes "non-discretionary" only after the three elements are met, and the exception is ruled out based on the facts of the record. The exception analysis, based on this record, expressly turns on whether Plaintiff has produced "more than mere allegations" via "additional, supplemental evidence," and—if so—whether the defendant then rebuts the presumption of bad faith with "legitimate, articulable, objective reasons." Peters (10th Cir.) makes that burden-shift, similar to the exception analysis when all three factors of Younger are met, are part of the framework, not an optional add-on. The Report's reframing therefore did not—and could not—eliminate the obligation to engage Plaintiff's supplemental showing through reframing the motion sua sponte; it only changed the lens through which the Report improperly discounted it. The result is reversible procedural error as the Report used Rule 12(b)(1) as a mechanism to deny Plaintiff the pleading-stage assumption of truth without giving the Rule 56 protections required once the analysis turns on merits-intertwined fact issues and the Phelps/Peters supplemental-evidence framework.

---

[13] The supplemental showing made in the briefing in regards to the Request for the Preliminary Injunction is covered in pertinent sections of this objection

**Summary of Objection IX:** The R&R procedurally misapplied the Phelps framework. While citing the "heavy burden," the Magistrate skipped the mandatory burden-shifting sequence: she did not first evaluate Plaintiff's supplemental evidence (bodycam, reports) to determine if an "initial showing" of bad faith was made. Instead, she declared no showing existed and then invented the defense's rebuttal for them (e.g., "mistake of law," "probable cause"), rationales Drake never asserted. This judicial substitution of the defendant's required response violates the adversarial process mandated by Phelps and Peters. By using Rule 12(b)(1) to avoid crediting Plaintiff's evidence while fabricating defenses, the Magistrate denied both the pleading-stage assumption of truth and the Rule 56 protections required for resolving these intertwined factual disputes.

## X. OBJECTION TO MISCHARACTERIZATION AND NARROWING OF PLAINTIFF'S CLAIMS TO DEFEAT THE PHELPS RETALIATION FACTOR

The Report's conclusion that Plaintiff failed to make an "initial showing of retaliatory animus" rests not on an application of the proper Phelps framework, but on a material mischaracterization and narrowing of Plaintiff's pleaded theory. Plaintiff does not allege an unlawful arrest in the abstract. He alleges that Defendants escalated detention, arrested, and prosecuted him because he refused to provide identification as a passenger absent any lawful basis—i.e., because he exercised a constitutional right. This is expressly pleaded.

This narrowing is outcome-determinative because it targets Phelps factor two—whether the prosecution was motivated "in retaliation for the defendant's exercise of constitutional rights." *Phelps v. Hamilton, 122 F.3d 885, 889 (10th Cir. 1997).* Plaintiff's retaliation mechanism is straightforward and consistently alleged, where officers attempted to compel identification without reasonable suspicion; when Plaintiff refused, they escalated the detention, initiated an arrest, and pursued charges as punishment for and leverage against that refusal. The Complaint expressly pleads that McCall informed Plaintiff, "my DA says you're obstructing if you don't identify," directly linking the protected conduct to the adverse action and to prosecutorial authorization.

Rather than analyze this retaliation and ratification theory under Phelps and Peters, the Report avoids it by recasting the chronology as benign and non-retaliatory ("McCall had a question… Drake deliberated… McCall acted… Drake relied…"), and then treating that reconstructed narrative as dispositive on the issue of animus. R&R at 13. That is not an application of Phelps; it is a substitution of Plaintiff's pleaded theory with the Court's own benign  narrative, resolving the ratification and retaliation inquiry against Plaintiff without engaging the supplemental evidentiary record or triggering the mandatory burden shift.

This recitation is not neutral. By segmenting McCall's conduct from Drake's decision to ratify the prosecution, the Report effectively dissolves Plaintiff's ratification theory—treating McCall's prior unconstitutional conduct as erased by Drake's later

involvement.[14] That is impermissible in this posture, particularly where McCall is in default and all well-pleaded allegations as to his conduct are deemed admitted. The Court may not rehabilitate or recharacterize McCall's actions as a "mistake of law" to defeat liability indirectly, nor may it treat Drake's continued prosecution over two years—undertaken with knowledge of the underlying conduct—as a benign legal error. The Report's narrative substitution thus performs merits adjudication by implication, absolving prior misconduct and negating ratification without authority, evidentiary engagement, or procedural conversion.

## X(A). Retaliation Was Expressly Pled

The following paragraphs in the Complaint (ECF No. 2) explicitly connect the exercise of a constitutional right (refusal to identify) to adverse state action (detention, arrest, prosecution):

1. Paragraph 15: Plaintiff alleges McCall asked for identification, Plaintiff questioned his obligation, and McCall admitted he was "just asking." This admission pleads the absence of a good-faith basis and frames the refusal as protected conduct.

2. Paragraph 26–27: McCall tells Drake he has "nothing on [Plaintiff] except that the gun may be his." This is pleaded as a confession of lack of reasonable suspicion.

---

[14] McCall's conduct before the phone call to Will Drake is not discussed in the R&R, effectively mooting the theory of ratification of McCall's prior unconstitutional conduct by Defendant Drake, a substantive claim of Plaintiffs. To the extent the Report evaluates McCall's conduct as contested or benign, it does so without addressing his default.

The call to Drake is alleged as seeking authorization to escalate after the protected refusal.

3. Paragraph 30: Drake consults other prosecutors and calls McCall back. This is pleaded as affirmative prosecutorial participation in deciding whether Plaintiff could be compelled to identify.

4. Paragraph 35: "My DA says you're obstructing if you don't identify." This is a direct, contemporaneous causal statement linking: (a) protected conduct (refusal to identify), (b) adverse action (arrest), and (c) retaliatory motive (DA instruction). This paragraph alone defeats any claim that retaliation was not pleaded.

5. Paragraph 36–38: Plaintiff is arrested for obstruction (a charge later amended). His identity and alleged prohibited status were obtained post-arrest. This chronology pleads that the arrest preceded any lawful basis, confirming the retaliation sequence.

## X(B). Conspiracy/Joint Action in Retaliation Was Pled

Paragraphs 26, 30, and 35 (read together) plead agreement, coordination, and adoption of retaliatory conduct. Plaintiff pleads that Drake authorized and ratified McCall's retaliation. This is joint action, not mere parallel conduct, and defeats the R&R's implication that no conspiracy or retaliatory coordination is able to be shown as alleged.

## X(C). The Pleaded Chronology Satisfies the Supreme Court's Retaliatory Arrest Framework

Even absent the term "retaliation," the Complaint satisfies the pleading standard under *Nieves v. Bartlett, 139 S. Ct. 1715 (2019)*, and *Lozman v. City of Riviera Beach, 138 S. Ct. 1945 (2018)*. The R&R's conclusion ignores this binding framework.

1. Paragraph 15, 26 pleads protected conduct in the form of refusal to identify without reasonable suspicion.

2. Paragraph 17-18 pleads escalation:in the form of extension of the stop, coercion of the driver, threat to involve DHS.

3. Paragraph 35 pleads a direct causal link in Officer's verified statement at arrest: "my DA says you're obstructing if you don't identify."

4. Paragraph 36-37 pleads pretextual charging ("obstruction of a public right-of-way") was a legal nullity and later amended.

5. Paragraph 38 pleads post-hoc justification; Firearm charge added based on status discovered after the arrest.

This chronology is the "objective evidence" of pretext that Nieves and Lozman recognize. It alleges that but for his refusal to identify, Plaintiff would not have been arrested. The R&R dismisses this sequence as, "at most, a potential constitutional violation based on a mistake of law." R&R at 13. This is a category error. Nieves and Lozman do not ask whether the conduct could be labeled a "mistake"; they ask whether

the arrest was causally motivated by retaliatory animus. By re-labeling the pleaded facts, the R&R avoided applying the facts of this case against the correct legal test.

A "mistake of law" implies a *good-faith* error. The pleaded facts—including the real-time call to the prosecutor and the explicit causal statement at arrest—allege intentional, targeted retaliation, ratified by a prosecutor, not a mistake that continues more than two years later. At the pleading stage, these allegations must be accepted as true and analyzed under the Nieves/Lozman standard, not dismissed by judicial re-characterization.

Under Phelps factor two, Plaintiff has pleaded a plausible claim that his arrest—the genesis of the prosecution—was retaliatory. This alone satisfies his "initial showing" for the Phelps exception, which should have shifted the burden to Defendant Drake to provide legitimate, non-retaliatory reasons—a burden he did not meet.

### X(D). Retaliation is Embedded in Every Constitutional Claim

Counts explicitly alleging unlawful seizure, false arrest, malicious prosecution, and supervisory liability each incorporate by reference the factual paragraphs above. Retaliation is therefore part of every constitutional claim. The R&R's implication that "Plaintiff can not make a showing of retaliation" is objectively false on the face of the Complaint.

**Summary of Objection X**: The R&R committed a fundamental error by mischaracterizing Plaintiff's retaliation claim and then applying the wrong legal standard.

Plaintiff's theory is explicit: his arrest and prosecution were direct retaliation for exercising his Fourth Amendment right. The Complaint provides a detailed, causal chronology that satisfies the "objective evidence" requirement of Nieves and Lozman. The R&R avoided this framework, substituted its own benign narrative, and improperly concluded Plaintiff made "no initial showing," thereby skipping the mandatory Phelps burden-shift. This requires de novo correction.

## XI. OBJECTION TO "OVERLY SPECULATIVE" & "CIRCULAR "MOOTNESS" OF PENDING EVIDENTIARY FILINGS

The Report and Recommendation recommends that "all remaining pending motions filed by Plaintiff … be DENIED as moot, without prejudice to refiling after the case is reopened." (R&R, Conclusion). Although styled as an administrative clean-up, this recommendation is substantively outcome-determinative because it denies, as "moot," the core filings by which Plaintiff supplied the supplemental, objective record that Phelps and Peters require the Court to evaluate before concluding that Plaintiff failed to make an "initial showing of retaliatory animus" and before declaring that "no further evidentiary proceeding is required." This is not mootness. It is circular record exclusion. This selective adoption of the docket enables the very presumption that the plaintiff's allegations are *"overly speculative"*, which is an impermissible credibility determination, because it removes the very information provided to the Court to have a showing of "more than simply allegations". Without this, the pleading under 12(b)1 is a mere allegation, however it was properly briefed and before the Court long before the R&R,

and still improperly settled as it is intertwined with the merits. The labeling of "overly speculative" is explicitly objected to, anywhere it is used to describe the Plaintiff's claims, as both improper and disconnected from the factual record before the Court.

**XI(A). The R&R's "No Initial Showing / No Evidentiary Proceeding" Finding Becomes Self-Fulfilling Once the Filings Containing the Supplemental Evidence Are Disposed of as "Moot"**

The R&R repeatedly relies on the Phelps framework. Yet, after declaring that Plaintiff "cannot make an initial showing of retaliatory animus," the R&R then recommends denying as "moot" the filings that constitute Plaintiff's supplemental evidentiary proffer.

That sequencing is structurally impermissible. A court cannot (1) conclude that Plaintiff failed to carry a burden that is defined by the production of supplemental evidence, while simultaneously (2) denying or disregarding the filings that supply that supplemental evidence, and then (3) justify the disregard by labeling it "moot" because the Court already reached the adverse conclusion. This is a closed loop that insulates the conclusion from the record and defeats the adversarial burden shift.

Stated plainly the evidence is not moot because the Court found no bad faith; the Court found no bad faith because it treated the evidence as functionally moot. That is reversible circularity.

**XI(B). The "Mootness" Recommendation Is Especially Egregious Because the Filings at Issue Were Filed for the Exact Purpose the R&R Claims Plaintiff Failed to Achieve: A Colorable Showing**

Plaintiff's bad-faith / retaliatory animus showing did not rest on bare conclusions. It was supported through a series of filings that collectively establish: 1) contemporaneous admissions; 2) prosecutorial involvement in the field investigation; 3) post-service escalation against Plaintiff's co-defendant; 4) record proof contradicting "benign mistake" narratives; 5) service-evasion evidence; and 6) documentary corroboration of retaliatory chronology.

The relevant filings include, at minimum, the following record items, each of which bears directly on the Phelps bad-faith factors and on the "initial showing" question that the R&R purported to decide:

1. ECF No. 10 — The original TRO (and underlying TRO posture). This filing is part of the record where Plaintiff expanded the retaliation/bad-faith theory in the original complaint to address the ongoing harms before the Court and contested threshold factual treatment. The R&R cannot coherently conclude Plaintiff made "no initial showing" while simultaneously treating the core filings that framed the exception argument as disposable "mootness" detritus.

2. ECF No. 17 — Motion to enter out of time by Defendant County is central because it addresses actual knowledge and temporal proximity—particularly that Defendant Drake had actual knowledge of the lawsuit as early as September 2,

2025—which bears directly on bad faith, retaliatory animus, prosecutorial intent, and continued prosecution after awareness of exculpatory facts.

3. ECF No. 21 — Additional briefing and materials submitted to the Court as well as the Judicial Notice request for the related State v Robinson case. This is not collateral. This is Plaintiff's supplemental evidentiary and legal proffer that the R&R was required to evaluate under Phelps/Peters before concluding that no initial showing exists.

4. ECF Nos. 32 & 33 — Body-worn camera footage materials. These filings are objective, contemporaneous evidence. Here, Defendant McCall admits on camera multiple times he has no authority to demand ID, including to Defendant Drake, and continues anyway. The R&R itself quotes and relies on certain audio/chronology (e.g., the prosecutor calls narrative) while simultaneously concluding Plaintiff could not show retaliation. When the record contains the footage Plaintiff submitted to show the retaliatory mechanism, the Court cannot selectively quote the portions it prefers and then treat the filings providing the full context as "moot."

5. Supplemental "Threadgill/Gullet" documentary materials (emails / corroboration) — filed as part of the PI briefing record following up on the Brief in ECF No. 21. Plaintiff submitted documentary communications between Plaintiff and Threadgill, and between Gullet and Ms. Robinson, bearing on motive, chronology, knowledge, and the retaliatory pathway. Those are quintessential "additional, supplemental

evidence." The R&R cannot satisfy Phelps by ignoring the documentary corroboration and then asserting no initial showing exists or can be made.

6. ECF No. 48 — Notice disputing the "felon" characterization / legal status, reflecting the dispute over this status, which mirrors the State docket in Gideon. The R&R adopts "convicted felon" status to support inferences about probable cause and "objective hope of success." Plaintiff filed a record notice disputing that characterization. Treating Plaintiff as a felon for abstention-exception purposes while simultaneously recommending dismissal of the notice as "moot" is merits-intertwined, defendant-favorable fact resolution dressed up as abstention procedure.

7. ECF No. 60 — Motion for Judicial Notice (service refusal, Drake interview admissions, prosecutorial financial scheme evidence). This filing is uniquely load-bearing. It contains record matters that bear directly on bad faith and retaliatory animus, including:

    1. Request that the Court acknowledge Defendant Drake refused personal service at his home after arguing its necessity;

    2. Evidence of Drake's public admissions/interview describing prosecutorial incentive structures and practices relevant to abuse of discretion; and

    3. Additional facts offered precisely to satisfy Phelps' requirement for "more than mere allegations."

8. ECF No. 73 — Proof/return of service refusal following the State's "you didn't prove it" response to ECF No. 60. This filing matters because it responds to the State's litigation position and supplies proof that was expressly contested by implication ("not proven") and then cured on the docket. The R&R's failure to address this filing while it simultaneously describes the prosecution as routine/ordinary/benign is selective docket adoption and a refusal to confront record facts that strengthen the bad-faith showing.

It is impermissible for the R&R to say Plaintiff failed to or could not make an initial showing while simultaneously denying as "moot" the motions and filings intended to place those facts before the Court and requiring no explanation of why they did not meet the threshold. These filings are not "miscellaneous." They are the mechanism by which Plaintiff satisfied the Phelps/Peters requirement to provide "additional, supplemental evidence" supporting retaliatory animus and bad faith. The R&R's recommended "mootness" disposition therefore does not merely postpone housekeeping—it removes the evidentiary foundations of the exception analysis after using the absence of that foundation as the reason to deny the exception.

### XI(C). The R&R Credits Record Items Favoring Abstention While Declining to Address Undisputed or Unrebutted Record Items Supporting Bad Faith.

The defect is not limited to "mootness." It is compounded by the R&R's approach to the docket which credits state-court docket entries and prosecution-favorable

assumptions, while declining to substantively address Plaintiff's federal docket filings that contradict the benign narrative and directly support the exception showing.

This is precisely how the R&R becomes *outcome-determinative*: it uses the "record" to justify abstention, but it would, if adopted, define "record" to mean only the subset of filings that support abstention.

## XI(D). Denying These Filings as "Moot" Cannot Be Justified by "Without Prejudice to Refile," Because the R&R Uses the Present Absence of Consideration to Decide the Present Exception

The R&R attempts to soften the harm by recommending denial "without prejudice to refiling after the case is reopened." That does not cure the error. The R&R's entire dispositive move is that abstention applies now and the exception fails now because Plaintiff allegedly lacks an initial showing now. A "re-file later" instruction is meaningless when the Court's present position is that there is no basis to proceed and no evidentiary proceeding is required.

This is not a harmless docket-management choice; it is the mechanism by which the R&R avoids the Phelps/Peters inquiry and prevents the burden shift from ever triggering. Plaintiff therefore objects to the recommendation's exclusion of these filings in the denying Plaintiff's pending evidentiary motions and filings as "moot," including (at minimum) ECF Nos. 10, 17, 21, 32, 33, 48, 60, and 73, to the extent they were swept into the R&R's blanket "mootness" disposition or ignored as part of the Younger exception analysis.

**Summary of Objection XI:** The R&R's recommendation to deny Plaintiff's pending evidentiary motions as "moot" creates a procedurally fatal circular logic. The Magistrate first concluded Plaintiff made "no initial showing" of bad faith under *Phelps*, a determination that requires evaluating supplemental evidence. She then recommended denying the very motions that submitted that evidence (bodycam footage, judicial notice of Drake's admissions, proof of refused service, etc.) as "moot," using her own adverse conclusion to exclude the proof needed to challenge it. This creates a self-fulfilling, closed loop: the evidence is deemed irrelevant because the showing was found insufficient, but the showing was found insufficient because the evidence was excluded from consideration.

This selective docket management is outcome-determinative and reversible error. It allows the R&R to credit prosecution-friendly state-court documents while ignoring unrebutted federal filings that substantiate bad faith. The "without prejudice to re-file" proviso is meaningless, as the R&R's present holding that "no evidentiary proceeding is required" is predicated on the present absence of the very evidence it seeks to dismiss. This procedural sleight-of-hand improperly avoids the mandatory Phelps burden-shifting analysis.

## XII. OBJECTION TO FRAMING AND RECOMMENDATION FOR DENIAL OF MOTION FOR PRELIMINARY INJUNCTION

The Report compounds the aforementioned errors by inflating the scope of the requested *preliminary* injunction. As a matter of law, the extent depends on the type of relief sought. None of the relief requested was analyzed on its own but rather through a grouped fashion, importing all of the issues from the analysis into the preliminary injunction

Plaintiff's Motion for Preliminary Injunction sought narrow relief: to enjoin Drake and his subordinates from prosecuting Plaintiff and Robinson and to require appointment of a neutral prosecutor. No stays or dismissals as to the State case. The Report nonetheless bundles that narrow request complaint-level requests for permanent injunctive relief related to policy and procedure changes, and then relies on the bundled characterization to describe Plaintiff's request as *unusually disruptive* to state proceedings. That mischaracterization improperly magnifies the requested relief and reinforces the theory that abstention is proper through an exaggerated "federal intervention" framing. Plaintiff is not asking for the case to be dismissed, simply that a recusal be ordered as to the related State cases and neutral prosecutor be assigned that is not associated with Drake's office, as he is a participant in the litigation and every other person in his Office is a subordinate as a matter of law. The State has mechanics in place for such a recusal that would automatically suffice such a request through no further order of the Court beyond an Order to recuse for the Office.

**Summary of Objection XII:** The R&R inflates and mischaracterizes the scope of the requested preliminary injunction to justify abstention. Plaintiff sought a narrow, targeted remedy: to enjoin District Attorney Drake and his office from prosecuting the related state cases and to appoint a neutral prosecutor—not to dismiss the state cases. The Magistrate, however, improperly conflated this request with the broader, distinct requests for permanent policy injunctions from the Complaint. This bundling creates a false impression of an "unusually disruptive" federal intervention, exaggerating the intrusion on state proceedings. The actual requested relief leverages existing state recusal mechanisms and seeks only to remove a conflicted prosecutor who has admitted to constitutional defects in an ongoing prosecution, a minimal intrusion that does not warrant the broad abstention applied. This mischaracterization further undermines the R&R's "adequate opportunity" and comity analysis.

## XIII. OBJECTION TO INACCURATE INTERPRETATION OF PHELPS' "HARASSMENT" FACTOR AND IGNORING ADDITIONAL RETALIATORY CHARGES

The Report misstates the law regarding the third Phelps factor for bad-faith harassment and ignores material evidence of additional retaliatory prosecution.

First, the Report erroneously suggests that harassment requires "repeatedly targeting Plaintiff for unjustified prosecutions" or "the unjustified and oppressive use of multiple prosecutions." R&R at 14. While multiple prosecutions are a typical manifestation, the

factor is not exclusive. The Tenth Circuit in Phelps lists harassment as a separate consideration, stating a prosecution may be in bad faith if it is "conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions." Phelps, 122 F.3d at 889 (emphasis added). The word "typically" indicates an example, not a strict requirement. A single prosecution can be conducted in a harassing manner if it involves abusive tactics, which Plaintiff has alleged (e.g., threatening child protective services, fabricating charges, reckless transport). The Report's narrow reading is legally incorrect.

Second, even under its own erroneous standard, the Report ignores uncontroverted evidence of multiple, retaliatory charges. The record shows that on October 16, 2024, over a year after the initial arrest, Assistant District Attorney Veronica Threadgill filed a new bail-jumping charge against Plaintiff. This occurred the same day Plaintiff engaged in protected communication with her office regarding the expungement of his California conviction—a fact the State has never disputed. . ADA Threadgill's own email acknowledges she was aware "as early as October of 2023" that Plaintiff was not a felon, yet the office pursued a new charge contemporaneously with his attempt to resolve the legally deficient firearm charge. This is precisely the kind of retaliatory escalation and oppressive use of prosecutorial power that constitutes harassment, regardless of whether it is framed as a "separate prosecution."

**Summary of Objection XIII:** The Report's conclusion that "this was a one-time event" (R&R at 14) is factually inaccurate and legally incomplete. It ignores record

evidence of a subsequent, retaliatory charging decision that directly bears on the pattern and motivation of the prosecuting authority. When this additional charge is considered alongside the initial fabricated obstruction charge, the pattern of harassment and bad faith becomes undeniable. This error further demonstrates the Report's selective engagement with the record and its improper resolution of disputed, merits-intertwined facts against Plaintiff.

## CONCLUSION

The Report and Recommendation is riddled with structural and reversible procedural errors that collectively render it legally untenable. The analysis fundamentally misapplied the Federal Rules, binding precedent, and core principles of federal jurisdiction and due process.

1. The R&R invoked Rule 12(b)(1) then proceeded to resolve merits-intertwined factual disputes—such as probable cause, retaliatory animus, and the validity of Plaintiff's felony status—without converting the motion to summary judgment or allowing discovery, in direct violation of Holt, D.L., and Schwartz.

2. The R&R supplied legal defenses ("mistake of law") and factual narratives ("Drake concluded… probable cause") for Defendant Drake, who never asserted them. This violates the party-presentation principle and improperly supplied the rebuttal required under the burden-shifting framework, short-circuiting the adversarial process.

3. The R&R created a self-fulfilling argument by (a) declaring Plaintiff's supplemental evidence insufficient to make an "initial showing" of bad faith, then (b) recommending that the motions submitting that very evidence (bodycam footage, proof of refused service, judicial notice of Drake's admissions) be denied as "moot."

4. The R&R substituted a "mistake of law" gloss for the required Phelps three-factor test, imported a qualified-immunity concept into the Younger exception, and misapplied the retaliatory arrest framework from Nieves and Lozman. It conflated judicial notice of a document's existence (St. Louis Baptist Temple) with acceptance of its truth (Estep), improperly using a state probable-cause affidavit to resolve the central federal merits dispute.

5. The "adequate opportunity" finding is based on abstract legal theory, ignoring specific, documented barriers—including the prosecutorial conflict of interest (Drake as defendant and prosecutor), retaliatory charging, and the state court's inability to grant the relief sought (damages, injunctions against municipal policies). The R&R erroneously applied abstention to claims against defendants (City, defaulted officer McCall) and for remedies that the state criminal proceeding cannot possibly address.

6. The R&R consistently credited prosecution-friendly state-court documents while ignoring or dismissing contrary, unrebutted evidence on the federal docket, including proof of Drake's refused service and contemporaneous admissions of

constitutional defects. This selective record adoption constituted one-sided factfinding.

Collectively, these errors demonstrate that the R&R is not a product of sound legal reasoning but of procedural shortcuts and judicial overreach. It used the doctrine of Younger abstention not as a shield of comity, but as a sword to pretermit a meritorious civil rights action based on an incomplete and manipulatively construed record. The District Court must reject the R&R in its entirety and either remand with instructions to apply the correct procedural and legal frameworks or proceed to an evidentiary hearing on the Motion for Preliminary Injunction and the applicability of the Younger exception based on the record before the Court.

## PRAYER FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that the District Court:

1. Sustain this Objection and decline to adopt the Report and Recommendation in its present form;

2. Remand the matter to the Magistrate Judge with instructions to conduct the required analysis in the correct legal sequence and under the proper procedural standards, including:

   A. addressing threshold issues of service and jurisdiction before abstention;

   B. determining whether Younger abstention is jurisdictional or prudential and applying the corresponding standard of review;

C.  analyzing each Younger element independently and not cumulatively;

D.  assessing the adequacy-of-state-forum prong based on record-specific, pleaded, and unrebutted evidence rather than presumption;

E.  and evaluating any claimed exceptions to Younger abstention under the governing Phelps/Peters framework without resolving merits-intertwined factual disputes at the abstention threshold;

3.  Require adherence to the Federal Rules of Civil Procedure where jurisdictional and abstention determinations depend on facts intertwined with the merits, including conversion to Rule 56 or the scheduling of a limited evidentiary hearing where necessary, with appropriate procedural safeguards;

4.  Clarify that no adjudication of the merits is made or requested at this stage unless it is unavoidable at this stage, and that Plaintiff seeks only a procedurally proper application of governing law to the existing record and any supplemental record;

5.  Grant such other and further relief as the Court deems just and proper to ensure that abstention doctrines are applied narrowly, consistently, and in accordance with controlling precedent.

6.  In the event abstention is ultimately found proper, after the correct procedural mechanisms are analyzed, allow the Plaintiff to file *at any time* when the state case is closed to reopen the Federal docket, rather than an arbitrary timeframe of a year.

Respectfully submitted,

Gabriel Gideon

520 N Quincy St,

Fredonia, KS 66736

(620) 870-8675