**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **GABRIEL GIDEON,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:25-cv-00450** |
| | ) | |
| **OFFICER BILLY MCCALL,** | ) | |
| **in his individual and official capacity, et al** | ) | |
| **Defendants** | ) | |

## PLAINTIFF'S SUPPLEMENT IN SUPPORT OF RENEWED MOTION FOR PRELIMINARY INJUNCTION AND REQUEST FOR EXPEDITED RULING

Plaintiff Gabriel Gideon, proceeding pro se, submits this focused supplement to his Renewed Motion for Preliminary Injunction, filed October 6, 2026. This supplement addresses the legal effect of the Report and Recommendation's statement that the challenged conduct was, "at most," a potential constitutional violation based on a mistake of law. ECF No. 81 at 13. That characterization does not resolve the likelihood-of-success inquiry in Defendants' favor. A mistake of law avoids a Fourth Amendment violation only when the mistake is *objectively reasonable*, and the present record does not establish that requirement. The same record also supplies the additional evidence required for the bad-faith exception to Younger abstention.

### I. The applicable preliminary injunction and Younger standards

A preliminary injunction requires a showing that Plaintiff is likely to succeed on the merits, is likely to suffer irreparable harm without preliminary relief, the balance of equities favors relief, and an injunction serves the public interest. *Winter v. Natural*

*Resources Defense Council, Inc., 555 U.S. 7, 20 (2008).*[1] **When the government opposes an injunction, the final two factors merge**. *Nken v. Holder, 556 U.S. 418, 435 (2009).* Because the requested relief would affect an ongoing prosecution and require affirmative action, Plaintiff recognizes that the requested injunction is disfavored and requires a strong showing on likelihood of success and the balance of harms. See *Free the Nipple-Fort Collins v. City of Fort Collins, 916 F.3d 792, 797 (10th Cir. 2019).*

Plaintiff also recognizes that Winter does not displace Younger. The Court must determine whether the prosecution falls within the bad-faith or harassment exception before entering relief that interferes with the state proceeding. Under *Phelps v. Hamilton*, the relevant considerations include whether the prosecution is frivolous or lacks a reasonably objective hope of success, whether it was initiated or continued in retaliation for the exercise of constitutional rights, and whether it constitutes harassment or an abuse of prosecutorial discretion. *122 F.3d 885, 889 (10th Cir. 1997).* A plaintiff must provide more than allegations through **additional evidence.** Once an initial showing of retaliatory animus is made, the defendant must offer legitimate, articulable, objective reasons for initiating or

---

[1]Federal Rule of Civil Procedure 65 governs preliminary injunctions. Rule 65(a)(1) requires notice to the adverse party. Rule 65(e) expressly provides that "motions seeking temporary or preliminary injunctive relief will be given precedence over other matters pending before the court and expedited in every way". The years-old McGirt excuse cannot override the express command of Rule 65(e). The Court therefore must rule on this motion. If the Court does not rule, Plaintiff will seek a writ of mandamus from the Tenth Circuit compelling a ruling, and will cite the Court's failure to comply with Rule 65(e) as evidence of a failure to exercise jurisdiction.

continuing the prosecution. Id. at 889-90; Peters v. United States, No. 24-1013, slip op. at 10-11 (10th Cir. June 21, 2024).

Because this action arises under 42 U.S.C. § 1983, the Anti-Injunction Act **does not** categorically foreclose an injunction affecting a state proceeding. *Mitchum v. Foster, 407 U.S. 225, 242-43 (1972).* Plaintiff nevertheless must satisfy Younger and Winter, and this supplement addresses both standards.

## II. The mistake of law characterization does not negate the alleged constitutional violation

### A. The constitutional question is objective reasonableness

The phrase "mistake of law" is a description, not a defense by itself. Plaintiff does not contend that every legal mistake necessarily violates the Fourth Amendment. The narrower and controlling point is that the Fourth Amendment tolerates only an objectively reasonable mistake. *Heien v. North Carolina, 574 U.S. 54, 60-61, 66-67 (2014).* The standard is more demanding than qualified immunity and generally applies when the governing law is genuinely ambiguous and presents a difficult interpretive question. *Id. at 69-70* (Kagan, J., concurring). The Tenth Circuit likewise rejects a mistake-of-law rationale when governing authority does not make the officer's interpretation objectively reasonable. *United States v. Romero, No. 18-2180*, slip op. at 14-15 (10th Cir. Sept. 5, 2019).

The R&R did not identify a genuinely ambiguous Oklahoma identification statute, conduct a Heien analysis, or find that Drake's and McCall's interpretation was objectively reasonable. It instead used "mistake of law" to infer an absence of retaliatory animus. ECF No. 81 at 12-14. That inference cannot dispose of likelihood of success because it leaves

unanswered the constitutional question: whether an objectively reasonable officer or prosecutor could conclude that a passenger's refusal to identify, without an independent lawful basis requiring an answer, supplied probable cause under 21 O.S. § 540.

Section 540 prohibits willfully delaying or obstructing an officer in the discharge of a duty. It does not itself create a general duty for every passenger to identify. *Hiibel v. Sixth Judicial District Court, 542 U.S. 177 (2004)*, upheld an identification requirement where Nevada had enacted a specific stop-and-identify statute **and** the person was already subject to a valid Terry stop supported by reasonable suspicion. *Koch v. City of Del City, 660 F.3d 1228 (10th Cir. 2011)*, involved a materially different investigation concerning the location of a vulnerable adult subject to a court pickup order and principally resolved qualified immunity. Neither decision establishes that silence can bootstrap an otherwise unsupported investigation into probable cause for obstruction.

**B. The uncontested chronology supports objective unreasonableness**

The relevant chronology appears in the Complaint, McCall's report, Drake's own "factual background", and the R&R. Drake's motion recites that McCall believed Plaintiff's refusal likely indicated warrants or convictions; McCall called Drake after finding the firearm; Drake called back and advised that refusal to identify would constitute obstruction; McCall arrested Plaintiff; and only after booking did officers learn Plaintiff's identity and California history. ECF No. 43 at 2-4. The R&R likewise states that Plaintiff's identity and alleged felony status were first learned at the police station after arrest. ECF No. 81 at 11-12.

This sequence matters because probable cause must rest on facts known when the arrest occurs. Later discovery of identity, a California record, or a later theory of firearm disability cannot retroactively supply probable cause for the earlier obstruction arrest. McCall's report supplies direct evidence of the reasoning actually used: refusal to identify caused him to infer that Plaintiff was probably a felon or had warrants. The report then identifies the refusal itself as the conduct producing the obstruction arrest. That is not merely Plaintiff's characterization of motive; it is the contemporaneous explanation authored by the arresting officer.

The body-camera evidence adds that McCall told Drake he had "nothing" on Plaintiff except that the firearm might be his and stated that he believed a passenger did not have to identify, which no party has denied was actually said. The factual dispute cannot be resolved by describing the consultation as an innocent mistake. It requires a determination whether there was an independent lawful duty to answer and whether the asserted interpretation was objectively reasonable. On the present record, the admitted sequence materially supports Plaintiff's likelihood of success on his Fourth Amendment claims.

**C. The later state record undermines the benign inference used in the R&R**

The R&R preceded the State's February 12, 2026 response in the criminal case. The State there acknowledged that Plaintiff obtained dismissal relief under California Penal Code § 1203.4, while asserting that California's continuing firearm restriction and Oklahoma law nevertheless permit the charge. ECF No. 84. Plaintiff disputes that legal theory and has identified the absence of a certified California judgment or an Oklahoma provision adopting the particular post-dismissal disability on which the State now relies.

The Court need not finally decide the firearm count to recognize the significance of this development. First, neither the alleged felony nor the § 1203.4 disposition was known when Plaintiff was arrested for obstruction. Second, the State's present reliance on a later researched California disability confirms that the firearm theory was reconstructed after the arrest rather than serving as a contemporaneous basis for it. Third, continuation of the prosecution after notice of the dismissal and the disputed statutory predicate bears directly on whether the prosecution retains a reasonably objective hope of success and whether the original "mistake" explanation remains plausible.

### III. The R&R supplied a rebuttal that Drake did not present

Drake's motion argued the ordinary Younger elements but did not argue that his advice resulted from an objectively reasonable mistake of law. It did not identify an ambiguous statute, address the bad-faith evidence under the Phelps burden-shifting framework, or offer a competing chronology. ECF No. 43 at 11-13. The R&R nevertheless described the consultation as benign, found that McCall accurately summarized the situation, characterized the resulting arrest as at most a mistake, and then called that characterization a legitimate explanation. ECF No. 81 at 12-14.

A court may determine whether Plaintiff has made the required initial showing; Plaintiff does not argue that Defendants' silence automatically requires an injunction. The procedural problem is that the R&R reached its no-showing conclusion by drawing contested inferences in Defendants' favor and then treating those inferences as the objective rebuttal Phelps assigns to the defendant after an initial showing. The objection to

the R&R specifically challenges that sequence, the selective treatment of the record, and the conclusion that no evidentiary proceeding was necessary. ECF No. 83 at 23-30, 37-40.

The R&R is not a final merits adjudication. Plaintiff's timely objection requires de novo review of the challenged portions. Fed. R. Civ. P. 72(b)(3). Its statement that the record supports a "potential constitutional violation" cannot simultaneously be treated as a merits determination absolving Defendants. At minimum, that statement confirms that the constitutional claim is substantial rather than frivolous. When combined with the fixed chronology, the post-arrest discovery of the purported predicate, the later change in the State's legal theory, and the body-camera evidence, the record supports a strong likelihood that the initial arrest lacked probable cause and warrants an evidentiary determination of the Younger exception[2].

**IV. The supplemental evidence satisfies the Phelps threshold**

Plaintiff's showing is not limited to a subjective accusation of bad faith. It consists of the arresting officer's report, conventionally filed body-camera footage, Drake's litigation account of the sequence, the post-arrest discovery of identity and alleged status, the amendment of the obstruction theory, the later addition and continued defense of the firearm count, the State's acknowledgment of § 1203.4 dismissal relief, and Drake's April 2026 communications concerning Plaintiff and his filings. Considered together, this evidence permits an inference that the arrest and continued prosecution responded to

[2] The Magistrate's R&R (ECF No. 81) found "at most, a mistake of law." That finding is a judicial admission that a mistake occurred. The State, through Threadgill, contradicted it by saying "no mistake." Both cannot be true. One of them is lying. Either way, the record establishes the likelihood of the constitutional violation, rising above any description of "frivolous". It is based on, and corroborated by, the accounts of the very persons accused.

Plaintiff's exercise of his right not to identify absent a lawful basis and were later supported through shifting rationales.

The Court need not conclusively find bad faith on the papers to reject the R&R's determination that Plaintiff "cannot" make an initial showing and that no evidentiary proceeding is required. The supplemental record crosses the threshold requiring Defendants to articulate and support an objective explanation. If the Court is not prepared to grant preliminary relief on the existing record, it should conduct the contemplated preliminary-injunction hearing and require the relevant witnesses and evidence, including the body-camera footage, the actual advice communicated during the stop, the probable-cause affidavit, and the records relied upon for the firearm charge.

## V. The remaining Winter factors favor prompt and narrowly tailored relief

### A. Irreparable harm

Irreparable harm **is presumed** where the deprivation of a constitutional right is at issue. See *Elrod v. Burns, 427 U.S. 347 (1976)* (loss of First Amendment freedoms constitutes irreparable injury). Here, at minimum, Plaintiff's Fourth and Fourteenth Amendment rights are violated daily by the ongoing prosecution.

Plaintiff does not rely solely on the ordinary expense or anxiety of defending a criminal case. The prosecution continues under an outstanding warrant generated by the challenged proceeding, restricts Plaintiff's ability to travel, work, attend family events, and personally litigate the state case without surrender, and is being conducted by the office whose elected prosecutor admits to personally participating in the field consultation and is

a material witness to the disputed events. Those injuries recur while the federal request for prospective relief remains undecided and cannot be restored through a later damages award.

### B. Balance of equities and public interest

The State has a substantial interest in enforcing valid criminal laws, but it has no legitimate interest in preserving a prosecution through a prosecutor whose own conduct is a central disputed fact or in relying on probable cause assembled after the arrest being challenged. Narrow relief directed to the continued participation of Drake and the Washington County District Attorney's Office would not foreclose Oklahoma from prosecuting any charge supported by law and evidence. It would permit Oklahoma's statutory replacement process to operate through an independent prosecutor while protecting the integrity of both proceedings.

The same considerations serve the public interest. The public benefits from lawful prosecutions, impartial charging decisions, accurate probable-cause submissions, and prompt adjudication of claimed constitutional violations. Because a narrower recusal-based injunction would preserve the State's ability to proceed through an independent prosecutor, it substantially reduces the federalism and comity concerns associated with a complete stay while addressing the conflict at the center of Plaintiff's request.

## VI. Requested relief

For these reasons, Plaintiff respectfully requests that the Court consider this supplement with the Renewed Motion and:

1. reject the R&R's use of "mistake of law" as a dispositive answer to likelihood of success or the Younger bad-faith exception;

2. find that the supplemental record satisfies the initial Phelps showing and require Defendants to support any asserted legitimate, articulable, objective reason;
3. grant the Renewed Motion for Preliminary Injunction, with relief tailored at minimum to enjoin Drake and the Washington County District Attorney's Office from further participation while Oklahoma appoints an independent prosecutor pursuant to 19 O.S. § 215.9 and other applicable state law;
4. alternatively, set an expedited evidentiary hearing and temporarily preserve the parties' positions until the hearing and de novo review of ECF No. 81 are complete;
5. waive security or set a nominal bond under Fed. R. Civ. P. 65(c), given Plaintiff's pro se status, the public-rights nature of the case, and the absence of measurable financial injury from narrowly tailored relief; and
6. grant such other relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED,


Gabriel Gideon, *Pro Se Plaintiff*
520 N Quincy St., Fredonia, KS 66736
Tel: (620) 870-8675 Email: gabrieltgideon@outlook.com