IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

**GABRIEL GIDEON,**

**Plaintiff,**

**v.**

**BILLY MCCALL, *et al.*,**

**Defendants.**

**Case No. 25-CV-450-JFH-JFJ**

**OPINION AND ORDER**

Before the Court are two reports filed by United States Magistrate Judge Jodi F. Jayne with recommendations for the disposition of pending motions and claims. Dkt. Nos. 19 and 81. Plaintiff Gabriel Gideon ("Plaintiff") objects to both reports. Dkt. Nos. 27 and 83. Defendant Washington County, Oklahoma ("Washington County") objects, in part, to the latter. Dkt. No. 82. Having reviewed the reports, the Court concurs with the Magistrate Judge's recommendations and will therefore accept and adopt them as set forth below. For the following reasons, Plaintiff's objections are OVERULLED, and Washington County's objection is SUSTAINED.

**BACKGROUND**

On August 28, 2023, Plaintiff was riding in the passenger seat of a vehicle stopped by Defendant Billy McCall of the Bartlesville Police Department ("Officer McCall") for a suspected window tinting violation. Dkt. No. 81 at 2. The driver, a nonparty named Reyna Robinson, was arrested for operating the vehicle without a valid license or current insurance. *Id.* Upon her arrest, Officer McCall conducted an inventory search of the vehicle and discovered a firearm inside the passenger compartment. *Id.*; Dkt. No. 2 at 20. Plaintiff repeatedly refused to state his name during the stop. Dkt. No. 81 at 2. Suspecting the firearm belonged to him, Officer McCall called District Attorney for Washington County, Defendant Will Drake ("D.A. Drake") to inquire whether

Plaintiff could be arrested for his continued refusal to identify. *Id.*; Dkt. No. 2 at 20. D.A. Drake phoned two other district attorneys in the state before informing Officer McCall that Plaintiff could be arrested for obstruction. Dkt. No. 81 at 11. Plaintiff was arrested and, upon booking, an inventory search of his belongings revealed both his identity and status as a convicted felon. *Id*. Plaintiff was charged the next day in the District Court for Washington County with obstructing an officer and possession of a firearm after former felony conviction. *Id.* at 2. The charges remain pending as of this Order, with a bench warrant issued on October 12, 2024, still outstanding for Plaintiff's arrest due to his failure to appear in state court. *See* Docket in *Oklahoma v. Gideon*, Case No. CF-2023-00230 (Washington Cnty., Okla.) (filed Aug. 29, 2023).

Plaintiff filed the instant lawsuit nearly two years later, on August 26, 2025. Dkt. No. 2. He proceeds pro se and alleges, inter alia, that Officer McCall and D.A. Drake conspired in bad faith to initiate the criminal proceedings in Washington County "as a means to punish him for invoking his right to remain silent and to circumvent constitutional limitations on the traffic stop." *Id.* at 10-11. In addition to his claims against Officer McCall and D.A. Drake, Plaintiff seeks relief from Washington County and the City of Bartlesville, Oklahoma, under 42 U.S.C. § 1983 and *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). *Id.* at 11.

On September 17, 2025, Plaintiff filed an Ex Parte Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion"). Dkt. No. 10. In it, he claims to have "received specific, credible online threats from anonymous accounts" that "have included references to my home address, my place of work, and other personal identifiers not available through public court records alone as well as those of Ms. Robinson and he [sic] family members." *Id.* at 6. By sworn declaration, he writes, "I believe these threats are directly related to my filing of this federal lawsuit against law enforcement and a district attorney," and "I fear that providing advance notice of this Motion to the Defendants would jeopardize my safety and the safety of other

persons, as it could prompt further retaliatory action in the state court case or inspire further threats from individuals aligned with the Defendants." *Id.*

Based on the purported threats, Plaintiff asks the Court to first issue a temporary restraining order "immediately enjoining Defendants, their officers, agents, employees, and all persons in active concert or participation with them, from any further participation in the criminal prosecutions named in this complaint,[1] including but not limited to, proceeding with hearings, filing motions, or offering plea agreements." *Id.* at 5. Second, he requests an order for "Defendants to show cause . . . why a Preliminary Injunction should not issue (1) making this temporary restraint permanent for the duration of this federal litigation, and (2) mandating the recusal of the Washington County District Attorney's Office and the appointment of a special prosecutor from the Oklahoma Attorney General's Office to handle the matter." *Id.* Finally, he seeks "an expedited hearing" on his Motion and "any further relief this Court deems just and proper." *Id.*

The Magistrate Judge entered her first Report and Recommendation ("First R&R") on September 25, 2025. Dkt. No. 19. The First R&R recommends that Plaintiff's ex parte request for a temporary restraining order be denied due to his failure to meet the requirements under Federal Rule of Civil Procedure 65. *Id.* at 3-4. The report also observes that Washington County and the City of Bartlesville had by then entered appearances. *Id.* at 4 (citing Dkt. Nos. 12 and 16). "Accordingly, Plaintiff [could] no longer attempt to prevent Defendants from becoming aware of his request for a temporary restraining order, which is filed publicly in this case." *Id.* Briefing was therefore ordered on his request for preliminary injunction. Dkt. No. 20.

---

[1] In his Motion, Plaintiff seeks to enjoin the prosecution against both him and the non-party driver, Reyna Robinson. *Id.* at 1 (referencing "the matters of *State of Oklahoma v. Gabriel Gideon*, Case No. CM-2023-00230 and *State of Oklahoma v. Reyna Robinson*, Case No. CM-2023-00365").

In his objection to the First R&R, Plaintiff argues that the Magistrate Judge "misapplies Rule 65(b)(1) by requiring identification of threat actors and by failing to credit sworn facts establishing (1) a credible, irreparable threat of retaliation and (2) the impossibility of seeking protection from the very defendants whose misconduct necessitated this action." Dkt. No. 27 at 1. In addition to briefing his request for preliminary injunction, the parties filed numerous motions during the pendency of the Magistrate Judge's second report. These include motions to dismiss filed by Washington County [Dkt. No. 23] and D.A. Drake [Dkt. No. 43]; a Motion to Quash and Dismiss filed by D.A. Drake [Dkt. No. 61]; and several new entries from Plaintiff, including a Motion for More Clarified Statement [Dkt. No. 25]; Motion to Compel Disclosures [Dkt. No. 35]; and Motion to Take Judicial Notice [Dkt. No. 60].

The Magistrate Judge issued her second Report and Recommendation ("Second R&R") on January 12, 2026. Dkt. No. 81. The Second R&R recommends (1) granting D.A. Drake's motion to dismiss to the extent it requests dismissal and stay based on *Younger* abstention; (2) dismissing Plaintiff's request for preliminary injunction accordingly, without prejudice; and (3) denying all other motions and objections as moot upon stay of Plaintiff's remaining claims. *Id.* at 16.

Washington County and Plaintiff both object to the Second R&R. Dkt. Nos. 82 and 83. Washington County asserts that it cannot be properly named as a defendant in this matter under Oklahoma law and Tenth Circuit precedent. Dkt. No. 23 at 3-4 (citing 19 O.S. §§ 4, 215.30; and *Arnold v. McClain*, 926 F.2d 963, 966 (10th Cir. 1991)). It objects solely to request resolution of its motion to dismiss prior to stay of the case. Dkt. No. 82. Plaintiff, on the other hand, objects to the Second R&R in its entirety. Dkt. No. 83 at 4. In addition to his objections, he submits an untimely "Notice of Supplemental Authority and State Court Development" [Dkt. No. 84] along with several more recent motions [Dkt. Nos. 89-91].

## DISCUSSION

The Court must determine de novo all recommended dispositions to which proper objections have been made. Fed. R. Civ. P. 72(b)(3). Upon review, it "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." *Id*.

As an initial matter, Plaintiff's motions and claims are improper insofar as they seek relief on behalf of the non-party driver, Reyna Robinson. "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ." 28 U.S.C. § 1654. Parties may not, however, litigate on behalf of others. *E.g.*, *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others.").

### I. Plaintiff's Requests for Preliminary Injunctive Relief

#### A. Standard

Preliminary injunctive relief is an equitable remedy intended "merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). It is an "extraordinary and drastic remedy," never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (quoting 11A Fed. Prac. & Proc. Civ. § 2948 (2d ed. 1995)). Reserved instead for cases in which its necessity is clearly established, it constitutes "the exception rather than the rule." *U.S. ex rel. Citizen Band Potawatomi Indian Tribe of Oklahoma v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888-89 (10th Cir. 1989). Movants seeking to obtain preliminary injunctive relief must strictly adhere to the procedural safeguards set forth under Federal Rule of Civil Procedure 65. *Com. Sec. Bank v. Walker Bank & Trust Co.*, 456 F.2d 1352, 1356 (10th Cir. 1972). The standard is as follows:

> [A] party seeking a preliminary injunction must show: "(1) the movant is substantially likely to succeed on the merits; (2) the movant will suffer irreparable injury if the injunction is denied; (3) the movant's threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction would not be adverse to the public interest."

*First W. Cap. Mgmt. Co. v. Malamed*, 874 F.3d 1136, 1141 (10th Cir. 2017) (quoting *Fish v. Kobach*, 840 F.3d 710, 723 (10th Cir. 2016)). A movant's failure to satisfy any one of these elements is dispositive, and a court need not consider the others if it finds that one has not been met. *Colorado v. EPA*, 989 F.3d 874, 890 (10th Cir. 2021) (declining to consider other elements where movant failed to show irreparable harm).

Because preliminary injunctive relief is intended only to preserve the relative positions of parties until trial, requested relief that is not merely prohibitory but instead seeks to alter the status quo or require affirmative action from nonmoving parties is "specifically disfavored." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc); *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1259 (10th Cir. 2005). To minimize the threat of undue injury posed by such relief, movants must make a heightened showing of the Rule 65 factors. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208-09 (10th Cir. 2009). "[A] party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on [the Tenth Circuit's] modified likelihood-of-success-on-the-merits standard." *O Centro*, 389 F.3d at 976.

The foregoing principles hold true regardless of whether the preliminary injunctive relief sought is in the form of either a temporary restraining order or a preliminary injunction. *See People's Tr. Fed. Credit Union v. Nat'l Credit Union Admin. Bd.*, 350 F. Supp. 3d 1129, 1138 (D.N.M. 2018) (noting that the requirements for a temporary restraining order "are essentially the same as those for a preliminary injunction order"); *accord Padres Unidos de Tulsa v. Drummond*, 785 F. Supp. 3d 993, 999 & n.4 (W.D. Okla. 2025). The primary difference between the two is

the former's ability to issue without notice to adverse parties. *Compare* Fed. R. Civ. P. 65(a)(1), *with* Fed. R. Civ. P. 65(b)(1). Beyond the four elements universally required for preliminary injunctive relief, applicants seeking ex parte issuance of a temporary restraining order must also satisfy two threshold requirements. Temporary restraining orders may only issue ex parte where:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1).

**B. Discussion**

Plaintiff has failed show any credible threat of irreparable injury, loss, or damage, let alone one substantial enough warrant this Court's intrusion into one of the core functions of the State. Plaintiff seeks injunctive relief that is not merely prohibitory but would instead require the Court to take affirmative action by ordering the recusal of D.A. Drake's entire office from the prosecution at issue as well as mandate the appointment of a special prosecutor in his place. His Motion is therefore subject to the heightened Rule 65 standard, which Plaintiff has failed to meet. Plaintiff has not made a strong showing as to either the likelihood of success on the merits or the balance of harms. Because he has failed to show irreparable harm under even the basic Rule 65 test, the Court's inquiry need not delve further.

In his Motion, Plaintiff states that the anonymous threats made over the Internet constitute "a tangible threat to physical safety" and that their inclusion of "non-public personal information, including home addresses and places of employment . . . suggests the source is not a random member of the public but someone with knowledge of or access to the now public dockets, case files, police reports, or other data." Dkt. No. 10 at 2. The Magistrate Judge determined that

"[t]hese vague statements, without more, are not sufficient to 'clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition.'" Dkt. No. 19 at 3 (quoting Fed. R. Civ. P. 65(b)(1)(A)). Moreover, because the Motion fails to "describe any specific threat made against him or identify the individuals sending these online threats," the Magistrate concludes that Plaintiff offers "no grounds for the court to rely on his personal belief that the threats are related to this lawsuit or the criminal prosecution against him in state court." *Id.* The Court wholly concurs with this assessment.

Despite the shortcomings in his Motion, Plaintiff has since failed to provide any additional information with which to substantiate the averred threats. In his objection to the First R&R, he adds only that the threats were received sometime after initiating this lawsuit. Dkt. No. 27 at 2. That timing, he argues, is sufficient to "demonstrate a clear nexus between his protected activity and the intimidation campaign." *Id.* Yet, such assertion is hardly convincing. Even if the Court were to take Plaintiff's word that there is indeed some form of intimidation or harassment campaign being waged against him online, there remains no credible information or even colorable allegation with which to reliably tie that campaign to this litigation. Plaintiff has not elaborated whatsoever on the substance of the supposed threats, has failed to identify any likely perpetrators, and has neglected to describe any tangible threat of harm he faces absent the requested relief.

Because Plaintiff seeks to enjoin ongoing state court proceedings, his Motion is not only subject to Rule 65 but also falls squarely within the purview of the Anti-Injunction Act. The Act provides that a federal court "may not grant an injunction to stay proceedings in a state court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. "[T]he Act's core message is one of respect for state courts." *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011). "On its face," it serves as "an

absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970). In deference to "the fundamental principle of a dual system of courts," "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Id.* at 297. In short, the Anti-Injunction Act is intended to bar precisely the sort of relief Plaintiff requests absent viability of a well-defined exception.

The relevant exceptions in this case are an outcropping of the *Younger* Doctrine, which "authorizes federal courts to enjoin a pending state criminal prosecution provided that it was (1) commenced in bad faith or to harass, (2) based on a flagrantly and patently unconstitutional statute, or (3) related to any other such extraordinary circumstance creating a threat of 'irreparable injury' both great and immediate." *Phelps v. Hamilton*, 59 F.3d 1058, 1063-64 (10th Cir. 1995) (citing *Younger v. Harris*, 401 U.S. 37, 53-54 (1971)). The Court has already addressed Plaintiff's failure to show a credible threat of irreparable injury, and Plaintiff does not allege any flagrantly and patently unconstitutional statute. Hence, all that remains is his contention of bad faith.

Plaintiff argues the First R&R "fails to recognize that [his] harm—exposure to arrest and retaliation by defendants who control law enforcement—meets the irreparable injury threshold." Dkt. No. 27 at 3-4. He cites *Dombrowski v. Pfister*, 380 U.S. 479, 485 (1965) to support his notion that "the threat of arrest itself constitutes irreparable injury." Dkt. No. 27 at 4. In reality, however, the *Dombrowski* Court held quite the opposite: "It is generally to be assumed that state courts and prosecutors will observe constitutional limitations," and "the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings." *Dombrowski*, 380 U.S. at 484-85. By default,

federal courts are called to operate on "[t]he assumption that defense of a criminal prosecution will generally assure ample vindication of constitutional rights." *Id.* at 486. The *Dombrowski* Court ultimately ruled this assumption unfounded in cases involving "criminal prosecution under a statute regulating expression" which is found to have "an overbroad sweep." *Id.* Yet, the criminal prosecution at issue in this case does not involve any such statute, which thereby renders Plaintiff's appeal to *Dombrowski* both misplaced and, indeed, counterproductive to his own case.

The factors to be properly considered in determining whether a prosecution is commenced "in bad faith or to harass" within the meaning of *Younger* are:

> (1) whether [the prosecution] was frivolous or undertaken with no reasonably objective hope of success; (2) whether it was motivated by the defendant's suspect class or in retaliation for the defendant's exercise of constitutional rights; and (3) whether it was conducted in such a way as to constitute harassment and an abuse of prosecutorial discretion, typically through the unjustified and oppressive use of multiple prosecutions.

*Phelps*, 59 F.3d at 1065 (footnotes and citations omitted). Plaintiff does not argue that the prosecution against him in state court is lacking in any objective hope of success, nor does he claim that it is motivated by a suspect class. Plaintiff does not allege multiple prosecutions, and he offers no evidence of prosecutorial harassment other than vague and unsubstantiated claims of online threats by anonymous individuals. The prosecution against him in state court could not have been undertaken in retaliation for this lawsuit, as the charges in state court were filed two years before this suit was filed. Finally, Plaintiff cannot argue that the prosecution against him is retaliatory in any meaningful sense simply by virtue of his arrest upon refusal to identify. *See Hiibel v. Sixth Jud. Dist. Ct. of Nevada, Humboldt Cnty.*, 542 U.S. 177, 188 (2004) ("The request for identity has an immediate relation to the purpose, rationale, and practical demands of a *Terry* stop."). Instead, it appears that Plaintiff is simply trying to avoid or delay his prosecution in state court by first airing his grievances to this Court. That he cannot do. "[T]he cost, anxiety, and inconvenience of

defending against a single prosecution brought in good faith is not enough to establish the 'great and immediate' threat of irreparable injury necessary to justify enjoining pending state proceedings." *Phelps*, 59 F.3d at 1065.

## II. *Younger* Abstention

In *Younger*, the Supreme Court held that "the possible unconstitutionality of a statute 'on its face' does not in itself justify an injunction against good-faith attempts to enforce it," and federal courts must abstain from intrusion upon ongoing state proceedings absent a "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief." *Younger v. Harris*, 401 U.S. 37, 54 (1971). Hence, "federal courts, except in the most exceptional circumstances, must dismiss suits for declaratory or injunctive relief against pending state criminal proceedings." *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997) (citing *Younger*, 401 U.S. at 53-54). Abstention is mandatory where "(1) the state proceedings are ongoing; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to present the federal constitutional challenges." *Id.* (citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982)).

The state proceedings at issue here are ongoing and implicate the state's core interest in the administration of criminal justice. *See supra* p. 2; *Fisher v. Whetsel*, 142 F. App'x 337, 339 (10th Cir. 2005) (in applying *Younger* doctrine, noting that "Oklahoma's important interest in enforcing its criminal laws through proceedings in its state courts remains axiomatic."). Plaintiff will have ample opportunity to present his federal constitutional challenges in those proceedings, which remain in the pre-trial phase on account of his failure to appear. Because all three elements for abstention are satisfied, Plaintiff's request for preliminary injunction should be dismissed.

Application of the *Younger* doctrine also "extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding." *D.L. v. Unified Sch. Dist. No. 497*, 392 F.3d 1223, 1228 (10th Cir. 2004). However, rather than dismissal, such claims are generally subject to stay pending resolution of the state proceedings. *See id.* (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996)). The Court therefore finds that, to the extent they are not otherwise dismissed, Plaintiff's claims for money damages and permanent injunctive relief [Dkt. No. 2 at 11-12] should be stayed pending final disposition of the state proceedings.

**III. Washington County's Motion to Dismiss**

Given the Magistrate Judge's findings with respect to application of the *Younger* doctrine, the Second R&R does not reach the dispositive issues raised by D.A. Drake or Washington County in either of their motions to dismiss. Dkt. No. 81 at 1 n.2. Instead, the Magistrate Judge recommends that, upon issuing a stay, the Court deny all remaining motions and objections filed by Defendants as moot, without prejudice to refiling once the case is reopened. *Id.* at 16. Washington County objects solely to this recommendation, maintaining that its Motion to Dismiss [Dkt. No. 23] is supported by "clear and indisputable legal grounds" and should therefore be granted prior to imposition of the recommended stay. Dkt. No. 82.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint, in whole or in part, based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Labels, conclusions, formulaic recitations of elements, and naked assertions will not suffice," and conclusory allegations devoid

of any factual enhancement are to be disregarded in evaluating whether the standard is met. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). Well-pleaded factual allegations, on the other hand, must be accepted as true and viewed in the light most favorable to the claimant. *Id.* Hence, "[d]ismissal for failure to state a claim is 'proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged.'" *Hartleib v. Weiser L. Firm, P.C.*, 861 F. App'x 714, 718 (10th Cir. 2021) (quoting *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007)). Furthermore, if the claimant proceeds pro se, it must also be clear that an opportunity to amend would be futile. *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Gee v. Pacheco*, 627 F.3d 1178, 1185-86 (10th Cir. 2010).

The crux of Plaintiff's Complaint is his allegation that Officer McCall and D.A. Drake conspired in bad faith to initiate the criminal proceedings against him in state court "as a means to punish him for invoking his right to remain silent and to circumvent constitutional limitations on the traffic stop." Dkt. No. 2 at 10-11. He seeks to hold Washington County liable for the actions of D.A. Drake based on the following theory:

> 54. Defendant Will Drake is the elected District Attorney for Washington County and at all relevant times was a final policymaker for the County regarding the initiation and approval of criminal charges and the provision of legal guidance to law enforcement.
>
> . . . .
>
> 57. Accordingly, the unconstitutional acts of Defendant Drake are deemed to be the acts of Washington County itself.
>
> . . . .
>
> 70. District Attorney Will Drake's directive to arrest and his approval of the charges constituted an official policy of ratification for Washington County. By endorsing McCall's unconstitutional conduct, the County, through its final policymaker, adopted that conduct as its own and became directly liable for the resulting violations.

*Id.* at 9 and 11. Washington County asserts that this theory is incongruent with Oklahoma law and that Plaintiff cannot prevail against it on the facts alleged regardless of whether he is given an opportunity to amend. Dkt. No. 23 at 3-4. The Court agrees.

The Tenth Circuit has long recognized that, "under Oklahoma law[,] the district attorney is an arm of the state" rather than the county in which they are elected serve. *Laidley v. McClain*, 914 F.2d 1386, 1391-92 (10th Cir. 1990) (affirming summary judgment in favor of the Board of County Commissioners of Creek County based on plaintiff's "fail[ure] to demonstrate that Creek County is in any way liable for the actions of the district attorney"); *Arnold v. McClain*, 926 F.2d 963, 966 (10th Cir. 1991) (finding *Laidley* controlling and affirming dismissal in favor of two Oklahoma counties under Rule 12(b)(6) where plaintiff likewise sought to impute liability on the counties for the conduct of the district attorneys); *see also* 19 O.S. § 215.30(B) ("All appointees and employees of district attorneys . . . shall be deemed to be state officers or employees for all purposes."). Even Plaintiff appears to acknowledge this reality. *See* Dkt. No. 52 at 1-2 ("The State of Oklahoma, through its agent the Washington County District Attorney's Office . . . ."). Yet, the factual allegations in support of his claim against Washington County are limited exclusively to the alleged conduct of D.A. Drake. Because Oklahoma district attorneys function as arms of the state, Washington County cannot liable for such conduct. The claim against Washington County [Dkt. No. 2 at 11 para. 70] should therefore be dismissed.

## IV. D.A. Drake's Motion to Dismiss

The Magistrate Judge recommends that D.A. Drake's Motion to Dismiss [Dkt. No. 43] be granted in part to the extent it seeks dismissal and/or stay pursuant to the *Younger* doctrine. Dkt. No. 81 at 16. In reviewing this recommendation, the Court has also considered the remaining dispositive issues raised in D.A. Drake's motion and finds that Plaintiff's claims against him should likewise be dismissed prior to imposition of the recommended stay.

D.A. Drake is named as a defendant in both his official and individual capacities as a state prosecutor. Dkt. No. 2 at 1. Plaintiff raises four claims against him, each under 42 U.S.C. § 1983: (Count 7) unlawful seizure in violation of the Fourth Amendment; (Count 8) falsifying evidence in violation of the Fourteenth Amendment; (Count 9) conspiracy to violate civil rights in violation of 42 U.S.C. § 1985; and (Count 10) malicious prosecution in violation of the Fourteenth Amendment. *Id.* at 10-11. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011). The Court must therefore consider whether either avenue for relief is viable based on the facts alleged in the Complaint.

"Eleventh Amendment sovereign immunity bars suits for money damages against states, state agencies, and state officers in their official capacities." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1213 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 1748 (2023). "To assert Eleventh Amendment immunity, a defendant must qualify as a state or an 'arm' of a state." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Because district attorneys are considered arms of the state under Oklahoma law, *see supra* p. 14, the claims against D.A. Drake in his official capacity are subject to dismissal based on sovereign immunity.

While sovereign immunity bars damages claims against state actors in their official capacity, the Eleventh Amendment does not preclude official capacity claims for injunctive relief against a state. *Ex parte Young*, 209 U.S. 123, 159-60 (1908); *Branson Sch. Dist. RE-82 v. Romer*, 161 F.3d 619, 631 (10th Cir. 1998) ("[A] suit against a state official in his or her official capacity seeking prospective injunctive relief is not considered a suit against the state for Eleventh Amendment purposes."). "[U]nder *Ex parte Young*, 209 U.S. 123 . . . (1908), a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an

ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)). In this case, Plaintiff's request for permanent injunctive relief against the Washington County District Attorney's Office [Dkt. No. 2 at 12] fails to meet this standard, as it is in no way tethered to any alleged continuing violations or threatened harm whatsoever. *See Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1214-15 (10th Cir. 2019) (affirming dismissal of injunctive relief claims against prosecutor despite plaintiff's attempt to argue that "an inference can be drawn that [she] may be subjected to more baseless retaliatory actions by [the prosecutor]"). The claims against D.A. Drake in his official capacity are therefore properly dismissed.

Although "the Eleventh Amendment does not erect a barrier against suits to impose individual and personal liability on state officials under § 1983," *Hafer v. Melo*, 502 U.S. 21, 30-31 (1991) (internal quotations omitted), "[a]n officer in an individual-capacity action . . . may be able to assert *personal* immunity defenses, such as, for example, absolute prosecutorial immunity," *Lewis v. Clarke*, 581 U.S. 155, 163 (2017). State prosecutors enjoy absolute immunity from civil damages under Section 1983 for conduct that is intimately associated with the judicial phase of the criminal process, including the "initiation and pursuit of a criminal prosecution." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269-70 (1993); *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). Plaintiff alleges in Count 8 that "Defendant Drake, upon receiving Officer McCall's sworn affidavit, knowingly fabricated, approved, and instituted criminal charges ('Obstruction') that he

knew were not supported by probable cause and were intended to provide post-hoc justification for an unlawful arrest." Dkt. No. 2 at 10. In Count 10, he alleges that "Defendant Drake knowingly and willfully initiated and continued a criminal prosecution against Plaintiff without probable cause and with malice, resulting in Plaintiff being seized and subjected to legal process." *Id.* at 11. Conclusory allegations aside, the alleged conduct in support of either of these claims falls squarely within the purview of initiating and pursuing a criminal prosecution. *See Lerwill v. Joslin*, 712 F.2d 435, 438 (10th Cir. 1983) (holding that, under the *Imbler*, the actions of a city attorney in filing criminal charges against the plaintiffs, obtaining an arrest warrant, and seeking a particular bail amount were shielded by absolute immunity from damages claims brought under Section 1983). Consequently, both claims are properly dismissed based on absolute immunity.

The remaining claims against D.A. Drake—Counts 7 and 9—both stem from his telephone conversations with Officer McCall prior to Plaintiff's arrest. *See* Dkt. No. 2 at 10-11. "Advising the police in the investigative phase of a criminal case is not so 'intimately associated with the judicial phase of the criminal process' that it qualifies for absolute prosecutorial immunity." *Burns v. Reed*, 500 U.S. 478, 480 (1991). Nevertheless, such conduct is eligible for qualified immunity. *Brown*, 662 F.3d at 1164 (recognizing that "[g]overnment defendants sued under § 1983 in their individual capacities have qualified immunity"). Courts employ a two-part test in determining whether to dismiss claims based on qualified immunity: "a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011). "[G]overnment officials are not subject to damages liability for the performance of their discretionary functions when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Buckley v. Fitzsimmons,* 509 U.S. 259, 268 (1993). Prosecutors routinely give advice to law enforcement officers. The mere act of advising Officer McCall that Plaintiff could be arrested for obstruction in no way violates clearly established statutory or constitutional rights. Hence, the remaining claims against D.A. Drake in his individual capacity are properly dismissed based on qualified immunity.

Ultimately, "an assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180-81 (10th Cir. 2002). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (noting that federal courts bear "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party"). Because the Court has determined that D.A. Drake is subject to immunity in both his official and individual capacities, all of Plaintiff's claims against him should be dismissed. *See also Butler v. Rainbolt*, No. 23-7091, 2024 WL 3548936, at *2 (10th Cir. July 26, 2024) (recognizing that the assistant district attorney for Okmulgee County, Oklahoma, "acted as an official of the State of Oklahoma" in bringing a criminal case against the plaintiff and, therefore, affirming 28 U.S.C. § 1915A dismissal based on sovereign immunity); *White v. Okla. ex rel. Tulsa Cty. Off. of Dist. Att'y*, 250 F. Supp. 2d 1319, 1323 (N.D. Okla. 2002) (affirming dismissal on same grounds pursuant to Rule 12(6)(6)).

**CONCLUSION**

IT IS THEREFORE ORDERED that Plaintiff's objections [Dkt. Nos. 27 and 82] to the Magistrate Judge's reports and recommendations are OVERULLED, Washington County's Objection to Report and Recommendation [Dkt. No. 82] is SUSTAINED, and the Court hereby adopts the following recommendations made by the United States Magistrate Judge:

1. Plaintiff's Ex Parte Emergency Motion for Temporary Restraining Order and Preliminary Injunction [Dkt. No. 10] is DENIED IN PART as to his request for temporary restraining order and DISMISSED IN PART without prejudice as to his request for preliminary injunction;
2. To the extent they are not dismissed herein, Plaintiff's claims for money damages and permanent injunctive relief are STAYED pending conclusion of the state prosecution;
3. Any remaining service deadlines and answer/responsive pleading deadlines are likewise STAYED, and Plaintiff shall cease attempts at service until the stay is lifted;
4. All motions and objections which remain pending following entry of this Order are DENIED as moot; and
5. The case is administratively closed pending receipt of a status report, to be filed by January 12, 2027.

IT IS FURTHER ORDERED that Washington County's Motion to Dismiss [Dkt. No. 23] and D.A. Drake's Motion to Dismiss [Dkt. No. 43] are GRANTED. The claims against these parties are hereby DISMISSED with prejudice.

Dated this 13th day of October 2026.

JOHN F. HEIL, III
CHIEF UNITED STATES DISTRICT JUDGE